UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

WILLIAM C. DUFFELMEYER, MICHAEL
WALTHER, STEVEN HEISLER, JEFF NARDI,
STEPHEN M. CARPINIELLO, EDWARD
ARCE, RALPH TANCREDI, PETER
DeVITTORIO, MICHAEL MARINELLI,
and ARTHUR MARINELLI,

                        Plaintiffs,

          -against-

LAWRENCE MARSHALL, individually,
DAVID HALL, individually, and
the TOWN/VILLAGE OF HARRISON,
New York,

                        Defendants.

-----------------------------------------------------------x

07 Civ. (   )

**COMPLAINT**

**07 CIV. 2807**

**Jury Trial Demanded**

ORIGINAL

       Plaintiffs WILLIAM C. DUFFELMEYER, MICHAEL WALTHER, STEVEN

HEISLER, JEFF NARDI, STEPHEN M. CARPINIELLO, EDWARD ARCE, RALPH

TANCREDI, PETER DeVITTORIO, MICHAEL MARINELLI, and ARTHUR

MARINELLI by their attorneys Lovett & Gould, LLP, for their complaint respectfully

state:

### NATURE OF THE ACTION

      1. This is an action for compensatory and punitive damages, resulting from

jointly engaged-in conduct of Defendants taken while acting under color of the laws of

the State of New York, proximately resulting of violations of Plaintiff's rights as

guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

1

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiffs WILLIAM C. DUFFELMEYER, MICHAEL WALTHER, STEVEN HEISLER, JEFF NARDI, STEPHEN M. CARPINIELLO, EDWARD ARCE, RALPH TANCREDI, PETER DeVITTORIO, MICHAEL MARINELLI, and ARTHUR MARINELLI are citizens of the United States, domiciliaries of the State of New York, and residents of the Northern Counties. Each of the Plaintiffs is employed as a sworn member of the police department of the Defendant Town/Village of Harrison.

4. Defendant LAWRENCE MARSHALL (hereinafter "Marshall), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a Lieutenant in the police department of the said Town/Village.

5. Defendant DAVID HALL (hereinafter "Hall"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as the Chief of Police of the Defendant Town/Village.

6. Defendant TOWN/VILLAGE OF HARRISON, New York (hereinafter "Town"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

7. By correspondence dated March 28, 2007, Plaintiffs Duffelmeyer, Heisler, Carpiniello, Tancredi, Walther, Arce, and DeVittorio advised the members of the Town's Board of Police Commissioner and Police Captain Anthony Marraccini in pertinent respect:

> "This letter is to inform you of a disturbing set of circumstances that may constitute the possible commission of a crime..
>
> In January, 2007, [PBA] President Tancredi was conducting a customary examination of the many donations the Harrison Police Association receives during the Christmas holiday season. Pursuant to his examination, President Tancredi noticed that Brae Burn Country Club, as well as other donors, had not sent their customary annual donation. He inquired with the administration at Brae Burn CC as to whether they had sent or were going to send their annual donation for 2006. The administration said that they had made a donation of $2,500.00 and that the check was personally picked up by Chief Hall at Brae Burn CC. The Brae Burn CC administration said that they would look into the matter and get back to President Tancredi. President Tancredi and other members of the [PBA'S] executive board were contacted a short time later and the Brae Burn CC administration was disturbed to find out that the check had been altered and the funds had been deposited in the New York State Chiefs of Police Association account (Chief Hall was the President of the Chiefs Association at the time).

3

The Brae Burn administration was very clear with President Tancredi that the check was made out to the Harrison Police Association and was intended to be a charitable donation to the Harrison Police Association (see enclosed copy of check). Brae Burn said they received a receipt (see enclosed copy) for an advertisement in the Chiefs of Police Association Journal a short time after Chief Hall picked up the check, but apparently Chief Hall never discussed the advertisement with the Brae Burn charitable donation committee and Brae Burn did not authorize anyone to cross out Harrison in the payee line and replace it with Chiefs. They also said they were very surprised when they saw that the funds had gone to the Chiefs of Police Association and not the Harrison Police Association.

 President Tancredi, under his belief that a mistake had been made, discussed the matter with the Association's executive board and some other members of the Association. Vice President Michael Walther subsequently asked Chief Hall if he had any checks or donations that were intended for the Harrison Police Association. The hope was that a mistake had been made. In the past, some donations that were intended for the Association had been mistakenly deposited into the Town of Harrison accounts and reimbursements by the Town were made to the Association when the errors were made apparent. Chief Hall, however, informed

4

> Vice President Walther that he did not have any checks or any funds that were intended for the Association.
>
> . . .[T]he [PBA] members concluded that it was possible that the Brae Burn donation check may have been intentionally altered and redirected into the Chiefs of Police account. As this would constitute a criminal act, it [is] the understanding of the members of the Association with knowledge of this possible crime that we have an obligation to report the incident to the Harrison Police Department. . .We respectfully request that you investigate this matter on our behalf. . .It is also our understanding that if we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency."

