UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
WILLIAM C. DUFFELMEYER, MICHAEL
WALTHER, STEVEN HEISLER, JEFF NARDI,
STEPHEN M. CARPINIELLO, EDWARD ARCE,
RALPH TANCREDI, PETER T. DeVITTORIO,
MICHAEL MARINELLI, and ARTHUR
MARINELLI,

       Plaintiffs,

  - against -

LAWRENCE MARSHALL, individually, DAVID
HALL, individually, and the TOWN/VILLAGE OF
HARRISON, NEW YORK,

       Defendants.
-----------------------------------x

**AFFIDAVIT OF MARK N. REINHARZ IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Civil Action No. 07-2807
(WP4) (MDF)

STATE OF NEW YORK )
         ) ss:
COUNTY OF NASSAU )

  MARK N. REINHARZ, being duly sworn deposes and says:

  1. I am a member of Bond, Schoeneck & King, PLLC, counsel for Defendants Lawrence Marshall, David Hall, and the Town/Village of Harrison, New York in this matter and submit this affidavit in support of Defendants' motion to dismiss the complaint.

  2. Annexed hereto as Exhibit A is a copy of a letter dated May 24, 2007 from Michael F. Hughes, Assistant District Attorney. This letter constitutes the Office of the District Attorney, Westchester County's report following a "comprehensive investigation" into Plaintiffs' allegations against Chief of Police David Hall. The report concludes that Chief Hall did not engage in any criminal wrongdoing whatsoever.

WHEREFORE, Defendants requests that their motion to dismiss the complaint be granted in its entirety.

/s/ Mark N. Reinharz
Mark N. Reinharz

Sworn before me this 30th
day of May 2007.

s/ Christopher T. Kurtz
Notary Public

CHRISTOPHER T. KURTZ
Notary Public, State of New York
Qual. in Westchester Co. No. 02KU6135370
Commission Expires Oct. 17, 2009

# EXHIBIT A



OFFICE OF THE DISTRICT ATTORNEY
WESTCHESTER COUNTY

WESTCHESTER COUNTY COURTHOUSE
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601
(914) 995-2000

RECEIVED
LAW DEPT.
TOWN-VLG. OF HARRISON, NY

2007 MAY 24 P 1: 47

**JANET DiFIORE**
DISTRICT ATTORNEY

May 24, 2007

Town/Village Board
Town/Village of Harrison
c/o Jonathan Kraut, Deputy Village Attorney
Municipal Building
1 Heineman Place
Harrison, New York 10528

Re: <u>The March 28, 2007 Complaint of Certain Members of the Harrison Police Department</u>

Dear Harrison Town/Village Board Members:

I am writing to you in response to our meeting, on April 2, 2007, with Harrison Deputy Village Attorney Jonathan Kraut, acting on behalf of the Harrison Town/Village Board. On or about March 30, 2007, members of the Harrison Town/Village Board were given a two page complaint, on a "Harrison Police Department" letterhead, signed by Police Officer Ralph Tancredi, Detective Michael Walther, Police Officer Edward Arce, Sergeant Peter DeVittorio, Police Officer John Audia, Police Officer William Duffelmeyer, Police Officer Steven Heisler, Detective Issa Kharouba, Detective Lieutenant Douglas Buschel and Lieutenant Stephen Carpiniello, each a member of the Harrison Police Department. The complaint concerned a check dated December 10, 2006 and drawn on the charity account of the Brae Burn Country Club, (hereinafter BBCC), in the amount of $2500.00, originally payable to the Harrison Police Association (hereinafter HPA), the union for the Harrison Police Department. A copy of the check was enclosed with the complaint. The payee on the check was altered from the *Harrison Police Association* to the *Chief Police Association*.

Crucial to the concern of this letter, the complaint alleged that Officer Ralph Tancredi was informed by an unidentified person in the administration at BBCC "that the check was personally picked up by Chief Hall at Brae Burn CC". The check was later deposited in the New York State Association of Chiefs of Police (hereinafter NYSACOP) account with the First National Bank of Scotia, New York (hereinafter FNBS) and a receipt for an advertisement in the NYSACOP journal was given to

BBCC. Deputy Village Attorney Kraut, on behalf of the Harrison Town/Village Board, has asked the District Attorney's Office to investigate the matter since the complaint was made by members of the Harrison Police Department and alleged possible criminal wrongdoing by Chief of Police David Hall.

