UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WILLIAM C. DUFFELMEYER, MICHAEL
WALTHER, STEVEN HEISLER, JEFF NARDI,
STEPHEN M. CARPINIELLO, EDWARD ARCE,
RALPH TANCREDI, PETER T. DeVITTORIO,          Civil Action No. 07-2807
MICHAEL MARINELLI, and ARTHUR                 (WP4) (MDF)
MARINELLI,

                          Plaintiffs,

            - against -

LAWRENCE MARSHALL, individually, DAVID
HALL, individually, and the TOWN/VILLAGE OF
HARRISON, NEW YORK,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT AND FACTS ............................................................... 1

Plaintiffs' March 27, 2007 Letter........................................................................... 1

Plaintiffs' Prior Litigation Against the Town/Village, Captain Marraccini and Chief Hall..... 2

The Investigation and the Findings......................................................................... 3

ARGUMENT ............................................................................................................. 4

STANDARD OF REVIEW ...................................................................................... 4

POINT I .................................................................................................................. 5

    PLAINTIFFS' FAILURE TO ALLEGE AN UNCONSTITUTIONAL
    CUSTOM OR POLICY WARRANTS DISMISSAL OF THEIR CLAIMS
    AGAINST THE TOWN/VILLAGE ............................................................... 5

        A.  No Unconstitutional Custom Or Policy Is Pled ............................... 5

        B.  The Alleged Unconstitutional Action Was Taken by A Non-
            Policymaker ............................................................................. 7

POINT II ................................................................................................................. 9

    LIEUTENANT MARSHALL'S DIRECTIVE TO THE PLAINTIFFS THAT
    THEY NOT SPEAK ABOUT A PENDING POLICE INVESTIGATION
    DID NOT VIOLATE THEIR FIRST AMENDMENT RIGHTS. ................. 9

        A.  The Pickering Balancing Test........................................................ 10

        B.  The Balance Of Interests Weigh Heavily In Favor Of The
            Police Department ................................................................... 12

        C.  Plaintiffs Have Failed To Properly Plead A "Chilling" Of
            Their First Amendment Rights .................................................. 17

POINT III................................................................................................................ 19

    PLAINTIFFS' CLAIMS AGAINST DEFENDANT DAVID HALL MUST
    BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE
    THAT HE WAS PERSONALLY INVOLVED IN ANY
    CONSTITUTIONAL DEPRIVATION ...................................................... 19

POINT IV................................................................................................................ 20

    THE INDIVIDUAL DEFENDANTS ARE PROTECTED BY THE
    DOCTRINE OF QUALIFIED IMMUNITY ............................................. 20

CONCLUSION......................................................................................................... 22

56793.1 5/30/2007

## TABLE OF AUTHORITIES

*Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987)............................................................19

*Allan v. City of New York*, 386 F. Supp. 2d 542 (S.D.N.Y. 2005)...................................................8

*Allen v. City of New York*, 2007 WL 24796 (S.D.N.Y. 2007) ....................................................8, 9

*Almonte v. City of Long Beach*, 478  F.3d 100 (2d Cir. 2007) ......................................................21

*Anderson v. Creighton*, 483 U.S. 635 (1987) ...............................................................................21

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003)............................................................7

*Barnard v. Jackson County, Missouri*, 43 F.3d 1218 (8th Cir. 1995) ...........................................13

*Barr v. Abrams*, 810 F.2d 358 (2d Cir. 1987)...............................................................................4

*Batista v. Rodriguez*, 702 F.2d 393 (2d Cir. 1983).......................................................................6

*Birmingham v. Ogden*, 70 F. Supp. 2d 353 (S.D.N.Y. 1999) ........................................................5

*Blum v. Schlegal*, 18 F.3d 1005 (2d Cir. 1994)............................................................................10

*Brodeur v. City of New York*, 1998 WL 557599 (S.D.N.Y. 1998) .................................................6

*Claudio v. City of New York*, 423 F. Supp. 2d 170 (S.D.N.Y. 2006) ............................................6

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)...........................................................................19

*Connell v. City of New York*, 2002 WL 22033 (S.D.N.Y. 2002)...................................................20

*Connick v. Meyers*, 461 U.S. 138 (1983)..............................................................................10, 12

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ..............................................................................21

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001)...........................................................9, 18

*Davis v. Scherer*, 468 U.S. 183 (1984) ..................................................................................21, 22

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 1999) ............................................................................14

*Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006)...............................................................................10

*Grennan v. Nassau County BOCES*, 2007 WL 952067 (E.D.N.Y. 2007).....................................17

*Hamlett v. Town of Greenburgh*, 2007 WL 119291 (S.D.N.Y. 2007)..............................................5

*Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) .....................................17

*Hankard v. Town of Avon*, 126 F.3d 418 (2d Cir. 1997) ................................................................17

*Harman v. City of New York*, 140 F.3d 111 (2d Cir. 1998)..............................................10, 12, 13

*Hock v. County of Bucks*, 2005 WL 3488726 (E.D. Pa. 2005)........................................................8

*Howard v. Town of Bethel*, 2006 WL 949766 (S.D.N.Y. 2006)......................................................9

*Hunter v. Bryant*, 502 U.S. 224 (1991)..........................................................................................21

*Jeffes v. Barnes*, 208 F.3d 49 (2d Cir. 2000) ..................................................................................7

*Kerman v. City of New York*, 261 F.3d 229 (2d Cir. 2001) ...........................................................21

*Laird v. Tatum*, 408 U.S. 1 (1972)..................................................................................................18

*Leeds v. Meltz*, 85 F.3d 51 (2d Cir. 1996).......................................................................................4

*Lewis v. Cowen*, 165 F.3d 154 (2d Cir. 1999) ...............................................................................10

