this meeting the following officers were re-elected to serve for the ensuring year: Joseph P. Cleary, President; William S. Bull, Vice-President and William Coughlin, Secretary and Treasurer.

The next meeting was held at Buffalo, New York, October 8, 1903. At this meeting the following officers were elected to serve for the ensuing year: William S. Bull, of Buffalo, President; Charles Molyneux of Lockport, Vice-President; William Coughlin of Tory, Secretary and Treasurer.

The next meeting was held at Binghamton, New York, October 27, 1904. At this meeting the following officers were elected to serve for the ensuring year: President Frank J. Cassada of Elmira; Vice-President, William Moore of Binghamton; Secretary and Treasurer, William Coughlin of Troy.

The next meeting was held at Albany, New York, September 12, 1905. At this meeting the following officers were elected to serve for the ensuing year: President, Frank J. Cassada of Elmira; Vice-President, William Moore of Binghamton; Secretary and Treasurer, James L. Hyatt of Albany

Secretary and Treasurer William Coughlin declined the election.

The next meeting was held at Niagara Falls, New York, July 25, 1906. At this meeting the following officers were elected to serve for the ensuring year: President, William Moore of Binghamton; Vice President, Charles F. Cleveland of Utica; Secretary and Treasurer, James L. Hyatt of Albany.

The next meeting was held at Rome, New York, August 7, 1907. This meeting was called to order by Secretary James L. Hyatt, who announced that since the last meeting, President William Moore, of Binghamton had died and also that Vice-president Charles F. Cleveland of Utica, was confined to his home by illness and therefore it would be necessary to select a temporary Chairman. Chief Charles Molyneux, of Lockport, was chosen as temporary chairman of the meeting. The following officers were elected to serve for the ensuring year: President Charles Molyneux, of Lockport; Vice-President Charles F. Cleveland of Utica; Secretary and Treasurer, James L. Hyatt of Albany.

The next meeting was held at Auburn, New York, August 4, 1908. This meeting was called to order by Secretary James L. Hyatt, who announced that since the last meeting President Charles Molyneux had died, also Vice-President Charles F. Cleveland had died, leaving the association without either president or vice-president, and that it would be necessary to select a temporary chairman. On motion, Frank J. Cassada of Elmira was selected to serve as temporary chairman of the meeting. The following officers were elected to serve for the ensuring year: President, Thomas Barry of Rome; Vice-President, William C. Bell of Auburn; Secretary and Treasurer, James L. Hyatt of Albany.

The next meeting was held at New York City, September 1, 1909. Owing to illness of President Barry, Vice-President Bell called the meeting to order. The following officers were elected to serve for the ensuing year: President, William C. Bell of Auburn; Vice-President, John Jamison of Cohoes; Secretary and Treasurer, James L. Hyatt of Albany.

The next meeting was held at Schenectady, New York, August 30, 31, 1910. The following officers were elected to serve for the ensuing year: President, James Rynex of Schenectady; Vice-President, Joseph M. Quigley of Rochester; Secretary and Treasurer, James L. Hyatt of Albany.

The next meeting was held at Rochester, New York, June 13, 1910. On account of the meeting of the International Association of Chiefs of Police being held at the same time at Rochester, it was resolved unanimously to suspend collection of dues for the year 1911. The following officers were elected to serve for the ensuing year: President, Charles H. Goodrich of Binghamton; Vice-President, James J. Long of Little Falls; Secretary and Treasurer, James L. Hyatt of Albany.

It was resolved to meet in 1912 at Binghamton, NY, the date to be fixed by the President.

The next meeting were held at Binghamton, NY, September 30 and October 21, 1912 The following officers were elected to serve for the ensuing year: President, Charles H. Goodrich of Binghamton; Vice-President, James J. Long of Little Falls; Secretary and Treasurer, James L. Hyatt of Albany, NY. It was resolved to meet at Rochester, NY, in 1913, date to be fixed by the President.

The next meeting was held at Rochester, NY, October 6 and 7, 1913. The following officers were elected to serve for the ensuing year: President, Michael Regan, Buffalo, NY; Vice-President, James J. Lane, Hudson, NY; Secretary and Treasurer, James L. Hyatt of Albany, NY.

