UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
WILLIAM C. DUFFELMEYER, MICHAEL
WALTHER, STEVEN HEISLER, JEFF NARDI,
STEPHEN M. CARPINIELLO, EDWARD ARCE,
RALPH TANCREDI, PETER T. DeVITTORIO,　　　　Civil Action No. 07-2807
MICHAEL MARINELLI, and ARTHUR　　　　　　　　(WP4) (MDF)
MARINELLI,

　　　　　　　　　Plaintiffs,

　　　　　- against -

LAWRENCE MARSHALL, individually, DAVID
HALL, individually, and the TOWN/VILLAGE OF
HARRISON, NEW YORK,

　　　　　　　　　Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 2

POINT I ............................................................................................................................. 2

    PLAINTIFFS' FAILURE TO ALLEGE AN UNCONSTITUTIONAL CUSTOM OR POLICY WARRANTS DISMISSAL OF THEIR CLAIMS AGAINST THE TOWN/VILLAGE ................................................................................. 2

POINT II ............................................................................................................................ 3

    CAPTAIN MARRACCINI'S DIRECTIVE TO THE PLAINTIFFS THAT THEY NOT SPEAK ABOUT A PENDING POLICE INVESTIGATION DID NOT VIOLATE THEIR FIRST AMENDMENT RIGHTS ................................... 3

POINT III ........................................................................................................................... 5

    PLAINTIFFS' RIGHTS HAVE NOT BEEN CHILLED ............................................. 5

POINT IV ........................................................................................................................... 9

    PLAINTIFFS' CLAIMS AGAINST DEFENDANT DAVID HALL MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THAT HE WAS PERSONALLY INVOLVED IN ANY CONSTITUTIONAL DEPRIVATION ........................................................................ 9

POINT V ........................................................................................................................... 10

    THE INDIVIDUAL DEFENDANTS ARE PROTECTED BY THE DOCTRINE OF QUALIFIED IMMUNITY ................................................................ 10

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987)..................................................................9

*Allan v. City of New York*, 386 F. Supp. 2d 542 (S.D.N.Y. 2005)....................................................2

*Allen v. City of New York*, 2007 WL. 24796 (S.D.N.Y. 2007) .........................................................3

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003)..............................................................2

*Antioch Co. v. Scrapbook Borders, Inc.*, 291 F. Supp. 2d 980 (D. Minn. 2003)..............................8

*Arce v. Banks*, 913 F. Supp. 307 (S.D.N.Y. 1996) ...........................................................................8

*Barnard v. Jackson County, Missouri*, 43 F.3d 1218 (8th Cir. 1995) *cert. denied*, 516 U.S. 808 (1995)..........................................................................................................................1

*Bilida v. McCleod*, 211 F.3d 166 (1st Cir. 2000).............................................................................10

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) .................................................................................9

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001)..................................................................6

*Davis v. County of Nassau*, 335 F. Supp. 2d 668 (E.D.N.Y. 2005)..................................................9

*Deschenie v. Central Consolidated Sch. District*, 473 F.3d 1271 (10th Cir. 2007) ........................3

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 1999) .................................................................................1

*Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24 (2d Cir. 1988) ..................................................................................................................................2

*Ford v. Reynolds*, 326 F. Supp. 2d 392 (E.D.N.Y. 2004).................................................................8

*Hankard v. Town of Avon*, 126 F.3d 418 (2d Cir. 1997) ............................................................6, 7

*Ingraham v. Wright*, 430 U.S. 651 (1977) ........................................................................................8

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348 (S.D.N.Y. 1998) ................................................7

*Laird v. Tatum*, 408 U.S. 1 (1972)....................................................................................................5

*Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000) ..............................................................................10

*Lytle v. City of Haysville, Kansas*, 138 F.3d 857 (10th Cir. 1998) ................................................. 1

*Missouri v. Jenkins*, 515 U.S. 70 (1995) ................................................................................................ 8

*Orange v. District of Columbia*, 59 F.3d 1267 (D.C. Cir. 1995) ................................................. 1, 3

*Pickering v. Board of Education*, 391 U.S. 563 (1968) ...................................................................... 3

*Piscottano v. Town of Somers*, 396 F. Supp. 2d 187 (D. Conn. 2005) ............................................. 6

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ................................................................ 10

*Shelton Police Union v. Voccola*, 135 F. Supp. 2d 604 (D. Conn. 2001) ......................................... 4

*Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290 (M.D. Ala. 2005) ..................... 1