Annexed to the complaint and made and part hereof are copies of the referenced correspondence and enclosures.

8. Within a matter of hours of the delivery of the correspondence referenced in the preceding paragraph "7", Hall directed Marshall and others in the administration of the Police Department to investigate the PBA members' complaint - - not with a view towards ascertaining if a crime had indeed been committed, but rather with the self-serving objective of covering-up that crime and silencing the Plaintiffs.

9. In that connection Marshall personally advised the Plaintiffs or virtually all of the Plaintiffs that the were ordered to silence and were henceforth forbidden to communicate with any other law enforcement agencies and/or members of the Harrison

Police Department and/or members of the Harrison Police Association with respect to their fact-based beliefs that Hall had forged the subject check, been in criminal possession of that forged instrument, and intentionally stole on behalf of his Chiefs Association moneys he knew were intended for the Harrison Police Association.

10. With respect to the "gag" order imposed by Marshall for Hall, Marshall informed Plaintiffs that the issue of Hall's apparent commission of several felonies was being referred to the so-called Public Integrity Bureau of the Westchester County District Attorney's Office - - a circumstance that Plaintiffs recognized to be part of an orchestrated cover-up since the District Attorney herself:

> a. Is a personal friend of Hall,
>
> b. Is deeply indebted to Hall for securing her endorsement by the Chiefs of Police Association during her recent election campaign for the office of District Attorney - - and will need that endorsement again when she runs for re-election,
>
> c. Is by reason of that indebtedness and friendship going to cover-up through the so- called Public Integrity Bureau Hall's crimes rather than prosecuting him, and,
>
> d. Will not request that the Governor appoint a special prosecutor despite the District Attorney's obvious conflict of interest because the appointment of a special prosecutor would interfere with the District Attorney's expected cover-up.

11. Each of the Plaintiffs is aware of Marshall's order, Marshall and Hall's threat of retaliatory disciplinary action in the event of non-compliance, and the self-evident cover-up presently underway to insulate Hall from criminal prosecution.

12. As a proximate result each of the Plaintiffs has been chilled in the prospective exercise of his rights of association, speech and to petition government for the redress of grievance. None will risk the threat of a disciplinary prosecution with the prospect of an indefinite suspension without pay. None will report to any other law enforcement agency the apparent crimes as committed by Hall. None will discuss the matter further.

13. By reason of Defendants' conduct each of the Plaintiffs has been caused: emotional upset; anxiety; violations of their First Amendment protected rights; humiliation; embarrassment; shame and has otherwise been rendered sick and sore.

## AS AND FOR A CLAIM

13. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "'12", inclusive.

14. Under the premises Defendants' conduct violated Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

    a. Awarding against the individually named Defendants such punitive damages as the jury may impose,

    b. Awarding against all Defendants such compensatory damages as the jury may determine,

    c. Awarding reasonable attorney's fees and costs, and,

   d. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
   April 6, 2007

                 LOVETT & GOULD, LLP
                 By: _____
                   Jonathan Lovett (4854)
                 Attorneys for Plaintiffs
                 222 Bloomingdale Road
                 White Plains, N.Y. 10605
                 914-428-8401

# Harrison Police Department
## 650 North Street
## Harrison, NY 10528
## (914) 967-5111

03-28-07

To: Captain Anthony Marraccini
From : Officers listed herein
Re: Possible crime committed

Captain,
This letter is to inform you of a disturbing set of circumstances that may constitute the possible commission of a crime.
In January, 2007, President Ralph Tancredi was conducting a customary examination of the many donations the Harrison Police Association receives during the Christmas holiday season. Pursuant to his examination, President Tancredi noticed that Brae Burn Country Club, as well as other donors, had not sent their customary annual donation. He inquired with the administration at Brae Burn CC as to whether they had sent or were going to send their annual donation for 2006. The administration said that they had made a donation of $2500.00 and that the check was personally picked up by Chief Hall at Brae Burn CC. The Brae Burn CC administration said that they would look into the matter and get back to President Tancredi. President Tancredi and other members of the executive board were contacted a short time later and the Brae Burn CC administration was disturbed to find out that the check had been altered and the funds had been deposited in the New York State Chiefs of Police Association account (Chief Hall was the President of the Chiefs of Police Association at the time). The Brae Burn administration was very clear with President Tancredi that the check was made out to the Harrison Police Association and was intended to be a charitable donation to the Harrison Police Association (see enclosed copy of check). Brae Burn said they received a receipt (see enclosed copy) for an advertisement in the Chiefs of Police Association Journal a short time after Chief Hall picked up the check, but apparently Chief Hall never discussed the advertisement with the Brae Burn charitable donation committee and Brae Burn did not authorize anyone to cross out Harrison in the payee line and replace it with Chiefs. They also said that they were very surprised when they saw that the funds had gone to the Chiefs of Police Association and not the Harrison Police Association.
President Tancredi, under the belief that a mistake had been made, discussed the matter with the Association's executive board and some other members of the Association. Vice President Michael Walther subsequently asked Chief Hall if he had any checks or donations that were intended for the Harrison Police Association. The hope was that a mistake had been made. In the past, some donations that were intended for the Association had been mistakenly deposited into Town of Harrison accounts and reimbursements by the Town were made to the Association when the errors were made