The Public Integrity Bureau has completed a comprehensive investigation into the matter which involved the interview of more than 20 witnesses as well as the review of the records of several businesses and banking institutions. Many of the facts are undisputed and there is no evidence of criminality on the part of Chief Hall. The following findings and conclusions have been made:

In December 2006 the BBCC, through their Charity Committee, voted to approve a charitable donation of $2500.00 to the HPA. The check, numbered 1013 and dated December 10, 2006, was made payable to the HPA in the amount of $2500.00. The BBCC check number 1013 was received and deposited into the NYSACOP account at the FNBS on December 22, 2006.

As of July 1, 2006 and until June 2007, the President of NYSACOP is Monroe Police Chief Dominic W. Giudice, Jr. Harrison Police Chief David Hall was the former President of the NYSACOP, completing his one year tenure on June 30, 2006. NYSACOP Executive Director, John Grebert, in charge of the day-to-day operations, advised us that *Suffolk Productions*, a solicitation/ marketing company, operated by Deborah Cromarty Hallahan, solicits donations on behalf of NYSACOP. Hallahan's sister, Robin Merry, is the accounts receivable clerk and handles the deposit of checks received by *Suffolk Productions* on behalf of NYSACOP which are deposited into the NYSACOP account with the FNBS.

*Suffolk Productions* subcontracts *Civic Partners* to solicit on behalf of NYSACOP in the Westchester area. *Civic Partners*, is owned and operated by Donald Warburton, who employs a professional solicitor named Charles Buyce, who, using telephone books, purchased calling lists, and cold calls, solicits donations on behalf of *Civic Partners*. According to both Buyce and Warburton, the BBCC was identified as a potential donor from a calling list of business leads which had been purchased from a company called *Go Leads*.

According to Buyce, in November or December 2006, he called the BBCC and spoke to the then BBCC General Manager, Robert Meyer, and solicited an ad/donation for NYSACOP and its publication, *The Police Chief Executive*. According to Meyer, he advised the telephone solicitor that he would check with the BBCC's Charity Committee regarding the solicitation. According to Buyce, after a series of telephone conversations between himself and Meyer, the two came to an agreement that the BBCC would purchase an inside cover ad in the amount of $2500.00. Meyer, for his part, claimed that when he received a follow-up call from the solicitor asking if the request had been processed and if the check was ready for pick up, he told the caller that the check would be ready for pick up within a week. According to Buyce, during the course of the solicitation process with Meyer, he faxed a form solicitation letter to

2

the BBCC, soliciting an ad for *The Police Chief Executive*. The price of an inside cover advertisement is $3000.00 but the price is negotiable.

Evidently, based on the statements provided by Buyce and Meyer, the original purpose of the BBCC check numbered 1013 was changed. Buyce and Meyer may or may not have mutually agreed as to the specific police association for whom Buyce was soliciting a donation/ad or to which police association the BBCC check was to be made payable. Nonetheless, it appears that Meyer on behalf of the BBCC had effectively agreed to purchase the advertisement from NYSACOP. Buyce, in good faith, believed the BBCC check tendered to Buyce's agent was proper consideration for that product. Indeed, the March 2007 issue of *The Police Chief Executive* contained a full page inside cover ad of the BBCC on the inside back page.

The President of BBCC, Seth Blumenfeld, has stated that the BBCC Charity Committee was never approached by then General Manager Robert Meyer about a proposed donation or solicitation on behalf of NYSACOP. Moreover, Meyer did not have the authority from the BBCC to contract with NYSACOP for the ad/donation. It must be noted, Meyer, after only about ten months of employment and shortly after this transaction, left his job at the BBCC.

Herein lies the crux of our investigation as it pertains to Chief Hall. According to Buyce, on or about December 15, 2006, he called Meyer and inquired into the status of the ad/donation from the BBCC. Meyer told him the check was prepared and ready for pick up. Buyce then called Warburton at *Civic Partners* who directed the courier employed by *Civic Partners*, James Sheehy, to go to the BBCC to pick up the check. According to Sheehy, he went to the BBCC, met with the club's receptionist, Karen Williams, identified himself by name, and stated he was from the Chief's Association and was present to pick up the check. Meyer was summoned and met with Sheehy in the club's front desk/reception area. According to Williams, Meyer told her to retrieve the Harrison donation check from the office and give it to Sheehy. Williams gave check number 1013 to Meyer in an envelope and Meyer then handed the envelope to Sheehy.