*Lytle v. City of Haysville, Kansas*, 138 F.3d 857 (10th Cir. 1998) .....................................13, 14, 15

*Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003) ..................................................................................8

*Magee v. Nassau County Medical Center*, 27 F. Supp. 2d 154 (E.D.N.Y. 1998) ...........................4

*Malone v. City of New York*, 2006 WL 2524197 (E.D.N.Y. 2006) ..................................................7

*Marable v. Kurtz*, 2000 WL 1279763 (S.D.N.Y. 2000) ................................................................20

*Marinoff v. City College of New York*, 357 F. Supp. 2d 672 (S.D.N.Y. 2005)..............................12

*McEnery v. City of New York*, 2006 WL 2224566 (S.D.N.Y. 2006)................................................5

*McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385 (S.D.N.Y. 2005).....................20

*Mehrhoff v. William Floyd School District*, 2005 WL 2077292 (E.D.N.Y. 2005)...................4, 20

*Melton v. City of Oklahoma City*, 879 F.2d 706 (10th Cir. 1989) ..................................................15

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ......................................................5

iii

*Moore v. City of Wynnewood*, 57 F.3d 924 (10th Cir. 1995)...........................................................15

*Moscowitz v. Brown*, 850 F. Supp. 1185 (E.D.N.Y. 1994).............................................................6

*Mosser v. Haney*, 2005 WL 1421440 (N.D. Tex. 2005)................................................................9

*Murphy v. City of Chicago*, 2002 WL 977508 (N.D. Ill. 2002)....................................................8

*Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998)...............................................................8

*Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003)......................................................................17

*Orange v. District of Columbia*, 59 F.3d 1267 (D.C. Cir. 1995)..............................................13, 14

*Perkins v. New York City Department of Correction*, 887 F. Supp. 92 (S.D.N.Y. 1995) ..............6

*Pickering v. Board of Education*, 391 U.S. 563 (1968)...........................................................10, 12

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002) .............................................................................20

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007)........................................................5, 20

*Russo v. City of Hartford*, 341 F. Supp. 2d 85 (D. Conn. 2004)...................................................9

*Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290 (M.D. Ala. 2005) ........13, 14, 15

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ......................................................18

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d Cir. 2002) ..........................................4

*Spear v. Town of West Hartford*, 954 F.2d 63 (2d Cir. 1992) ......................................................18

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994)..............................................7

*United States v. National Treasury Employees Union*, 513 U.S. 454 (1995)................................10

*Van Emrik v. Chemung County Department of Social Serv.*, 911 F.2d 863 (2d Cir. 1990) ...........6

*Wallace v. Conroy*, 945 F. Supp. 2d 628 (S.D.N.Y. 1996)...........................................................20

*Walsh v. City of Auburn*, 2000 WL 976900 (N.D.N.Y. 2000)......................................................18

*Waters v. Churchill*, 511 U.S. 661 (1994) ...................................................................................17

*Williams v. Dekalb County*, 2007 WL 41955 (N.D. Ga. 2007) .....................................................9

*Wilson v. City of Boston*, 421 F.3d 45 (1st Cir. 2005) ....................................................................8

*Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989).................................................................15

*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995)..................................................................6

*Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007) ....................................................................17, 22

v

## PRELIMINARY STATEMENT AND FACTS

Defendants Lawrence Marshall, David Hall, and the Town/Village of Harrison, New York ("Defendants") submit this Memorandum of Law in Support of Their Motion to Dismiss the complaint. As set forth below, Defendants maintain that the complaint fails to state a claim upon which relief may be granted and therefore must be dismissed. In addition, both of the individual Defendants are protected by the doctrine of qualified immunity.

**Plaintiffs' March 27, 2007 Letter**

Plaintiffs are police officers in the Town/Village of Harrison Police Department ("Department"). Complaint ¶ 3. Defendant Lawrence Marshall is a Lieutenant in the Department, and Defendant David Hall is the Department's Chief of Police. Complaint ¶¶ 4-5.

In a letter dated March 27, 2007, Plaintiffs made a complaint to Police Captain Anthony Marraccini (who is not named as a defendant) and members of the Town/Village of Harrison Board of Police Commissioners about an alleged theft of Harrison Police Association ("PBA") funds by Chief Hall on behalf of the New York State Chiefs of Police Association. Complaint ¶ 7. A copy of the letter is annexed to the complaint.

According to the Plaintiffs, PBA President Ralph Tancredi learned in January 2007 that the Brae Burn Country Club ("Club") "had not sent their customary annual donation [to the PBA]." After making inquiries to the Club, Tancredi learned that it had in fact made a donation of $2,500 to the Harrison PBA. Tancredi claimed that this donation, made by check, had been personally picked up at the Club by Chief Hall. Complaint ¶ 7.

Thereafter, Tancredi and other members of the Executive Board of the PBA were contacted by Club administration who informed them that the check to the PBA had been altered. The check, originally payable to the PBA, was changed and made payable instead to the New

York State Chiefs of Police Association. Subsequently, the Club received a receipt for an advertisement in the Chiefs of Police Journal. According to Tancredi, "Chief Hall never discussed the advertisement with the Brae Burn charitable donation committee and Brae Burn did not authorize anyone to cross out Harrison in the payee line and replace it with Chiefs." Accordingly, Plaintiffs requested that Captain Marraccini investigate this matter. They also stated that:

> [I]f we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency.

Complaint ¶ 7.

As noted, Plaintiffs' letter was delivered to Captain Anthony Marraccini in the Harrison Police Department. However, the same letter was also delivered to the Mayor and Trustees with the following note:

> The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

Complaint ¶ 7 referenced enclosures.