It was resolved to meet at Buffalo, NY, in 1914. Date to be fixed by the President.

The next meeting was held at Buffalo, NY, June 11, 12, and 13, 1914. The following officers were elected to serve for the ensuing year: President, Michael Regan, Buffalo, NY; Vice-President, James J. Lane, Hudson, NY; Secretary and Treasurer, James L. Hyatt of Albany, NY.

It was resolved to meet at Watertown in 1915, and President Michael Regan declined to accept a renomination for President on account of the work attached to the Presidency of the International Association of Chiefs of Police, which position he was elected to at their Convention held at Cincinnati, Ohio, beginning May 25, 1915.

The following officers were elected to serve for the ensuing year: President, Edward J. Singleton, Watertown, NY; Vice-President, John T. Manion, Herkimer, NY; Secretary and Treasurer, James L. Hyatt of Albany, NY.

It was resolved to meet at Kingston in 1916. Date to be fixed by the President.

The next meeting was held at Kingston, NY, July 26 and 27, 1916, and President Singleton, Vice-President Manion, and Secretary and Treasurer, James L. Hyatt were re-elected, and Gillmore O. Bush of Tuxedo, NY, Sergeant-at Arms for the ensuing year. It was resolved to meet at

Schenectady, NY, in 1917, date to be fixed by the President.

## NEW YORK POLICE TRAINING SCHOOL
### In Charge of
### Inspector Cornelius J. Cahalane

When Commissioner Arthur Woods became the head of New York's big force, one of the first things he did was to reconstruct the whole methods of police training. A close study of several years of existing conditions brought him to the conclusion that what the force needed, and needed quickly, was more training - a longer course of training for the recruits and specialized training for every rank of the service.

Let us look over some of the reasons for this. Foremost of all is the fact that although its police force is only half the size of London's, New York is now the largest city in the word. It has 315 square miles to be patrolled; 5,000 miles of streets and highways. Its 445 miles of water front, holding millions of dollars worth of property in various stages of transit, must be kept free from river pirates by patrol boats. In some of the congested sections there are more persons living on one block than there are in many thriving cities. Many blocks on the East Side each contain more than 3,500 residents. In the block bounded by 61st and 62nd Streets, Amsterdam to West End Avenue, there are more than 8,000 negroes living in tenements.

The population of the city is about 6,000,000, of which more than 2,000,000 - one third - were born 'on the other side.'

These immigrants bring with them customs of their fatherland which often innocently lead them into violations of the law here. Freedom from persecution is only too often construed as freedom from all civic responsibility. In precincts where the foreign element predominates, a patrolman must be tactful and well trained so that he may correct by explanation and warning conditions which otherwise would have to be remedied by expensive court action. In addition, just as New York offers the most promising field for the efforts of the cleverest in every profession, so does it appeal to the sharpest of those who live by their wits - who come, attracted by the big money. The crooks, from dip to wiretapper, have been forced to newer and cleverer tricks to keep abreast of the times. They have availed themselves of every invention of science to further their ends. These conditions must be met by more scientific police instruction.

The fist thing Commissioner Woods did was to change the title of the School of Recruits to 'The Training School.' The change was significant. Police training, which had heretofore been confined to a six-weeks course of instruction for the recruits, was broadened to take in every branch of police service.

## Past Presidents

| | | |
|---|---|---|
| 1901 - 1903 | Chief Joseph P. Cleary | Rochester P.D. |
| 1903 - 1904 | Superintendent William S. Bull | Buffalo P.D. |
| 1904 - 1906 | Chief Frank J. Cassada | Elmira P.D. |
| 1906 - 1907 | Chief William Moore | Binghamton P.D. |
| 1907 - 1908 | Chief Charles Molyneaux | Lockport P.D. |