*United States v. National Treasury Employees*, 513 U.S. 454 (1995) ............................................. 4

*Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997) ................................................................................ 10

*Verri v. Nanna*, 972 F. Supp. 2d 773 (S.D.N.Y. 1997) ...................................................................... 5

*Waters v. Churchill*, 511 U.S. 661 (1994) ............................................................................................ 5

## STATE CASES

*Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369 (1977) .................................................... 7

*Silsdorf v. Levine*, 59 N.Y.2d 8 (1983) .................................................................................................. 7

## FEDERAL STATUTES

Fed.R.Civ.P. 12(b) ................................................................................................................................ 2

# **PRELIMINARY STATEMENT**

Defendants Lawrence Marshall, David Hall, and the Town/Village of Harrison, New York ("Defendants") submit this Reply Memorandum of Law in Support of their Motion to Dismiss the Complaint.

In Defendants' initial memorandum of law, Defendants cited no less than five cases squarely holding that the government has the right to prevent its employees from discussing matters relating to a pending investigation.[1] In their reply memorandum of law, Plaintiffs do not mention even one of these cases in passing or make any serious attempt to distinguish them whatsoever. Rather, Plaintiffs merely provide a conclusory statement that the "gag order" was unlawful because it "chilled" their First Amendment rights. Plaintiffs simply ignore the facts that the limitation on their ability to speak about a then-pending criminal investigation was limited in time to less than two months and that the Police Department had a every right to impose such restrictions in order to protect the integrity of its investigation.

The gag order ended when the investigation was completed. *See* Hall Aff., Ex. 1. One Plaintiff even admitted that Marraccini told him this and Defendants May 30 submission to this Court clearly stated that "all that Plaintiffs were instructed not to do was to not interject themselves into an *open* investigation so that the investigator could effectively and efficiently investigate Plaintiffs' own allegations." Defendants' Mem. of Law at 16 (emphasis added).

---

[1] *Lytle v. City of Haysville, Kansas*, 138 F.3d 857, 868 (10th Cir. 1998) (government interest in ensuring its effective functioning of police department outweighed police officer's interest in disclosing information about a confidential police investigation); *Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290, 1296 (M.D. Ala. 2005) (government interest in preserving integrity of a police investigation outweighed police officer's interest in disclosing information relating to the investigation); *Farhat v. Jopke*, 370 F.3d 580, 598 (6th Cir. 1999) (employer's interest in preserving integrity of investigation outweighed employee's interest in discussing investigation with co-workers); *Orange v. District of Columbia*, 59 F.3d 1267, 1273 (D.C. Cir. 1995) ("Applying the *Pickering* factors, we conclude that the governments' interest in protecting the integrity of its investigation into fraud clearly outweighed whatever interest [employee] had in disclosing confidential information obtained as a result of his own investigation"); *Barnard v. Jackson County, Missouri*, 43 F.3d 1218, 1224-1225 (8th Cir. 1995) (legislature's interest in effective functioning outweighed legislative auditor's interest in providing audit and investigation results to press prior to dissemination of results to the legislature) *cert. denied*, 516 U.S. 808 (1995). Additional cases are cited, *infra*, pp. 3-5.

Moreover, not only was the alleged "gag order" lawful, but Plaintiffs have still failed to plead a viable claim that their First Amendment rights were "chilled." Plaintiffs had previously agreed to refrain from discussing this matter while the investigation was pending, and their belated affidavits do nothing to cure their wholly defective complaint. Also, their subjective belief that they "understood' they might be subject to disciplinary action is simply insufficient to raise a claim that their First Amendment rights were chilled.[2]

## ARGUMENT

## POINT I

### PLAINTIFFS' FAILURE TO ALLEGE AN UNCONSTITUTIONAL CUSTOM OR POLICY WARRANTS DISMISSAL OF THEIR CLAIMS AGAINST THE TOWN/VILLAGE

According to the complaint, Lieutenant Marshall "personally advised the Plaintiffs or virtually all of the Plaintiffs that they were ordered to silence and henceforth were forbidden to communicate with any other law enforcement agencies or members of the Harrison Police Department." Complaint ¶9. The complaint goes on to say that Marshall imposed this gag order "for Hall" (Complaint ¶10) but does not allege that it was ordered by Hall or anyone with policy making authority. As it turns out, Hall had nothing to do with the issuance of the order and was even unaware of the complaint at the time. Hall Aff. ¶¶2-3; Marraccini Aff. ¶5. Marraccini issued the order, and, as a matter of law, Marraccini is not a policymaker. *See, e.g., Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003) (police sergeant not a final policy maker for purposes of municipal liability); *Allan v. City of New York*, 386 F. Supp. 2d 542, 546 (S.D.N.Y. 2005) (police captain not a policy maker); *Allen v. City of New York*, 2007 WL 24796, *20 (S.D.N.Y. 2007) (New