apparent. Chief Hall, however, informed Vice President Walther that he did not have any checks or any funds that were intended for the Association.

President Tancredi and the other members of the Association with knowledge of the events in question now needed legal advice and advice was sought from multiple sources. This took a few weeks because some of the attorneys were not available when the Association members were available. After legal consultation (and only after these legal consultations), the members concluded that it was possible that the Brae Burn donation check may have been intentionally altered and redirected into the Chiefs of Police account. As this would constitute a criminal act, it the understanding of the members of the Association with knowledge of this possible crime that we have an obligation to report the incident to the Harrison Police Department. This letter is intended to serve as notification to you and the department of this incident. We respectfully request that you investigate this matter on our behalf and notify us of the results of your investigation. It is also our understanding that if we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency.

We would also like to note at this time that we are making this notification due to our legal and departmental obligations. We are, however, fearful of retaliatory action on the part of the Harrison Police Department administration and we would like that to be noted at this time. It is our sincere hope and expectation that we will be given the understanding and courtesy shown to other potential crime victims by the Harrison Police Department.

_____
P.O. RALPH TANCREDI  57/103

_____
DET. MICHAEL WALTHER

_____
P.O. Edward A. Arce  125/120

_____
SGT. PETER J. DEVITTORIO

_____
PO JOHN AVETA  25/95

_____
P.O. WILLIAM DUFFELMEIER  12/106

_____
P.O. STEVEN HEISLER  124/119

_____
DET. ISSA KHAROUBA  103/116

_____
DET. LT. Douglas J. Buschel

_____
LT. Stephen M. Carpinielo


1013

# New York State Association of Chiefs of Police, Inc.

**Officers (2006)**

President
David R. Hall
Harrison

*Immediate Past President*
Richard P. Carey
Glens Falls

*1st Vice President*
Dominic W. Guido, Jr.
Monroe

*2nd Vice President*
H. Lloyd Perkins
Skaneateles

*3rd Vice President*
John H. Hazzard
Gloversville

*Executive Director*
John P. Grebert

*Executive Director Emeritus*
Joseph S. Donnelli

*Counsel*
John J. Poklemba

P.O. Box 167

White Plains, New York 10602

**Board of Governors**

Zone 1
Woodrow W. Cromerty II
Amityville

Zone 2
William J. Kilfoil
Port Washington

Zone 3
James D. O'Donnell
Goshen

Zone 4
Robert M. D'Angelo
North Castle

Zone 5
Daniel M. Ricci
Stony Point

Zone 6
Dominick G. Macherone
Glenville

Zone 7
Daniel M. Werner
Baldwinsville

Zone 8
David K. Rouse
Bath

Zone 9
Merwin J. Bohn
Geneseo

Zone 10
Samuel M. Palmiere
Tonawanda

*Retired Member Rep.*
Joseph Del Bianco
Mamaroneck

Nº 1172

## New York State Association of Chiefs of Police

✱ INSIDE COVER     Date  12-15-06

We hereby authorize a _____ Associate Membership for the New York State Association of Chiefs of Police.

Name  BRAE BURN Country C

Address  39 BRAE BURN D.
Purchase NY

$ 2500 cc

Make Checks Payable To:
   New York State Association of Chiefs of Police



Date:12-26-2006  Account:150063932  Amount:$2,500.00  Serial:1013  Sequence:137669070  TR:26013576  TranCode:0  DrCr:D
Pattern:1

TOTAL P.001

To: Mayor Stephen Malfitano
Re: Incident notification

Mayor Malfitano,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

To: Councilman Robert Paladino
Re: Incident notification

Councilman Paladino,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

To: Councilman Thomas Scappaticci
Re: Incident notification

Councilman Scappaticci,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

To: Councilman Joseph Cannella
Re: Incident notification

Councilman Cannella,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

To: Councilman Pat Vetere
Re: Incident notification

Councilman Vetere,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.