Williams stated she requested a receipt for check number 1013 from Sheehy, who provided to her a pre-printed, numbered receipt of NYSACOP. The original receipt (a copy of which was enclosed with the complaint to the Harrison Town/Village Board) was maintained by the BBCC. Sheehy wrote information on the receipt, including the date, 12-15-06, the amount of $2500.00, and the fact that the donation was for an inside cover advertisement. Both Sheehy and Williams have authenticated the original receipt, which is plainly marked as a receipt of NYSACOP for an inside cover advertisement. Williams explained that when she received the receipt she glanced at the $2500.00 amount to determine if it was correct. Before leaving, Sheehy left several NYSACOP cards and decals at the reception area, a fact confirmed by Williams. According to Sheehy, a few days later he went back to the BBCC to pick up a BBCC business card to be used as a graphic in the newspaper advertisement.

3

After Sheehy obtained the check from Meyer, he forwarded the check and a copy of the receipt to Warburton at *Civic Partners*, who mailed both items to *Suffolk Productions*. According to Robin Merry, she received the check and receipt, stamped the check for deposit with a NYSACOP stamp and mailed the check to the FNBS for deposit. BBCC check number 1013 was deposited into the NYSACOP account at the FNBS on December 22, 2006.

The photocopy of BBCC check number 1013 reveals that the original payee, *Harrison Police Association*, was altered by putting a line through *Harrison* and writing *Chief* above it. The parties known to have personally handled check 1013 between the date it was issued by the BBCC, on December 10, 2006, and the date and time it was deposited into the NYSACOP account at the FNBS, on December 22, 2006, are Karen Williams, Robert Meyer, James Sheehy, Donald Warburton, Deborah Cromarty Hallahan and Robin Merry. When each of these individuals was questioned during this investigation about the alteration to the payee, each person denied altering the check.

James Sheehy admitted to being the man who picked up BBCC check number 1013 from Robert Meyer and provided the original NYSACOP receipt to Karen Williams on December 15, 2006. Nonetheless, during this investigation both Williams and Meyer were shown photographic arrays containing a photograph of James Sheehy. Williams positively identified Sheehy as the man who picked up check number 1013 on December 15, 2006 at the BBCC. Meyer was unable to make any identification. Both witnesses also provided to investigators similar descriptions of the man who picked up the check, a description which matched Sheehy and which did not match Chief Hall. Neither witness claimed to have ever met Chief Hall or ever identified him in person or from a photograph as someone with whom they had any dealings. Williams also stated she went onto the Harrison Police Department website, observed a picture of Chief Hall, and is unequivocal that Chief Hall was **not** the person who picked up the BBCC check on December 15, 2006.

Harrison Police Chief David Hall has also been interviewed in the course of this investigation. Chief Hall unequivocally denied any involvement or role in the introduction of the BBCC to NYSACOP or its contract solicitors or in the solicitation, receipt, alteration or deposit of BBCC check number 1013.

Based upon the thorough investigation conducted by this Office, the serious allegations contained in the two page complaint signed by members of the Harrison Police Department that Chief David Hall was involved in this matter are simply false.

There is also insufficient evidence to establish that a criminal larceny was committed by any member of NYSACOP or its agents or that the alteration of the payee on check 1013 was done with intent to defraud. A BBCC employee, who was acting outside his authority, contracted with an agent of NYSACOP for an advertisement posted in the March 2007 issue of *The Police Chief Executive*. The check originally intended for the HPA was thereafter tendered by that same BBCC employee as full

4

consideration for the purchased advertisement. The BBCC was provided a written receipt for $2500.00 from NYSACOP at the time of the transfer of the check. If the alteration of the check was done to reflect this business deal, the intent to defraud BBCC is not present. A criminal charge is not supported under these circumstances.

Our investigation, however, raises significant questions about the methods and practices of the professional solicitors involved in this matter. Therefore, this Office is forwarding a copy of this letter to the New York State Attorney General's Office, the agency responsible for monitoring the conduct, operation and practices of charitable organizations, for any action it deems appropriate.

Very truly yours,

JANET DiFIORE
DISTRICT ATTORNEY

Michael F. Hughes
Assistant District Attorney
Chief, Public Integrity Bureau

# CERTIFICATE OF SERVICE

      I hereby certify that on May 30, 2006, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic service upon the following parties and participants:

Jonathan Lovett, Esq.
Lovett & Gould, LLP
222 Bloomingdale Road
White Plains, New York 10605
Attorney for Plaintiffs

                                                        /s/ Mark N. Reinharz
                                      Mark N. Reinharz (MR 6201)
                                      Bond, Schoeneck & King, PLLC
                                      Attorneys for Defendants
                                      1399 Franklin Avenue, Suite 200
                                      Garden City, New York 11530
                                      (516) 267-6320