**Plaintiffs' Prior Litigation Against the Town/Village, Captain Marraccini and Chief Hall**

The allegations were raised in the March 27 letter just weeks after all of the Plaintiffs had filed two separate matters against the Town/Village, Chief Hall and Captain Marraccini – *DeVittorio et al. v. Hall, Marraccini, and the Town/Village of Harrison, New York*, Index No. 07-0812 (WCC) and *Carpiniello et al. v Hall, Marraccini and the Town/Village of Harrison, New York*, Index No. 07-1956 (WCC) – which alleged, *inter alia*, that Defendants violated Plaintiffs' constitutional rights by installing a video camera in a locker room. On March 30,

2

2007, Defendants moved to disqualify the law firm of Lovett & Gould, LLP from representing the Plaintiffs in the *DeVittorio* and *Carpiniello* actions because the firm has a long history of representing one of the defendants, Anthony Marraccini. Six days after the motions were filed, this lawsuit was filed without Marraccini being named as a defendant. The disqualification motion is presently pending before Judge Conner.

### The Investigation and the Findings

Within hours of making their complaint, Plaintiffs allege that Chief Hall directed Lt. Marshall and other members of the Department's "administration"[1] to investigate the matter. Complaint ¶¶ 7-8. Thereafter, Lt. Marshall informed Plaintiffs that the matter was being referred to the Public Integrity Bureau of the Westchester County District Attorney's Office. Marshall "personally advised" Plaintiffs not to discuss their complaint or the resulting investigation with other law enforcement agencies, members of the Department, or their union. Complaint ¶ 9-10. Plaintiffs allege that the directive given by Lt. Marshall violated the First Amendment because they have been chilled from exercising their rights, and have brought claims under 42 U.S.C. § 1983. Complaint ¶¶ 11, 14.

On or about May 24, 2007, the Office of the District Attorney, Westchester County issued its findings with regard to its "comprehensive" investigation. The District Attorney concluded that "many of the facts are undisputed and there is no evidence of criminality on the part of Chief Hall." Reinharz Aff. Exhibit A at p. 2. The report notes that the Chief never went to the Country Club to pick up the check, never had the check in his possession, and, other than being the former President of the of the New York State Chiefs of Police, simply had nothing to do with this matter at all. As such, it was unequivocally concluded that:

---

[1] The Complaint does not name who these individuals are.

> Based upon the investigation conducted by this Office, the serious allegations contained in the two page complaint signed by members of the Harrison Police Department that Chief David Hall was involved in this matter are simply false.

*Id.* at p. 4.

## ARGUMENT

### STANDARD OF REVIEW

When addressing a motion to dismiss, while the court will accept well-pleaded allegations in the complaint as true, "allegations that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the Plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim." *Mehrhoff v. William Floyd School District*, 2005 WL 2077292, *3 (E.D.N.Y. 2005) *citing Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987); *see also Magee v. Nassau County Med. Ctr.*, 27 F. Supp. 2d 154 (E.D.N.Y. 1998) (same). "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (citation and quotation omitted); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996) ("While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice.").

As demonstrated below, the complaint in this case contains only conclusory averments of a First Amendment violation. The complaint summarily states a legal conclusion that the Plaintiffs' First Amendment rights have been violated but provide no factual support whatsoever for such an assertion. The complaint is therefore fatally deficient and must be dismissed.

56793.1 5/30/2007

## POINT I

## PLAINTIFFS' FAILURE TO ALLEGE AN UNCONSTITUTIONAL CUSTOM OR POLICY WARRANTS DISMISSAL OF THEIR CLAIMS AGAINST THE TOWN/VILLAGE

**A.    No Unconstitutional Custom Or Policy Is Pled**

As a matter of law, the Town/Village of Harrison ("Town/Village") cannot be held liable in this lawsuit under 42 U.S.C. § 1983.

Municipalities cannot be held liable under Section 1983 on a theory of respondeat superior. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 373 (S.D.N.Y. 1999). "Municipal liability under § 1983 for the conduct of employees below the policymaking level requires that a plaintiff show a violation of his constitutional rights that resulted from a municipal custom or policy." *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007). As this Court has noted:

> In order to hold a municipality liable under § 1983 for unconstitutional acts of its employee, a plaintiff must show that the violation of his constitutional rights resulted from a municipal policy or custom. *See Monell*, 436 U.S. at 694. A plaintiff may satisfy the policy or custom requirement by alleging the existence of: (1) an official policy of the municipality; (2) "actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question"; (3) "a practice so consistent and widespread that it constitutes a custom or usage sufficient to impute constructive knowledge of the practice to policymaking officials"; or (4) a failure by the municipal policymakers to supervise employees to such an extent that it amounts to deliberate indifference to the rights of those who come in contact with these employees. *McEnery v. City of New York*, No. 03 Civ. 6307, 2006 WL 2224566, at *10 (S.D.N.Y. Aug. 3, 2006).

*Hamlett v. Town of Greenburgh*, 2007 WL 119291, *3 (S.D.N.Y. 2007) (Fox, MJ).

Thus, in order for a municipality to be held liable in such an action, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the

5

plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995); *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983); *see also Perkins v. New York City Dep't of Corr.*, 887 F. Supp. 92 (S.D.N.Y. 1995) (because respondeat superior is not available under claims brought pursuant to § 1983, "a Plaintiff must plead and prove a municipal policy and custom which caused an alleged constitutional violation"); *Moscowitz v. Brown*, 850 F. Supp. 1185, 1197 (E.D.N.Y. 1994) (dismissing plaintiff's claim of discrimination by police department because "plaintiff must demonstrate that defendant's actions were caused by a specific and identifiable official policy" in order to state a claim under § 1983).