| | | |
|---|---|---|
| 1908 - 1909 | Chief Thomas Barry | Rome P.D. |
| 1909 - 1910 | Chief William C. Bell | Auburn P.D. |
| 1910 - 1911 | Chief James Rynex | Schenectady P.D. |
| 1911 - 1913 | Chief Charles Goodrich | Binghamton P.D. |
| 1913 - 1915 | Chief Michael Regan | Buffalo P.D. |
| 1915 - 1917 | Chief Edward Singleton | Watertown P.D. |
| 1918 - 1921 | Chief J. Allen Wood | Kingston P.D. |
| 1921 - 1922 | Commissioner James W. Higgins | Buffalo P.D. |
| 1922 - 1923 | Chief Daniel Frutegar | Endicott P.D. |
| 1923 - 1924 | Inspector William T. Davis | New York City P.D. |
| 1924 - 1925 | Chief William H. Sheedy | Poughkeepsie P.D. |
| 1925 - 1926 | Chief George R. Smith | Gloversville P.D. |
| 1926 - 1927 | Chief Fred G. Jenkins | Glens Falls P.D. |
| 1927 - 1928 | Chief Gilmire C. Bush | Tuxedo P.D. |
| 1928 - 1929 | Chief Elvin D. Weaver | Elmira P.D. |
| 1929 - 1930 | Chief Timothy McCarthy | Utica P.D. |
| 1930 - 1931 | Commissioner Abram Skidmore | Nassau County P.D. |
| 1931 - 1932 | Chief John N. Hartman | Freeport P.D. |
| 1932 - 1933 | Chief Edward Grinnel | Cortland P.D. |
| 1933 - 1934 | Chief Andrew Kavanaugh | Rochester P.D. |
| 1934 - 1935 | Inspector Albert B. Moore | Troy P.D. |
| 1935 - 1936 | Chief Fred G. Brown | Newburgh P.D. |
| 1936 - 1937 | Chief Joseph C. Ownes | Rome P.D. |
| 1937 - 1938 | Chief Lacey C. Abel | Binghamton P.D. |
| 1938 - 1939 | Chief Morris J. Keller | Herkimer P.D. |
| 1939 - 1940 | Chief George H. Culver | Glens Falls P.D. |
| 1940 - 1941 | Chief Inspector John J. O'Connell | New York City P.D. |
| 1941 - 1942 | Chief Michael Silverstein | Mount Vernon P.D. |
| 1942 - 1943 | Chief Henry Copenhagen | Rochester P.D. |
| 1943 - 1944 | Chief George Leadbiner | Poughkeepsie P.D. |
| 1944 - 1945 | Chief Frank R. Mallette | Bedford Hills P.D. |
| 1945 - 1946 | Chief Anthony Heimers | Lynbrook P.D. |
| 1946 - 1947 | Chief G. Henry Nelson | Jamestown P.D. |
| 1947 - 1948 | Chief William Miller | White Plains P.D. |
| 1948 - 1949 | Chief Walter Kirchoff | New Rochelle P.D. |
| 1949 - 1950 | Chief Abe Stern | Ramapo P.D. |
| 1950 - 1951 | Asst. Chief Inspector William A. Turk | New York City P.D. |
| 1951 - 1952 | Chief of Detectives Martin Considine | Niagara Falls P.D. |
| 1952 - 1953 | Chief Leroy E. Wike | Endicott P.D. |
| 1953 - 1954 | Chief Thomas A. Eibler | Rockville Center P.D. |
| 1954 - 1955 | Chief John Hergenhan | Armonk P.D. |
| 1955 - 1956 | Chief Edward Curtain | Watertown P.D. |
| 1956 - 1957 | Chief Fred J. Nangle | Great Neck P.D. |
| 1957 - 1958 | Chief Paul A. Yerick | Mamaroneck P.D. |
| 1958 - 1959 | Chief Hamilton Conners | E. Rochester P.D. |
| 1959 - 1960 | Chief Raymond Ninesling | Kings Point P.D. |
| 1960 - 1961 | Chief Earl S. Sweitzer | Lancaster P.D. |
| 1961 - 1962 | Inspector Theodore F. Donnelly | Suffolk County P.D. |
| 1962 - 1963 | Chief John Martin Jr. | Poughkeepsie P.D. |
| 1963 - 1964 | Chief Robert F. Flanagan | Saratoga Springs P.D. |
| 1964 - 1965 | Chief Walter F. Waring | Lynbrook P.D. |
| 1965 - 1966 | Chief George A. Murphy | Oneida P.D. |
| 1966 - 1967 | Chief Stephen J. Grodski | Riverhead P.D. |
| 1967 - 1968 | A/Chief Inspector George P. McManus | New York City P.D. |
| 1968 - 1969 | Chief Warren D. Keller | West Seneca P.D. |
| 1968-1969 | Chief Thomas P. Reilly | Sherrill P.D. |
| 1969 - 1971 | Commissioner Francis B. Looney | Nassau County P.D. |
| 1971 - 1972 | Chief Herbert L. VanOstrand | Ithaca P.D. |
| 1972 - 1973 | Commissioner John L. Barry | Suffolk County P.D. |
| 1973 - 1974 | Chief Joseph S. Dominelli | Rotterdam P.D. |