---

[2] In light of the fact that Plaintiffs submitted numerous affidavits in opposition to the Defendants' motion to dismiss, "the court may exclude the additional material and decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." *Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988); see Fed.R.Civ.P. 12(b). Because Defendants have now responded to Plaintiff's affidavits with two affidavits of their own, we respectfully ask this Court to convert the motion to one for summary judgment.

York City police chief not a policymaker). Plaintiff is simply unable to point to any municipal custom or policy of the Town/Village of Harrison that caused the alleged constitutional deprivation.

## POINT II

### CAPTAIN MARRACCINI'S DIRECTIVE TO THE PLAINTIFFS THAT THEY NOT SPEAK ABOUT A PENDING POLICE INVESTIGATION DID NOT VIOLATE THEIR FIRST AMENDMENT RIGHTS

Plaintiffs do not cite even one case to support the view that they have a First Amendment right to speak out about a confidential, pending police investigation. Instead, they merely cite general principles of law that stand for the rather unremarkable proposition that public employees have First Amendment rights to speak out on matters of public concern. Defendants do not dispute this fact, but remind the Court that there is overwhelming authority that when there are pending investigations of criminal conduct, a police department must balance the rights of its employees against its right to conduct an effective investigation. *See e.g., Orange v. District of Columbia*, 59 F.3d 1267, 1273 (D.C. Cir. 1995) ("we conclude that the governments' interest in protecting the integrity of its investigation into fraud clearly outweighed whatever interest [employee] had in disclosing confidential information obtained as a result of his own investigation"); *Deschenie v. Cent. Consol. Sch. Dist.*, 473 F.3d 1271, 1281 (10th Cir. 2007) ("by going outside internal channels and airing her concerns publicly without district approval, Deschenie chose a method of expression which inherently had greater potential for disruption than other alternatives").

Plaintiff erroneously states that the balancing test set forth in *Pickering v. Board of Education*, 391 U.S. 563 (1968), has no applicability in this matter. In determining whether there is a First Amendment interest, however, the Court must balance Plaintiffs' interest against those of the government. When the employee challenges an official policy that applies to all employees of the governmental entity, "[t]he Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *United States v. National Treasury Employees*, 513 U.S. 454, 468 (1995) *quoting Pickering*, 391

3

U.S. at 571. The government "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large" *Id.* at 465.

Here, the balancing of interests supports the Town. The Plaintiffs filed a criminal complaint against the Chief of Police. While the investigation was ongoing, Plaintiffs were directed not to speak to others so that the investigation would not be compromised. Marraccini Aff. ¶4. Potential witnesses to the alleged criminal conduct could not be contacted so that their statements to investigators would not be tainted. To prohibit such an order would not only have compromised this investigation, but any other investigation the Police Department may conduct in the future.

In *Shelton Police Union v. Voccola*, 135 F. Supp. 2d 604 (D. Conn. 2001), the court was confronted with a claim by police officers alleging that an order directing them not to publicly disclose confidential information was a prior restraint on their right to free speech. In *Shelton*, the Police department had a rule, Rule 4-J, which provided in part:

> No member of the department shall release any information relating to pending investigations or any information not otherwise available to the public if such information is exempt from public disclosure pursuant to the Freedom of Information Act.

125 F. Supp. 2d at 608. Notwithstanding this rule, Plaintiff, a police officer and President of the Police Union, divulged information to the press about an ongoing criminal investigation of a complaint filed by a police officer against the Chief of Police. Plaintiff also disclosed the name of an investigator in a separate internal investigation and that an officer had dropped a complaint against another police officer. Plaintiff was disciplined because of these disclosures. Plaintiff claimed that the discipline imposed was improper because, the rule prohibiting him from disclosing the information was facially unconstitutional. The court, however, found no merit to this assertion:

> . . . *with regard to confidential information, protecting such information is a significant governmental interest. Harman,* 140 F.3d at 122. *"Not only could disclosure of such information injure the reputation and security of those the agencies serve, but a failure to maintain confidentiality may undermine public confidence in the agency." Id. . . .*
>
> Further, the government's interest in functioning as effectively as possible has also been found to justify restrictions on employee speech. *See Waters v.*