The complaint here does not allege the existence of any official policy or custom that caused Plaintiffs to suffer a constitutional deprivation. Rather, in conclusory fashion, the Plaintiffs allege:

> By reason of Defendants' conduct, each of the Plaintiffs has been caused: emotional upset; anxiety; violations of First Amendment protected rights; humiliation; embarrassment; shame and has otherwise been rendered sick and sore.

Complaint ¶ 13. Such conclusory allegations fail to state a constitutional violation against the Town/Village. As such, the Section 1983 claims asserted against the Town/Village must be dismissed. *See, e.g., Van Emrik v. Chemung County Dep't of Soc. Serv.*, 911 F.2d 863, 868 (2d Cir. 1990) (claim against County dismissed when plaintiff failed to adequately allege any custom or policy that County contributed to denial of plaintiff's constitutional rights); *Claudio v. City of New York*, 423 F. Supp. 2d 170, 172 (S.D.N.Y. 2006) ("No practices of the City of New York are even mentioned in the instant Complaint, and even conclusory allegations of official custom or practice will fail to survive a motion to dismiss."); *Brodeur v. City of New York*, 1998 WL 557599, *7, *9 (S.D.N.Y. 1998) (dismissing complaint against municipal defendant because "the complaint fails to allege any policy or custom under which unconstitutional practices occurred.

6

The conclusory allegations in the complaint relate only to how Plaintiff was treated, not to any policy or custom affecting the general populace or class of persons."); *Malone v. City of New York*, 2006 WL 2524197, *3 (E.D.N.Y. 2006) ("As Malone's pleadings contain no such allegations [of a custom or policy], his Section 1983 claims against the City must be dismissed.").

**B.      The Alleged Unconstitutional Action Was Taken by A Non-Policymaker**

Presumably, Plaintiffs will try and claim that a custom or policy can be established by government officials responsible for establishing the municipal policies that caused the particular deprivation in question. In this case, however, the individual who is alleged to have imposed the gag order, Lt. Marshall, is clearly not a policymaker. The complaint alleges that:

> … Marshall personally advised the Plaintiffs or virtually all of the Plaintiffs that the[y] were ordered to silence and were henceforth forbidden to communicate with any other law enforcement agencies and/or members of the Harrison Police Department and/or members of the Harrison Police Association with respect to their fact based beliefs that Hall had forged the subject check, been in criminal possession of that forged instrument, and intentionally stole on behalf of his Chiefs Association moneys he knew were intended for the Harrison Police Association.

Complaint ¶ 9. As a matter of law, Lt. Marshall is not a policymaker.

"The issue of final policymaking authority is a legal issue to be determined on the basis of state law rather than a factual issue to be decided at trial." *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1349 (2d Cir. 1994); *see Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000) ("with respect to the conduct challenged, [the Defendant] must be responsible under state law for making policy in that area of the [municipality's] business.") (internal citations omitted).

There can be no municipal liability here because Marshall, as a Lieutenant, is not a policymaker for the Town/Village. *See, e.g., Anthony v. City of New York*, 339 F.3d 129, 140 (2d

Cir. 2003) (police sergeant not a final policy maker for purposes of municipal liability); *Allan v. City of New York*, 386 F. Supp. 2d 542, 546 (S.D.N.Y. 2005) (police captain not a policy maker); *Allen v. City of New York*, 2007 WL 24796, *20 (S.D.N.Y. 2007) (New York City police chief held not to be a policymaker for purposes of municipal liability); *Wilson v. City of Boston*, 421 F.3d 45, 60 (1st Cir. 2005) (police captain held not to be a policymaker); *Lytle v. Doyle*, 326 F.3d 463, 472-73 (4th Cir. 2003) (it is "far fetched" to assert that captains and lieutenants are policymakers); *Murphy v. City of Chicago*, 2002 WL 977508, *6 (N.D. Ill. 2002) ("Murphy has cited no cases to suggest that lieutenants and commanders involved in personnel decisions for the CPD have the final policymaking authority for the department."); *Hock v. County of Bucks*, 2005 WL 3488726, *2-3 (E.D. Pa. 2005) (corrections officer captain held not to be a policymaker). Thus, in light of Marshall's status as a non-policymaker, there can be no municipal liability for the Town/Village. *See, e.g., Myers v. County of Orange*, 157 F.3d 66, 76 (2d Cir. 1998) ("[a]s a municipal corporation, Orange County can be held liable under 42 U.S.C. § 1983 only for the actions of its own policymakers").

Finally, even if the complaint alleged that Chief Hall, and not Lt. Marshall, issued the order (which it does not), that too would be insufficient to state a claim against the Town/Village. Under New York Unconsolidated Laws § 5711-q, it is the Town/Village Board acting as the Police Commissioners, which sets forth policies on the administration of the entire Department:

> 8. Administration. The board of trustees or municipal board acting as police commissioners of any village, may make, adopt and enforce rules, orders and regulations for the government, discipline, administration and disposition of the police department of such village, and the members thereof. Any such rules and regulations or any amendment thereto shall be in written form and a copy of the same distributed to each member of the police

8

department and posted in a conspicuous place in the police
headquarters.

N.Y. Unconsol. L. § 5711-q(8). Chief Hall is therefore not a final policymaker for purposes of

administering the Town/Village Police Department. *See, e.g., Allen v. City of New York*, 2007

WL 24796, *20 (S.D.N.Y. 2007); (New York City police chief held not to be a policymaker for

purposes of municipal liability); *Russo v. City of Hartford*, 341 F. Supp. 2d 85, 108 (D. Conn.

2004) (police chief not considered a policymaker); *Mosser v. Haney*, 2005 WL 1421440, *4

(N.D. Tex. 2005) (police chief not a policymaker); *Williams v. Dekalb County*, 2007 WL 41955,

*6 (N.D. Ga. 2007) (police chief not a policymaker).