| | | |
|---|---|---|
| 1974 - 1975 | Chief Walter F. Ruckgaber | Lake Success P.D. |
| 1975 - 1976 | Chief Charles G. McLaughlin | Rye P.D. |
| 1976 - 1977 | Chief Thomas J. Sardino | Syracuse P.D. |
| 1977 - 1978 | 1st Deputy Inspector Edward F. Curran | Nassau County P.D. |
| 1978 - 1979 | Chief William E. Ecroyd | Haverstraw P.D. |
| 1979 - 1980 | Chief John T. Costello | Auburn P.D. |
| 1980 - 1981 | Chief Paul J. Oliva | Town of Mount Pleasant P.D. |
| 1981 - 1982 | Chief James W. Flater | Colonie P.D. |
| 1982 - 1983 | Chief Charles M. Capobianco | Old Brookville P.D. |
| 1983 - 1984 | Chief Harlin R. McEwen | Cayuga Heights P.D. |
| 1984 - 1985 | Chief Lawrence A. Hoffman, Jr. | Town of Tonawanda P.D. |
| 1985 - 1986 | Chief Michael F. Robich | Cohoes P.D. |
| 1986 - 1987 | Chief Eugene Shaw | Brighton P.D. |
| 1988 | Chief Gerald D. Phelan | Greece P.D. |
| 1989 | Chief Raymond M. Garrigan | Malverne P.D. |
| 1990 | Commissioner Anthony M. Mosca | Hawthorne P.D. |
| 1991 | Chief Leigh F. Hunt | Syracuse P.D. |
| 1992 | Chief Thomas L. Scott | East Hampton P.D. |
| 1993 | Chief Mark L. Whitman | Hornell P.D. |
| 1994 | Chief Alfred T. DeCarlo | Rotterdam P.D. |
| 1995 | Chief Louis S. D'Aliso | Ardsley P.D. |
| 1996 | Chief Christian L. Schrank | Ogden P.D. |
| 1997 | Chief James R. DeLapp | Dewitt P.D. |
| 1998 | Chief James R. Clary | Hudson Falls P.D. |
| 1999 | Chief Thomas J. Roche | Gates P.D. |
| 2000 | Chief Eugene S. Tumolo | Peekskill P.D. |
| 2001 | Chief John P. Grebert | Colonie P.D. |
| 2002 | Chief James Russo | Hempstead P.D. |
| 2003 | Chief Larry K Preston | Waverly P.D. |
| 2004-2005 | Chief Ricahrd Carey | Glens Falls P.D. |
| 2005-2006 | Chief David Hall | Harrison P.D. |

Please direct all questions or comments to our web administrator.
Copyright © 1999-2007

**EXHIBIT 12**

    # *HARRISONPOLICE.COM*    



| Web Links | Phone Book | Citizen Safety | Homeland | Amber Ale |

| Missing Kids | Car Seats | Sex offenders | E-mail us |

- Home
- About Us
- Structure
- Chief Hall
- F.A.Q's
- Patrol Div.
- Traffic Div.
- Det Div.
- k-9 UNIT
- D.A.R.E.
- P.B.A



## *Chief David R. Hall*

Born on July 1, 1947 in Utica, New York and grew up in central New York.
I attended Syracuse University and moved to the Town of Harrison in 1968.