> *Churchill*, 511 U.S. 661, 675 (1994); *Connick*, 461 U.S. at 150-53. *In order to function effectively, the police department must have control over statements attributed to it and must be able to protect information about pending investigations so as not to put the investigation or those involved in it at risk.* Therefore, in this case, the government's interest in functioning effectively is served by Rule J-4.
>
> * * *
>
> In sum, Rule J-4 restricts employees' interests in free speech only in the context of "formal releases" and confidential information. At the same time, the Rule addresses the government's significant interests in keeping statutorily protected information confidential, protecting information about pending investigations . . . and approving any public statements released on behalf of the police department. *Balancing these interests, the court finds that the government has satisfied its burden of demonstrating that its interests in confidentiality and effectiveness outweigh police officers' interests in speaking for the department or releasing confidential information. Therefore, Rule J-4 is not unconstitutional on its face.*

125 F. Supp. 2d at 624-625 (emphasis added); *see also Verri v. Nanna*, 972 F. Supp. 2d 773, 801-802 (S.D.N.Y. 1997) (policy prohibiting police officers from discussing need for a promotional examination deemed lawful; "the Elmsford Police Department's interest in the efficient functioning of the department . . . would likely outweigh the weak interest an individual officer would have in directly petitioning the Board in this limited respect").

## POINT III

### PLAINTIFFS' RIGHTS HAVE NOT BEEN CHILLED

Defendants do not dispute that Plaintiffs were directed not to discuss the then-pending investigation. However, Plaintiffs' claim that such a prohibition chilled their rights is plainly wrong. Here, Plaintiffs do not allege that Defendants took action which chilled their speech; they allege that Defendants directly prohibited their speech. This is not a proper "chilling" claim. "[C]onstitutional violations may arise from the deterrent, or 'chilling' effect of governmental regulations that *fall short of a direct prohibition against the exercise of First Amendment rights.*" *Laird v. Tatum*, 408 U.S. 1, 12-13 (1972) (emphasis added); *see Hankard v. Town of Avon*, 126 F.3d 418, 423 (2d Cir. 1997) ("governmental action which *falls short of a direct prohibition* on the free exercise of speech

5

may be subject to constitutional challenge"). Thus, in *Piscottano v. Town of Somers*, 396 F.Supp.2d 187, 206 (D. Conn. 2005), the Court dismissed a chilling claim noting:

> Piscottano has not alleged that Mello took some action, which, by its effect, chilled her First Amendment rights; rather she has alleged that Mello directly prohibited her from exercising her First Amendment right to speak at the public meeting. . . . Consequently, Mello is granted summary judgment on Piscottano's "chilling effect" claim.

(Internal citations omitted)

Moreover, even if this case stated a viable "chilling" claim, it is clear that Plaintiffs rights were not chilled. In their March 28, 2007 letter to the Board, Plaintiffs stated:

> If we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency.

Thus, even before the alleged "gag order" was issued, Plaintiffs had already agreed that they would not report this matter to another law enforcement agency while the investigation was pending. Because the "gag order" had no impact on the Plaintiffs, as they had already agreed not to speak about their complaint against the Chief, Plaintiffs' rights could not have been chilled. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

Finally, the alleged threats imposed upon Plaintiffs fail to rise to the level of coercive conduct needed to constitute "chilling." Indeed, the affidavits submitted by Plaintiffs in opposition confirm that no coercive statements were made. Ten affidavits "coincidentally" claim in unison::

> I personally *understood* that if I failed to comply with an order issued to me by my superior . . . that I could and would in fact be subject to disciplinary charges for failing to obey a direct order . . .

(*See* Berg Aff., Exhibits: Ex 1, ¶7, Ex. 2 ¶4, Ex. 3, ¶7, Ex. 4 ¶4, Ex. 5, ¶3, Ex. 6 ¶7, Ex. 7, ¶5 Ex. 8, ¶3, Ex. 9, ¶4, Ex. 10 ¶4) (emphasis added). Nowhere in these affidavits, however, does even one Plaintiff say that he was specifically told he would be disciplined if he violated the gag order. Rather, Plaintiffs claim it was their subjective "understanding" that discipline could follow (which it

has not). These assertions are patently insufficient to state a chilling. *See, e.g., Hankard v. Town of Avon*, 126 F.3d 418, 423 (2d Cir. 1997) ("a veiled threat of reprisal implicit in defendants' actions" held insufficient to state a claim that police sergeants' speech was chilled where police chief ordered Plaintiffs clarify an investigation report).