In light of the foregoing, there can be no municipal liability and the claims against the

Town/Village must be dismissed in their entirety.

## POINT II

### LIEUTENANT MARSHALL'S DIRECTIVE TO THE PLAINTIFFS THAT THEY NOT SPEAK ABOUT A PENDING POLICE INVESTIGATION DID NOT VIOLATE THEIR FIRST AMENDMENT RIGHTS.

Even assuming, *arguendo*, that the Court were to find that the Plaintiffs have sufficiently

plead a custom or policy against the Town/Village, the complaint nonetheless fails to allege any

First Amendment violation. Contrary to Plaintiffs contentions, directives to police officers to not

speak about pending police investigations do not violate the First Amendment.

To recover on a claim that government actors, by their words or conduct, chilled one's

right to freedom of speech, a "plaintiff must prove: (1) he has an interest protected by the First

Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of

that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment

right." *Howard v. Town of Bethel*, 2006 WL 949766 (S.D.N.Y. 2006) *quoting Curley v. Village*

*of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

9

Whether the Plaintiffs actually engaged in speech on a matter of public concern is questionable here as the timing of their allegations are certainly suspicious. *See, e.g., Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999); *Harman v. City of New York*, 140 F.3d 111, 119 (2d Cir. 1998) (examining whether speaker was motivated by "a desire to continue contributing to the public debate" when criticizing practices and policies of social services agency); *Blum v. Schlegal*, 18 F.3d 1005, 1012 (2d Cir. 1994) ("the fact that an employee's speech [critical of national drug policy] touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal"). Whether the Plaintiffs were concerned about a public official stealing or were more interested in trying to embarrass Chief Hall, who had been named as a defendant in two lawsuits they had just filed, is far from certain. Nevertheless, for purposes of this motion *only*, it will not be contested.

## A.    The Pickering Balancing Test

It is well settled that "a public employee does not relinquish First Amendment rights to comment on matters of public interests by virtue of government employment." *Connick v. Meyers*, 461 U.S. 138, 140 (1983) *citing Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). This is not to say, however, that the First Amendment rights of public employees are absolute. Rather, it has been recognized that government has a "greater leeway to control employees' speech that threatens to undermine its ability to perform its legitimate functions" (*Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir. 1999)), and that government "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. National Treasury Employees Union*, 513 U.S. 454, 465 (1995). Recently, in *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006), the Supreme Court held that "a government entity has broader discretion to restrict speech when it acts in its role as employer,

10

but the restrictions it imposes must be directed at speech that has some potential to affect the

entity's operations." Indeed, the Supreme Court has long recognized that:

> Government agencies are charged by law with doing particular
> tasks. Agencies hire employees to help do those tasks as
> effectively and efficiently as possible. When [an employee] ...
> begins to do or say things that detract from the agency's effective
> operation, the government employer must have some power to
> restrain [him].

*Waters v. Churchill*, 511 U.S. 661, 674-75 (1994).

In language particularly applicable to the instant case, the plurality in *Churchill* stated:

> [T]he extra power the government has in this area comes from the
> nature of the government's mission as an employer. Government
> agencies are charged by law with doing particular tasks. Agencies
> hire employees to help do those tasks as effectively and efficiently
> as possible. When someone who is paid a salary so that she will
> contribute to an agency's effective operation begins to do or say
> things that detract from the agency's effective operation, the
> government employer must have some power to restrain her. The
> reason the governor may . . . fire [a robustly critical high-ranking]
> deputy is not that this dismissal would somehow be narrowly
> tailored to a compelling government interest. It is that the governor
> and the governor's staff have a job to do, and the governor
> justifiably feels that a quieter subordinate would allow them to do
> this job more effectively.
>
> The key to First Amendment analysis of government employment
> decisions, then, is this: The government's interest in achieving its
> goals as effectively and efficiently as possible is elevated from a
> relatively subordinate interest when it acts as sovereign to a
> significant one when it acts as employer. The government cannot
> restrict the speech of the public at large just in the name of
> efficiency. But where the government is employing someone for
> the very purpose of effectively achieving its goals, such restrictions
> may well be appropriate.

*Id*. The Court in *Churchill* thus recognized the right of a governmental employer to deal with

disruption in the workplace. It emphasized that the government, as employer, has efficiency

concerns that give it greater discretion in dealing with a disruptive employee and more discretion

than it would have to deter speech by a private citizen. *Id.*

11

Therefore, in order to determine the constitutionality of a restriction on employee speech, a court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. This test only applies, however, when the employee speaks "as a citizen upon matters of public concern" and not "as an employee upon matters only of personal interest." *Connick v. Myers*, 461 U.S. 138, 147 (1983).

**B.    The Balance Of Interests Weigh Heavily In Favor Of The Police Department**

As applied in this case, the *Pickering* balance must be struck in favor of the Department. The Department's substantial interests in preserving the integrity of an open investigation and in ensuring the effective functioning of the Department override Plaintiffs' interest in disclosing information about the theft complaint and investigation to third parties. Moreover, the fact that the order only affected the few police officers who provided information to the Department about the alleged wrongful conduct, demonstrates that the Department's actions were narrowly tailored. *See Marinoff v. City College of New York*, 357 F. Supp. 2d 672, 687 (S.D.N.Y. 2005) (moratorium on professor's activities held to be lawful as it was "particularized" instead of "generally applicable").