I joined the Harrison Police Department on March 24, 1973 and was promoted
to Detective in 1980, Sergeant in 1981, Lieutenant in 1983, Captain in 1996
and became Chief of police in 1997.

My wife Ann and I presently live in Harrison. We have two children,
Cheryl and Lindsey and three grandchildren.

I am currently a member of the following fraternal organizations:

New York State Association of Chiefs of police, (Current President).
International Association of Chiefs of police.
National Association of Chiefs of police.
Westchester County Association of chiefs of police, (Past President).
National Law Enforcement Associates.
New York Shields.
Fraternal order of police.

Law Enforcement Executive Development Association.

Locally I belong to the Harrison Lion's club, Harrison Rotary Club and the Har chamber of commerce. I am a past board member of the Harrison Volunteer A Corps,and the Harrison P.B.A.

**EXHIBIT 13**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

WILLIAM C. DUFFELMEYER, MICHAEL
WALTHER, STEVEN HEISLER, JEFF NARDI,
STEPHEN M. CARPINIELLO, EDWARD
ARCE, RALPH TANCREDI, PETER
DeVITTORIO, MICHAEL MARINELLI,
and ARTHUR MARINELLI,

                      Plaintiffs,

          -against-

LAWRENCE MARSHALL, individually,
DAVID HALL, individually, and
the TOWN/VILLAGE OF HARRISON,
New York,

                    Defendants.

--------------------------------------------------------x

07 Civ.

**07 CIV. 2807**

**Jury Trial Demanded**

    Plaintiffs WILLIAM C. DUFFELMEYER, MICHAEL WALTHER, STEVEN

HEISLER, JEFF NARDI, STEPHEN M. CARPINIELLO, EDWARD ARCE, RALPH

TANCREDI, PETER DeVITTORIO, MICHAEL MARINELLI, and ARTHUR

MARINELLI by their attorneys Lovett & Gould, LLP, for their complaint respectfully

state:

### NATURE OF THE ACTION

    1. This is an action for compensatory and punitive damages, resulting from

jointly engaged-in conduct of Defendants taken while acting under color of the laws of

the State of New York, proximately resulting of violations of Plaintiff's rights as

guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiffs WILLIAM C. DUFFELMEYER, MICHAEL WALTHER, STEVEN HEISLER, JEFF NARDI, STEPHEN M. CARPINIELLO, EDWARD ARCE, RALPH TANCREDI, PETER DeVITTORIO, MICHAEL MARINELLI, and ARTHUR MARINELLI are citizens of the United States, domiciliaries of the State of New York, and residents of the Northern Counties. Each of the Plaintiffs is employed as a sworn member of the police department of the Defendant Town/Village of Harrison.

4. Defendant LAWRENCE MARSHALL (hereinafter "Marshall), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as a Lieutenant in the police department of the said Town/Village.

5. Defendant DAVID HALL (hereinafter "Hall"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as the Chief of Police of the Defendant Town/Village.

6. Defendant TOWN/VILLAGE OF HARRISON, New York (hereinafter "Town"), is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

2

## THE FACTS

7. By correspondence dated March 28, 2007, Plaintiffs Duffelmeyer, Heisler, Carpiniello, Tancredi, Walther, Arce, and DeVittorio advised the members of the Town's Board of Police Commissioner and Police Captain Anthony Marraccini in pertinent respect:

> "This letter is to inform you of a disturbing set of circumstances that may constitute the possible commission of a crime..

> In January, 2007, [PBA] President Tancredi was conducting a customary examination of the many donations the Harrison Police Association receives during the Christmas holiday season. Pursuant to his examination, President Tancredi noticed that Brae Burn Country Club, as well as other donors, had not sent their customary annual donation. He inquired with the administration at Brae Burn CC as to whether they had sent or were going to send their annual donation for 2006. The administration said that they had made a donation of $2,500.00 and that the check was personally picked up by Chief Hall at Brae Burn CC. The Brae Burn CC administration said that they would look into the matter and get back to President Tancredi. President Tancredi and other members of the [PBA'S] executive board were contacted a short time later and the Brae Burn CC administration was disturbed to find out that the check had been altered and the funds had been deposited in the New York State Chiefs of Police Association account (Chief Hall was the President of the Chiefs Association at the time).