Plaintiffs also claim that Chief Hall told them that he was "disappointed" in their decision to file the complaint. Should Chief Hall have been proud that a group of police officers falsely accused him of a crime with little or no evidence to support such an assertion? Also, Plaintiff Duffelmeyer claims that sometime in the *middle of June 2007*, Chief Hall said to him "you must think I am a fucking idiot if you think I changed the check." Berg Aff. Ex. 1 at ¶12. This statement which was made long *after* the alleged "gag order" was made and lifted, simply shows the Chief's frustration as to the false allegations against him. It had nothing to do with the gag order, and in any case, is not coercive. Moreover, Chief Hall has every right to voice his opinion as to the false allegations made by Plaintiffs. Further, his statement that he was contemplating litigation over this matter is also protected. The investigation was completed and the allegations were found to be false. *See, e.g., Jewell v. NYP Holdings, Inc.*, 23 F. Supp.2d 348, 378 (S.D.N.Y. 1998) ("No First Amendment protection enfolds false charges of criminal behavior") *quoting Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 382 (1977); *Silsdorf v. Levine*, 59 N.Y.2d 8, 16 (1983) ("although expressions of opinion are constitutionally protected, accusations of criminal or illegal activity, even in the form of opinion, are not"). If, in fact, Chief Hall has been defamed by Plaintiffs, he certainly has the right to take legal action. Finally, Chief Hall's response to Duffelmeyer's claim that "people were scared" was nothing more than an apparent confirmation of what Duffelmeyer had already just relayed to him, *i.e.,* that "people are scared." In short, there is not a shred of evidence that Defendants engaged in any coercive conduct. As such, there can be no claim of chilling.[3]

---

[3] Plaintiff Walther also asserts that he was told he would be brought up on disciplinary charges for signing the March 28 complaint. Berg Aff. Ex. 2 at ¶11. Despite the passage of almost four months, he has a failed to produce anything showing any disciplinary action taken towards him or any of the other Plaintiffs for having signed the complaint. (Footnote Continued)

In a last ditch effort to save their claims, Plaintiffs erroneously assert that the "gag order" continued after the investigation was concluded. One of the Plaintiffs, admits, however, that Marraccini told him the order was no longer in effect after the investigation was completed. *See* Berg Aff. Ex. 2 at ¶11. Moreover, after Plaintiffs made such a preposterous assertion in their response papers, Defendants immediately issued a written order indicating that there were no restrictions on Plaintiffs' right to speak on this issue as of the completion of the investigation. *See* Marraccini Aff. Ex. 1. Moreover, it has long been held that a "de minimus deterrence from engaging in protected speech is not constitutionally significant." *Ford v. Reynolds,* 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004); *see Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a de minimus level of imposition with which the Constitution is not concerned."); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996) ("At most, [plaintiff] has suffered a de minimus infringement of his First Amendment rights which is not actionable in a § 1983 petition.").[4]

---

Moreover, the alleged threat was made for his signing of the letter and not in response to any request that he be allowed to speak out on this issue to other law enforcement agencies or individuals. Walther had already signed the letter so there could be no "chill."

[4] The argument that the Plaintiffs' rights were chilled because the order remained in effect after the investigation was completed smacks of insincerity. First, the Chief's order specifically noted that that the "gag order" lifted as of the day the Department received the District Attorney's report. *See* Marraccini Aff. Ex. 1. The order was written after the Plaintiffs made this disingenuous argument in their opposition papers only after having asked for a three week extension to file their brief, presumably, so that they could claim their rights were being violated during this extended period of time. Also, Captain Marraccini has stated that the order was in effect *only* while the investigation was pending. *See* Marraccini Aff. Moreover, throughout Defendants' initial brief, dated May 30, 2007 — filed just days after the District Attorney issued its report — they clearly stated that the order *only* applied during the pending investigation. *See* Defendants' Memo. of Law at p. 9 ("Point II - Lieutenant Marshall's Directive To The Plaintiffs That They Not Speak About A *Pending* Police Investigation Did Not Violate Their First Amendment Rights") (emphasis added); *id.* at p. 9 ("Contrary to Plaintiffs contentions, directives to police officers to not speak about *pending* police investigations do not violate the First Amendment."); *id* at p. 16 ("All that Plaintiffs' were instructed not to do was to not interject themselves into an *open* investigation so that the investigator could effectively and efficiently investigate Plaintiffs' own allegations."); *id.* at p. 16 ("Under these circumstances, the Department's interest in ensuring its effective functioning by protecting the integrity of an *open* investigation into alleged criminal activity clearly outweigh Plaintiffs' interests"). The statements in the brief thus placed Plaintiffs on further notice that the order applied to the pending or open investigation. *See, e.g., Missouri v. Jenkins,* 515 U.S. 70, 104 (1995) (O'Connor concurring) ("State's opening brief placed respondents on notice of its argument"); *Antioch Co. v. Scrapbook Borders, Inc.*, 291 F. Supp. 2d 980, 984 n.2 (D. Minn. 2003) ("Here, the Defendants' brief placed the Plaintiff on notice that the Defendants also sought the entry of Summary Judgment").