This Circuit has recognized that although "[g]overnment employees are often in the best position to know what ails the agencies for which they work" and that "public debate may gain much from their informed opinions," government entities have a significant interest in maintaining the confidentiality of information relating to their internal operations. *Harman v. City of New York*, 140 F.3d 111, 119, 122 (2d Cir. 1998). This is because government must be able to keep its employees disclosing such information that will disrupt its effective functioning

12

as a governing body. *Id.* at 122. At issue in *Harman* was the ability of the New York City Child Welfare Administration to require its employees obtain prior approval before disseminating information to the press. Therein, the court expressly stated:

> The need to protect confidential information relating to children and families is <u>undeniably significant</u>. Not only could disclosure of such information injure the reputation and security of those the agencies serve, but a failure to maintain confidentiality may undermine public confidence in the agency. Citizens may hesitate to report troublesome situations or to seek public assistance if they cannot rely on the agencies to keep such information secret.

*Id.* at 122 (emphasis added). For the same reasons as in *Harman*, other courts have also recognized the substantial governmental interest in limiting employee speech so to protect the integrity of on-going investigations. *See, e.g.*, *Lytle v. City of Haysville, Kansas*, 138 F.3d 857, 868 (10th Cir. 1998) (government interest in ensuring its effective functioning of police department outweighed police officer's interest in disclosing information about a confidential police investigation); *Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290, 1296 (M.D. Ala. 2005) (government interest in preserving integrity of a police investigation outweighed police officer's interest in disclosing information relating to the investigation); *Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 1999) (employer's interest in preserving integrity of investigation outweighed employee's interest in discussing investigation with co-workers); *Orange v. District of Columbia*, 59 F.3d 1267, 1273 (D.C. Cir. 1995) ("Applying the *Pickering* factors, we conclude that the governments' interest in protecting the integrity of its investigation into fraud clearly outweighed whatever interest [employee] had in disclosing confidential information obtained as a result of his own investigation"); *Barnard v. Jackson County, Missouri*, 43 F.3d 1218, 1224-1225 (8th Cir. 1995) (legislature's interest in effective functioning outweighed legislative auditor's interest in providing audit and investigation results to press prior to dissemination of results to the legislature) *cert. denied*, 516 U.S. 808 (1995).

13

In *Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 2004), the court held an employer's restriction on an employee's speech about a disciplinary investigation into that employee's misconduct was justified because the employer's interest "in prevent[ing] further disruption of the workplace and potential interruption of the investigation" outweighed the employee's interest in speaking. *Id.* at 598. Similarly, in *Orange v. District of Columbia*, 59 F.3d 1267 (D.C. Cir 1995), an employee alleged that he was terminated in retaliation for having disclosed information about possible fraud involving a public university. Noting the employer already possessed the information the employee disclosed and had actually began investigating the allegations, the court found the employee's speech was not protected by the First Amendment. *Id.* at 1273. The court held "that the governments' interest in protecting the integrity of its investigation into fraud clearly outweighed whatever interest [employee] had in disclosing confidential information obtained as a result of his own investigation." *Id.*

Of particular note, however, are *Lytle v. City of Haysville, Kansas*, 138 F.3d 857 (10th Cir. 1998) and *Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290, 1296 (M.D. Ala. 2005). In *Lytle v. City of Haysville, Kansas*, a police officer was directed not to speak to either any attorney or the press about a confidential police investigation into alleged police misconduct. The officer in that case had disclosed his belief that other officers who responded to the scene of a shooting had not given the necessary medical aid to a dying victim and thereby committed murder. An investigation into the alleged murder then ensued. Following this disclosure, however, the officer alleged that the police department attempted to hide the responding officers' misconduct, and that he was fired for having brought their misconduct to light. Applying the *Pickering* balancing test, the court held that the City's interests in preventing disclosure of information relating to a confidential police investigation outweighed the officer's interest in

14

speaking. Finding that the officer's disclosure to people outside the department effectively undermined the department's ability to effectively function since his "co-employees no longer trusted him with confidential information regarding the ... investigation, or any other sensitive police matter," the court stated:

> "Any breach of confidentiality ... reflects negatively on an officer's ability and competence to perform his job, and each officer's competence affects the overall effectiveness of the department." *Melton* [*v. City of Oklahoma City*], 879 F.2d [706,] 715 [(10th Cir. 1989)]. Moreover, personal loyalty and confidence are especially important among police officers, who are charged with ensuring public safety and who often must work together in life-and-death situations. See *Moore* [*v. City of Wynnewood*], 57 F.3d [924,] 934 [(10th Cir. 1995)] (The "need [for workplace harmony] is particularly acute in the context of law enforcement, where there is a 'heightened interest … in maintaining discipline and harmony among employees.'" *quoting Wulf v. City of Wichita*, 883 F.2d 842, 861 (10th Cir. 1989)).

*Lytle*, 138 F.3d at 867. Thus, the court found that that the officer's disclosure of information relating to the investigation was simply not protected by the First Amendment. *Id.* at 868.

Furthermore, in *Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290, 1296 (M.D. Ala. 2005), the court held a police officer's disclosure of confidential information relating to an open police investigation was not protected speech. *Id.* at 1297. The investigation in *Signore* involved a vehicle theft; however, the fact that the stolen vehicle was a police car had not been disclosed to the public. *Id.* at 1297 n.3. Inadvertently, the officer informed a reporter that a police car had been stolen. Concluding that whatever interest the officer had in informing the public of the theft was "a weak one," the court held it was clearly "outweighed by the City's interest in ensuring efficient investigations by preserving as confidential details of a vehicle theft while the criminal investigation, and possibly internal affairs investigation, proceeded." *Id.*

Like the cases discussed above, this case too hinges on the Department's ability to protect the integrity of a then-open investigation into an alleged theft by preventing disclosure of