The Brae Burn administration was very clear with President
Tancredi that the check was made out to the Harrison Police
Association and was intended to be a charitable donation to the
Harrison Police Association (see enclosed copy of check). Brae
Burn said they received a receipt (see enclosed copy) for an
advertisement in the Chiefs of Police Association Journal a short
time after Chief Hall picked up the check, but apparently Chief
Hall never discussed the advertisement with the  Brae Burn
charitable donation committee and Brae Burn did not authorize
anyone to cross out Harrison in the payee line and replace it with
Chiefs. They also said they were very surprised when they saw that
the funds had gone to the Chiefs of Police Association and not the
Harrison Police Association.

President Tancredi, under his belief that a mistake had been
made, discussed the matter with the Association's executive board
and some other members of the Association. Vice President
Michael Walther subsequently asked Chief Hall if he had any
checks or donations that were intended for the Harrison Police
Association. The hope was that a mistake had been made. In the past,
some donations that were intended for the Association had been
mistakenly deposited into the Town of Harrison accounts and
reimbursements by the Town were made to the Association when
the errors were made apparent. Chief Hall, however, informed

Vice President Walther that he did not have any checks or any

funds that were intended for the Association.

...[T]he [PBA] members concluded that it was possible that the

Brae Burn donation check may have been intentionally altered and

redirected into the Chiefs of Police account. As this would

constitute a criminal act, it [is] the understanding of the members of

the Association with knowledge of this possible crime that we have

an obligation to report the incident to the Harrison Police

Department...We respectfully request that you investigate this

matter on our behalf...It is also our understanding that if we are

not comfortable or disagree with the results of your investigation,

we reserve the right as potential crime victims to pursue the matter

with another law enforcement agency."

Annexed to the complaint and made and part hereof are copies of the referenced

correspondence and enclosures.

8. Within a matter of hours of the delivery of the correspondence referenced in the

preceding paragraph "7", Hall directed Marshall and others in the administration of the

Police Department to investigate the PBA members' complaint - - not with a view

towards ascertaining if a crime had indeed been committed, but rather with the self-

serving objective of covering-up that crime and silencing the Plaintiffs.

9. In that connection Marshall personally advised the Plaintiffs or virtually all of

the Plaintiffs that the were ordered to silence and were henceforth forbidden to

communicate with any other law enforcement agencies and/or members of the Harrison

Police Department and/or members of the Harrison Police Association with respect to their fact-based beliefs that Hall had forged the subject check, been in criminal possession of that forged instrument, and intentionally stole on behalf of his Chiefs Association moneys he knew were intended for the Harrison Police Association.

10. With respect to the "gag" order imposed by Marshall for Hall, Marshall informed Plaintiffs that the issue of Hall's apparent commission of several felonies was being referred to the so-called Public Integrity Bureau of the Westchester County District Attorney's Office - - a circumstance that Plaintiffs recognized to be part of an orchestrated cover-up since the District Attorney herself:

    a. Is a personal friend of Hall,

    b. Is deeply indebted to Hall for securing her endorsement by the Chiefs of Police Association during her recent election campaign for the office of District Attorney - - and will need that endorsement again when she runs for re-election,

    c. Is by reason of that indebtedness and friendship going to cover-up through the so- called Public Integrity Bureau Hall's crimes rather than prosecuting him, and,

    d. Will not request that the Governor appoint a special prosecutor despite the District Attorney's obvious conflict of interest because the appointment of a special prosecutor would interfere with the District Attorney's expected cover-up.

11. Each of the Plaintiffs is aware of Marshall's order, Marshall and Hall's threat of retaliatory disciplinary action in the event of non-compliance, and the self-evident cover-up presently underway to insulate Hall from criminal prosecution.