In short, Plaintiffs' rights have not been chilled. The Department has a legitimate basis for imposing the restrictions it did because the need to preserve the integrity of the criminal investigation far outweighed any right of the Plaintiffs to discuss this issue with others. Plaintiffs' assertions that their rights have been violated simply have no merit.

## POINT IV

### PLAINTIFFS' CLAIMS AGAINST DEFENDANT DAVID HALL MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THAT HE WAS PERSONALLY INVOLVED IN ANY CONSTITUTIONAL DEPRIVATION

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). In order to sustain a § 1983 claim against an individual, a plaintiff must establish that the named defendant was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987). "A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." *Davis v. County of Nassau*, 335 F. Supp. 2d 668, 677 (E.D.N.Y. 2005).

Plaintiffs here have not only failed to allege specific facts of Chief Hall's personal involvement in issuing the order in this case, but the affidavits of Chief Hall and Anthony Marraccini specifically state that the Chief had nothing to do with the investigation into the March 28 complaint. In fact, the Chief was not even present when Plaintiffs were interviewed. *See* Marraccini Aff. ¶ 5, Hall Aff. ¶¶2-3. Under these circumstances, Chief Hall cannot be held liable under §1983.

## POINT V

### THE INDIVIDUAL DEFENDANTS ARE PROTECTED BY THE DOCTRINE OF QUALIFIED IMMUNITY

"Because qualified immunity is an immunity from suit — not merely an immunity from judgment — assertions of qualified immunity should be addressed as early as possible in the judicial process." *Savino v. City of New York*, 331 F.3d 63, 71 (2d Cir. 2003). Both individual defendants should be dismissed form this lawsuit. First, because Chief Hall did not participate in the investigation or the issuance of the gag order, he must be immune from suit. Marraccini Aff.; Hall Aff. Second, when Lieutenant Marshall instructed Plaintiffs not to discuss the complaint during the pending investigation, he was merely following Captain Marraccini's directive. In light of the fact that he was carrying out an objectively reasonable request from a superior officer, Lt. Marshall must, as a matter of law, be granted qualified immunity. *See Lauro v. Charles*, 219 F.3d 202, 216 n. 10 (2d Cir. 2000) ("the existence of qualified immunity is further supported by the fact that [defendant] was apparently following orders given by his superiors"); *Varrone v. Bilotti*, 123 F.3d 75, 81 (2d Cir. 1997) ("each of these officials had qualified immunity for carrying out his supervisor's directive, even though he did not independently investigate the basis and reason for the order"); *see also Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer support qualified immunity . . .").

## CONCLUSION

For the foregoing reasons, the entire Complaint should be dismissed against all Defendants and Defendants should be awarded all costs, fees, and any other relief this Court deems appropriate.

Dated: Garden City, New York
       July 24, 2007

Respectfully submitted,
BOND, SCHOENECK & KING, PLLC
By: ___s/Mark N. Reinharz___
Mark N. Reinharz (MNR 6201)
Attorneys for the Defendants
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
(516) 267-6320

# CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2007, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic service upon the following parties and participants:

Jonathan Lovett, Esq.
Lovett & Gould, LLP
222 Bloomingdale Road
White Plains, New York 10605
Attorney for Plaintiffs

                                        s/   Mark N. Reinharz
                                            Mark N. Reinharz (6201)
                                      Bond, Schoeneck & King, PLLC
                                      Attorneys for Defendant James Holden
                                      1399 Franklin Avenue, Suite 200
                                      Garden City, New York  11530