56793.1 5/30/2007

confidential information relating to that investigation. The information Plaintiffs were instructed not to disclose solely related to an internal police investigation into their allegations against Chief Hall. When Plaintiffs disclosed their belief that the Chief had engaged in wrongdoing by way of their March 27, 2007 letter to Captain Marraccini and the Board (a claim ultimately determined to be false), the Department immediately began investigating the matter. Because the alleged theft was therefore already known by the Department, further disclosure by Plaintiffs to other individuals or entities would not serve to uncover unknown wrongdoing; rather, it could both disrupt and jeopardize the investigation that was already underway. For example, had Plaintiffs' been permitted to discuss their belief that the Chief had stolen PBA funds with other members in the Department, their discussions would necessarily bias those individuals spoken with into forming a belief as to the Chief's guilt or innocence. Lt. Marshall, or anyone else investigating the allegation would therefore be precluded from ascertaining from those other members whether they had any information relevant to the investigation – those who believed the Chief to be innocent could act to protect him, whereas those who believed in his guilt could do the opposite. Either way, whatever information then provided would be jaded by the individuals' subjective interpretation of the facts, rather than simply being the objective facts themselves. All that Plaintiffs' were instructed not to do was to not interject themselves into an open investigation so that the investigator could effectively and efficiently investigate Plaintiffs' own allegations. Any discussions Plaintiffs' would have otherwise had absent this instruction would do nothing but contaminate the investigation. Under these circumstances, the Department's interest in ensuring its effective functioning by protecting the integrity of an open investigation into alleged criminal activity clearly outweigh Plaintiffs' interests.

56793.1 5/30/2007

**C.    Plaintiffs Have Failed To Properly Plead A "Chilling" Of Their First Amendment Rights**

Not only does the balance of interests weigh heavily in favor of the Defendants thereby defeating any First Amendment claim, but the complaint fails to properly plead any chilling of the Plaintiffs' First Amendment rights.

"[T]he First Amendment prohibits government officials from encouraging the suppression of speech in a manner which 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.'" *Zieper v. Metzinger*, 474 F.3d 60, 65-66 (2d Cir. 2007) *quoting Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983). In determining whether a particular request to suppress speech is constitutional, what matters is the "distinction between attempts to convince and attempts to coerce." *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (per curiam).

The complaint here does not allege any coercive conduct by Lt. Marshall or Chief Hall. Rather, it alleges that there was a gag order and that the Plaintiffs are "aware" of a threat of retaliatory action by Marshall and Hall. Complaint ¶ 11. No such threat, however, is plead or even described in the complaint. Under these circumstances there can be no claim of a chilling effect on Plaintiffs' rights. *See, e.g., Hankard v. Town of Avon*, 126 F.3d 418, 423 (2d Cir. 1997) ("a veiled threat of reprisal implicit in defendants' actions" held insufficient to state a claim that police sergeants' speech was chilled where police chief ordered they clarify investigation report); *Grennan v. Nassau County BOCES*, 2007 WL 952067, *12-13 (E.D.N.Y. 2007) (employee who was given directive by supervisor not to talk to other employees stated no claim of prior restraint claim under the First Amendment; "Plaintiff points to no evidence that Defendants intimated that some sort of punishment would follow if Grennan failed to accede to their request"); *Walsh v. City of Auburn*, 2000 WL 976900, *9 (N.D.N.Y. 2000) (employer's memo directive to

17

employees not to speak with plaintiff about the employer's business did not violate First Amendment where plaintiff "proffered no objective evidence suggesting that the memo deterred him from engaging in protected activity, or even that, while engaged in protected activity, he suffered from fear of reprisal.")

Moreover, the Plaintiffs have not adequately pled any change in their behavior as a result of the gag order. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley*, 268 F.3d at 73; *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (plaintiff's speech not chilled where, even after his arrest, he continued to publish his newspaper criticizing village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (plaintiff's speech not chilled where he continued to publish critical editorials even after town brought suit against him). Indeed, "the Supreme Court has held that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Curley*, 268 F.3d at 73, *citing Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

Plaintiffs here have not alleged any chilling effect other than asserting in conclusory fashion that their right to freedom of association and speech was violated by the gag order. Moreover, Plaintiffs' assertion is belied by their letter written and signed by all Plaintiffs before the order was given in which they stated:

> If we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency.

Complaint ¶ 7. Thus, even *before* the gag order was given, Plaintiffs had, on their own, decided they would go no further until the results of the investigation were in. That is, they had agreed on their own accord to wait until the investigation was concluded. Thus, there was no chilling effect on Plaintiffs' rights.

18

In sum, the Plaintiffs complaint is woefully deficient in pleading any First Amendment violation against any of the Defendants.

## POINT III

### PLAINTIFFS' CLAIMS AGAINST DEFENDANT DAVID HALL MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THAT HE WAS PERSONALLY INVOLVED IN ANY CONSTITUTIONAL DEPRIVATION

The complaint names David Hall, Chief of the Harrison Police Department, as a defendant individually in his personal capacity. Complaint ¶ 5. Aside from simply naming him as a defendant, however, nowhere in the complaint do Plaintiffs allege that Chief Hall acted in any manner that violated Plaintiffs' constitutional rights. The only constitutional violation alleged involves the order "personally" given by Lt. Marshall to Plaintiffs to not speak about their theft complaint or resulting investigation. Complaint ¶ 9. Although Plaintiffs allege that Chief Hall directed Lt. Marshall and others in the Department's administration to investigate the complaint and that it was "[i]n that connection" that Marshall issued the allegedly unconstitutional order, there is absolutely nothing unconstitutional about Chief Hall's actions. Complaint ¶¶ 8-9. Indeed, the complaint clearly states that Lt. Marshall imposed the gag order Complaint ¶ 10. It does not allege that Chief Hall told Lt. Marshall to give the order, but merely presumes that Marshall gave it for Hall's benefit. *See id.* Without having alleged that Chief Hall was personally involved in depriving Plaintiffs of their constitutional rights, Plaintiffs' Section 1983 claims against him must be dismissed. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (in order to state a viable claim under Section 1983, the complaint must allege the "personal involvement of defendants in [the] alleged constitutional deprivations"); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987) ("having failed to allege, as they must, that these defendants were directly and personally responsible for the purported unlawful conduct,