12. As a proximate result each of the Plaintiffs has been chilled in the prospective exercise of his rights of association, speech and to petition government for the redress of grievance. None will risk the threat of a disciplinary prosecution with the prospect of an indefinite suspension without pay. None will report to any other law enforcement agency the apparent crimes as committed by Hall. None will discuss the matter further.

13. By reason of Defendants' conduct each of the Plaintiffs has been caused: emotional upset; anxiety; violations of their First Amendment protected rights; humiliation; embarrassment; shame and has otherwise been rendered sick and sore.

## AS AND FOR A CLAIM

13. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "'12", inclusive.

14. Under the premises Defendants' conduct violated Plaintiffs' rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

    a.  Awarding against the individually named Defendants such punitive damages as the jury may impose,

    b.  Awarding against all Defendants such compensatory damages as the jury may determine,

    c.  Awarding reasonable attorney's fees and costs, and,

7

    d.  Granting such other and further relief as to the Court seems just and

proper.

Dated: White Plains, N.Y.
       April 6, 2007

                              LOVETT & GOULD, LLP
                              By:_____
                                  Jonathan Lovett (4854)
                              Attorneys for Plaintiffs
                              222 Bloomingdale Road
                              White Plains, N.Y. 10605
                              914-428-8401

# Harrison Police Department
## 650 North Street
## Harrison, NY 10528
## (914) 967-5111

03-28-07

To: Captain Anthony Marraccini
From : Officers listed herein
Re: Possible crime committed

Captain,
This letter is to inform you of a disturbing set of circumstances that may constitute the possible commission of a crime.
In January, 2007, President Ralph Tancredi was conducting a customary examination of the many donations the Harrison Police Association receives during the Christmas holiday season. Pursuant to his examination, President Tancredi noticed that Brae Burn Country Club, as well as other donors, had not sent their customary annual donation. He inquired with the administration at Brae Burn CC as to whether they had sent or were going to send their annual donation for 2006. The administration said that they had made a donation of $2500.00 and that the check was personally picked up by Chief Hall at Brae Burn CC. The Brae Burn CC administration said that they would look into the matter and get back to President Tancredi. President Tancredi and other members of the executive board were contacted a short time later and the Brae Burn CC administration was disturbed to find out that the check had been altered and the funds had been deposited in the New York State Chiefs of Police Association account (Chief Hall was the President of the Chiefs of Police Association at the time). The Brae Burn administration was very clear with President Tancredi that the check was made out to the Harrison Police Association and was intended to be a charitable donation to the Harrison Police Association (see enclosed copy of check). Brae Burn said they received a receipt (see enclosed copy) for an advertisement in the Chiefs of Police Association Journal a short time after Chief Hall picked up the check, but apparently Chief Hall never discussed the advertisement with the Brae Burn charitable donation committee and Brae Burn did not authorize anyone to cross out Harrison in the payee line and replace it with Chiefs. They also said that they were very surprised when they saw that the funds had gone to the Chiefs of Police Association and not the Harrison Police Association.
President Tancredi, under the belief that a mistake had been made, discussed the matter with the Association's executive board and some other members of the Association. Vice President Michael Walther subsequently asked Chief Hall if he had any checks or donations that were intended for the Harrison Police Association. The hope was that a mistake had been made. In the past, some donations that were intended for the Association had been mistakenly deposited into Town of Harrison accounts and reimbursements by the Town were made to the Association when the errors were made

apparent. Chief Hall, however, informed Vice President Walther that he did not have any checks or any funds that were intended for the Association.

President Tancredi and the other members of the Association with knowledge of the events in question now needed legal advice and advice was sought from multiple sources. This took a few weeks because some of the attorneys were not available when the Association members were available. After legal consultation (and only after these legal consultations), the members concluded that it was possible that the Brae Burn donation check may have been intentionally altered and redirected into the Chiefs of Police account. As this would constitute a criminal act, it the understanding of the members of the Association with knowledge of this possible crime that we have an obligation to report the incident to the Harrison Police Department. This letter is intended to serve as notification to you and the department of this incident. We respectfully request that you investigate this matter on our behalf and notify us of the results of your investigation. It is also our understanding that if we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency.