19

[plaintiffs'] complaint is fatally defective"); *Mehrhoff*, 2005 WL 2077292 at *5 (dismissing

complaint because "[w]hile plaintiff names several individual Defendants in the Complaint, she

fails to provide notice as to what specific actions were taken by each individual which led to a

violation of her constitutional rights"); *Wallace v. Conroy*, 945 F. Supp. 2d 628, 638 (S.D.N.Y.

1996) ("A complaint predicated on a §1983 violation that fails to allege personal involvement is

'fatally defective on its face.'"); *McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385,

397-398 (S.D.N.Y. 2005) (dismissing §1983 claim against two individually named defendants

because complaint failed to allege the "personal involvement" of those defendants in the

deprivation of the plaintiff's constitutional rights).[2]

## POINT IV

### THE INDIVIDUAL DEFENDANTS ARE PROTECTED
### BY THE DOCTRINE OF QUALIFIED IMMUNITY

Even assuming that the Plaintiffs could set forth a constitutional violation, the individual

defendants are protected by the doctrine of qualified immunity.

"Qualified immunity protects public officials from liability for civil damages when one of

two conditions is satisfied: '(a) the defendant's action did not violate clearly established law, or

(b) it was objectively reasonable for the defendant to believe that his action did not violate such

law.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) *quoting Poe v. Leonard*,

282 F.3d 123, 133 (2d Cir. 2002). "Stated differently, an official is entitled to qualified immunity

(1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not

---

[2] *See also Connell v. City of New York*, 2002 WL 22033, *5 (S.D.N.Y. 2002) ("In addition, despite conclusory allegations that various individuals engaged in a pattern or practice of discrimination, plaintiff does not allege personal and direct involvement by these individuals in specific acts of employment discrimination. A bald assertion of a Section 1983 claim will not withstand a motion to dismiss."); *Marable v. Kurtz*, 2000 WL 1279763, *4 (S.D.N.Y. 2000) ("The courts have consistently held that, where the complaint names a defendant in the caption but no allegations indicating exactly how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.").

56793.1 5/30/2007

clearly established at the time of the conduct, or (3) if the official's actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007). The matter of whether a right was clearly established at the pertinent time is a question of law. *See, e.g., Crawford-El v. Britton*, 523 U.S. 574, 589 (1998).

In order for a right to be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right,'" *Kerman v. City of New York*, 261 F.3d 229, 236-37 (2d Cir. 2001) *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As discussed above, the law has clearly provided that police departments, such as the Harrison Police Department, can limit what individual police officers may say relating to open investigations. If any First Amendment violation is found, then it cannot be said that the law was clearly established at the time the order was given. Indeed, when presented with the allegations of criminal wrongdoing by the Chief of Police, Lt. Marshall and Captain Marraccini had to act quickly to investigate the serious allegations brought to their attention. Indeed, courts have recognized that in situations where a police officer must act quickly, it must look at the reasonableness of the decision at the time it was made.

> As the Supreme Court has recognized, civil suits for damages 'can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties,' and 'it is inevitable that law enforcement officials will in some cases reasonably but mistakenly" believe that their actions are lawful. *Anderson*, 483 U.S. at 638, 641, 107 S.Ct. 3034. . . . The very purpose of qualified immunity is to protect officials when their jobs require them to make difficult on-the-job decisions. *See, e.g., Hunter v. Bryant*, 502 U.S. 224, 229, 112 S.Ct. 534, 116 L.Ed. 2d 589 (1991) ("This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued.") (*quoting Davis v. Scherer*, 468

U.S. 183, 196, 104 S.Ct. 3012, 82 L.Ed. 2d 139 (1984)). <u>This is
especially true when officials are forced to act quickly.</u>

*Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007) (emphasis added).

Indeed, "within a matter of hours" of being informed by Plaintiffs of Chief Hall's alleged
misconduct, Chief Hall ordered Lt. Marshall to commence an investigation into their serious
allegations, and it was "[i]n that connection" that Lt. Marshall gave the allegedly
unconstitutional order. Complaint ¶¶ 8-9. In accordance with his understanding of the law as it
then existed, Lt. Marshall acted entirely in good faith. Thus, Lt. Marshall and Chief Hall are
entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety and
Defendants should be awarded all costs and fess, and any other relief this Court deems
appropriate.

Dated:    Garden City, New York
          May 30, 2007

                                        Respectfully submitted,

                                        BOND, SCHOENECK & KING, PLLC


                                        By: /s/ Mark N. Reinharz
                                            Mark N. Reinharz (MNR 6201)
                                            Attorneys for the Defendants
                                            1399 Franklin Avenue, Suite 200
                                            Garden City, New York 11530
                                            (516) 267-6320

56793.1 5/30/2007

CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2006, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic service upon the following parties and participants:

Jonathan Lovett, Esq.
Lovett & Gould, LLP
222 Bloomingdale Road
White Plains, New York 10605
Attorney for Plaintiffs

_____/s/ Mark N. Reinharz_____
Mark N. Reinharz (MR 6201)
Bond, Schoeneck & King, PLLC
Attorneys for Defendants
1399 Franklin Avenue, Suite 200
Garden City, New York  11530
(516) 267-6320

3

56807.1 5/30/2007