We would also like to note at this time that we are making this notification due to our legal and departmental obligations. We are, however, fearful of retaliatory action on the part of the Harrison Police Department administration and we would like that to be noted at this time. It is our sincere hope and expectation that we will be given the understanding and courtesy shown to other potential crime victims by the Harrison Police Department.

P.O. RALPH TANCREDI     57/103

DET. MICHAEL WALTHER

P.O. Edward A. ARCE     125/120

SGT. PETER J. DEVITTORIO     #1767

PO JOHN AVDEA     25/95

P.O. WILLIAM DUFFELMEYER     12/106

P.O. STEVEN HEISLER     124/119

DET. ISSA KHAROUBA     103/116

DET. LT. Douglas J. Buschel

LT. STEPHEN M. CARPINIELLO



1013

# *New York State Association of Chiefs of Police, Inc.*

**Officers (2006)**

President
David R. Hall
Harrison

Immediate Past President
Richard P. Garey
Glens Falls

1st Vice President
Dominic W. Gastaw, Jr.
Monroe

2nd Vice President
H. Lloyd Fortune
Skaneateles

3rd Vice President
John R. Rachinith
Gloversville

Executive Director
John P. Gerberi

Executive Director Emeritus
Joseph S. Dominali

Counsel
John J. Poklemza

P.O. Box 167

White Plains, New York 10602

№  1172

**Board of Governo**

Zone 1
Woodrow W. Casmarty II
Amityville

Zone 2
William J. Kifoil
Port Washington

Zone 3
James D. O'Donnell
Goshen

Zone 4
Robert M. D'Angelo
North Castle

Zone 5
Daniel M. Ricci
Stony Point

Zone 6
Dominick G. Mazzarone
Glenville

Zone 7
Daniel M. Warner
Baldwinsville

Zone 8
David K. Rouse
Bath

Zone 9
Merrill L. Bine
Greece

Zone 10
Samuel M. Palmiere
Tonawanda

Retired Member Rep.
Joseph Del Benco
Mamaroneck

*✳ INSIDE COVER*

Date ___12-15-06___

We hereby authorize a _____ Associate Membership for the New York State Association o
Chiefs of Police.

Name _BRAE BURN COUNTRY C_

Address _39 BRAE BURN D_

_PURCHASE N_

$ _2500__

Make Checks Payable To:

New York State Association of Chiefs of Police



This is a LEGAL COPY of your check. You can use it the same way you would use the original check.

BRAE BURN COUNTRY CLUB, INC.

1013

DATE 12/10/06

PAY TO THE ORDER OF Harrison Police Association    $ 2,500.00

Two thousand five hundred + xx/100    DOLLARS

FOR Donation/administration

⑈001013⑈ ⑆026013576⑆ 1500639322⑈

⑈001013⑈    ⑆026013576⑆    1500639322⑈    ⑈000025000 0⑈

Date:12-26-2006  Account:1500639322  Amount:$2,500.00  Serial:1013  Sequence:137669070  TR:26013576  TranCode:0  DrCr:D
Pattern:1

TOTAL P.001

To: Mayor Stephen Malfitano
Re: Incident notification

Mayor Malfitano,
The enclosed letter was delivered to Captain Marraccini to inform him and
the Harrison Police Department of a disturbing set of facts that have come to
our attention. Because the incident involves the highest ranking member of
the department, we feel it is our obligation to inform you of the incident in
your capacity as a police commissioner.

To: Councilman Robert Paladino
Re: Incident notification

Councilman Paladino,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

To: Councilman Thomas Scappaticci
Re: Incident notification

Councilman Scappaticci,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

To: Councilman Joseph Cannella
Re: Incident notification

Councilman Cannella,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.

To: Councilman Pat Vetere
Re: Incident notification

Councilman Vetere,
The enclosed letter was delivered to Captain Marraccini to inform him and the Harrison Police Department of a disturbing set of facts that have come to our attention. Because the incident involves the highest ranking member of the department, we feel it is our obligation to inform you of the incident in your capacity as a police commissioner.