UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                                    :
WILLIAM C. DUFFELMEYER, MICHAEL                     :
WALTHER, STEVEN HEISLER, JEFF NARDI,                :
STEPHEN M. CARPINIELLO, EDWARD ARCE,                :
RALPH TANCREDI, PETER DeVITTORIO,                   :
MICHAEL MARINELLI, and ARTHUR                       :
MARINELLI,                                          :
                                                    :
                              Plaintiffs,           :     07 CIV 2807 (KMK)(MDF)
                                                    :     REPORT AND RECOMMENDATION
          -against-                                 :
                                                    :
                                                    :
LAWRENCE MARSHALL, individually, DAVID              :
HALL, individually, and TOWN/VILLAGE OF             :
HARRISON, NEW YORK,                                 :
                                                    :
                              Defendants.           :
---------------------------------------------------------------X
TO: THE HONORABLE KENNETH M. KARAS, U.S.D.J.

In April 2007, William Duffelmeyer, Michael Walther, Steven Heisler, Jeff Nardi,

Stephen Carpiniello, Edward Arce, Ralph Tancredi, Peter DeVittorio, Michael Marinelli and

Arthur Marinelli ("Plaintiffs"), all members of the Police Department ("Department") of the

Town/Village of Harrison ("Town"), commenced this action pursuant to 42 U.S.C. § 1983

against the Town, and Lawrence Marshall and David Hall in their individual capacities (together,

the "Defendants"). Plaintiffs seek to recover compensatory and punitive damages based on

alleged violations of their rights under the First Amendment. Defendants move to dismiss this

action pursuant to Fed. R. Civ. P. 12(b)(6) (Docket No. 8), and request in the alternative that the

Court treat the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. For the

reasons that follow, it is respectfully recommended that the Court deny both the Defendants'

motion to dismiss and request for conversion of this motion to one for summary judgment.

## BACKGROUND

The complaint alleges the following facts which are assumed to be true for purposes of ruling on Defendants' motion to dismiss.  On March 28, 2007, Plaintiffs Duffelmeyer, Heisler, Carpiniello, Tancredi, Walther, Arce and DeVittorio sent a letter to the Town's Board of Police Commissioners (the "Board") and Police Captain Anthony Marraccini.  The letter stated that in January 2007, Police Benevelent Association ("PBA") President Ralph Tancredi discovered, during a routine examination of donations received by the Harrison Police Association during the holiday season, that the Brae Burn Country Club ("Brae Burn"), among others, had not sent its customary annual donation.  When President Tancredi inquired with Brae Burn, he was informed that Brae Burn had, in fact, donated a $2500 check that Chief of Police David Hall ("Chief Hall") personally picked up from Brae Burn.  Compl. ¶ 7.

Shortly after Chief Hall picked up the check, Brae Burn received a $2500 receipt for an advertisement in the Chiefs of Police Association Journal.  Despite the fact that the check was made out to the Harrison Police Association and no one was authorized by Brae Burn to cross out "Harrison" in the payee line and replace it with "Chiefs," the funds were deposited in the New York State Chiefs of Police Association account.  At the time, Chief Hall was the President of the Chiefs of Police Association.  When PBA Vice President Michael Walther subsequently asked Chief Hall if he had received any checks intended for the Harrison Police Association, he said no.  *Id.*

Plaintiffs' March 28, 2007 letter requested that the Town Board investigate this matter on their behalf, stating "[i]t is also our understanding that if we are not comfortable or disagree with

the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency."  *Id.*

Within hours of the delivery of this letter, Chief Hall directed Lieutenant Lawrence Marshall ("Lieutenant Marshall") and others to investigate this complaint, with "the self-serving objective of covering-up that crime and silencing the Plaintiffs."  As a result, Lieutenant Marshall advised Plaintiffs that they were ordered to silence going forward and accordingly forbidden to communicate with other law enforcement agencies (or members of the Harrison Police Department or Police Association) regarding their belief that Chief Hall stole money on behalf of the Chiefs Association.  *Id.* ¶¶ 8-9.  Chief Hall and Lieutenant Marshall also threatened "retaliatory disciplinary action in the event of non-compliance" with the so-called "gag order."  *Id.* ¶ 11.

Lieutenant Marshall informed Plaintiffs that the allegations regarding Chief Hall would be referred to the Public Integrity Bureau of the Westchester County District Attorney's Office. Plaintiffs allege that referring this investigation to the District Attorney's Office was part of an "orchestrated cover-up" of Chief Hall's criminal activity due to the personal relationship between Chief Hall and the District Attorney.  *Id.* ¶ 10.

Plaintiffs claim that as a result of the "gag order," each of them has been "chilled in the prospective exercise of his rights of association, speech and to petition government for the redress of grievance."  They claim that they will not report the alleged crimes as committed by Chief Hall to any other law enforcement agency because they fear "disciplinary prosecution with the prospect of indefinite suspension without pay."  *Id.* ¶ 12.

Based on these alleged violations of their First Amendment rights, Plaintiffs seek punitive and compensatory damages pursuant to 42 U.S.C. § 1983.  *Id.* ¶ 14.  Defendants now move to dismiss the complaint pursuant to Rule 12(b)(6), or in the alternative, to convert the motion to dismiss to one for summary judgment under Rule 56.

## DISCUSSION

### I.    Standard of Review

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007), the Supreme Court reconsidered the standard for deciding a defendant's motion to dismiss, and applied "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).  While *Twombly* did not make clear whether this change from traditional pleading standards applies outside the antitrust context, the Second Circuit has "declined to read *Twombly's* flexible 'plausibility standard' as relating only to antitrust cases."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007). Accordingly, a complaint may be dismissed under this standard where it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Johnson & Johnson v. Guidant Corp.*, No. 06 Civ. 7685, 2007 WL 2456625, at *4-5 (S.D.N.Y. Aug. 29, 2007) (quoting *Twombly*, 127 S.Ct. at 1974).  Where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed."  *Id.*  Nevertheless, courts must continue to accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *ATSI*, 493 F.3d at 98.  The district court must limit itself to "a consideration of the facts alleged on the face of the complaint, and to any documents attached as

exhibits or incorporated by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (citations omitted).

Dismissal pursuant to summary judgment under Rule 56 is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Courts must determine whether a genuine issue of material fact exists by examining the evidence in the light most favorable to the non-moving party. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 253 (2d Cir. 2002).

In their reply brief, Defendants ask the Court to convert the pending motion to dismiss to one for summary judgment because both parties have submitted material outside the pleading in support of and in opposition to the motion. Reply Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 2 n.2. While the decision of whether to disregard extra-pleading materials or convert a dismissal motion into one for summary judgment is within the district court's discretion, conversion may be inappropriate where, as here, the parties have yet to complete discovery. *See Lucas v. Planning Bd. of Town of LaGrange*, 7 F. Supp. 2d 310, 319 (S.D.N.Y. 1998).

Here, both parties proffer a number of affidavits, arguing that they belie or support certain material allegations in the complaint. These arguments are indicative of disputed issues of fact, resolution of which would be inappropriate on this pre-discovery motion to dismiss. Accordingly, I find that Defendants' request that this Court convert the pending motion to dismiss to one for summary judgment should be denied as premature because discovery is not complete, and as such, the parties "have not been given the opportunity to present all the evidentiary material made pertinent by Rule 56." *Knight v. Storex Systems, Inc.*, 739 F. Supp.

5

739, 743 (N.D.N.Y. 1990); *see also Nunez v. Hasty*, No. 04-CV-1282, 2006 WL 2589254, at *11

(E.D.N.Y. Sept. 8, 2006) ("[D]efendants' motion in the alternative for summary judgment should

be denied as premature, as plaintiff has not had the opportunity to conduct discovery.").

## II.    First Amendment Violations

### A.    *Prima Facie* First Amendment Claim

To prevail on this free speech claim, Plaintiffs must show that: (1) they have an interest

protected by the First Amendment; (2) Defendants' actions were motivated or substantially

caused by their exercise of that right; and (3) Defendants' actions effectively chilled the exercise

of Plaintiffs' First Amendment right." *Balaber-Strauss v. Town/Village of Harrison*, 405 F.

Supp. 2d 427, 432 (S.D.N.Y. 2005) (citations omitted).

Defendants apparently concede that the complaint meets the first two elements for

purposes of the Rule 12(b)(6) motion, but assert that Plaintiffs fail to allege that their right to free

speech was "effectively chilled" because the complaint does not allege any coercive action by

Lieutenant Marshall or Chief Hall.  Mem. of Law in Support of Defs.' Mot. to Dismiss the

Compl. at 10, 17-18.  While Defendants cite case law to suggest that a claim based on "chilling"

of First Amendment rights cannot survive without evidence to show that the defendant's order

deterred the plaintiff from engaging in protected activity, those cases speak to the plaintiff's

burden on summary judgment.  *Id.* (citing *Hankard v. Town of Avon*, 126 F.3d 418, 423 (2d Cir.

1997); *Grennan v. Nassau County*, No. 04-2158, 2007 WL 952067, at *12-13 (E.D.N.Y. Mar.

29, 2007); *Walsh v. City of Auburn*, No. 95-CV-606, 2000 WL 976900, at *9 (N.D.N.Y. July 11,

2000)).  At the motion to dismiss stage of this litigation, this Court must view the allegations in

the complaint in the light most favorable to Plaintiffs.  *ATSI*, 493 F.3d at 98.

6

Here, the complaint alleges that Plaintiffs remain aware of "Marshall and Hall's threat of retaliatory disciplinary action in the event of non-compliance" with the "gag order." Compl. ¶ 11. Drawing all reasonable factual inferences in Plaintiffs' favor, the "gag order" as alleged in this case could be found to imply retaliatory and disciplinary measures for the failure of subordinate police officers to obey a direct order conveyed by a lieutenant on behalf of the chief of police. *See*, *e.g.*, *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003).

Defendants also argue that the complaint fails to allege any change in Plaintiffs' behavior as a result of the "gag order." Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 18. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001). This in not a case, however, where the complaint fails to allege that Plaintiffs were deterred by Defendants' actions. *See Spear v. Town of West Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (dismissing action where plaintiff did not allege that he declined to publish critical editorials or changed his writing in any way after defendant filed lawsuit which plaintiff claimed chilled his First Amendment rights). Rather, the complaint alleges that Plaintiffs initially wrote a letter to bring to light Chief Hall's actions before the "gag order" was effectuated, and stated in that letter their intention to contact other law enforcement agencies if they were not satisfied with the Board's investigation. Following the "gag order," Plaintiffs allege that they did not further discuss the matter, despite their dissatisfaction with the assignment of the investigation to the District Attorney's Office. Compl. ¶¶ 7, 10, 12. Moreover, the complaint alleges that as a result of Lieutenant Marshall's order, Plaintiffs remain unwilling to speak for fear of "disciplinary prosecution with the prospect of an indefinite suspension without pay." Compl. ¶¶ 11, 12.

Accordingly, Plaintiffs have sufficiently alleged that Defendants' actions caused a change in their behavior.

**B.    The *Pickering* Balancing Test**

"In evaluating the validity of a restraint on government employee speech, courts must 'arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Harman v. City of New York*, 140 F.3d 111, 117 (2d Cir. 1998) (*citing Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Defendants contend that under this balancing test set forth under *Pickering*, the Department's interest in maintaining the integrity of an "open investigation" trumps Plaintiffs' interest in disclosing information about Chief Hall's alleged criminal activity. Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 12. As Defendants acknowledge, the *Pickering* balancing test applies only to speech regarding matters of "public concern" – it does not apply to an employee's speech on matters of personal interest. *Id.*; *Harman*, 140 F.3d at 117.

Speech that implicates government officials in criminal activity is central to matters of public concern. *Johnson v. Ganim*, 342 F.3d 105, 112-13 (2d Cir. 2002) (citations omitted). Here, it is clear that Plaintiffs' allegation that the Town Chief of Police stole money is a matter of public concern. *See*, *e.g.*, *Shelton Police Union, Inc. v. Voccala*, 125 F. Supp. 2d 604, 622 (D. Conn. 2001) ("[I]nvestigations of the police chief and other officers are matters of public conern."). As such, under *Pickering*, this Court must balance "the interests of [Plaintiffs], as [citizens], in commenting upon matters of public concern and the interests of the State, as an

8

employer, in promoting the efficiency of the public services it performs through its employees."
*Pickering*, 391 U.S. at 568.

A higher burden of justification is required where, as here, a policy restrains speech
before it occurs. *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468 (1995).
When the government enacts a rule that allows its officials to prohibit speech prior to its
utterance, there is a "heavy presumption against its constitutional validity." *Southeastern
Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) (citations and internal quotations omitted);
*see Lusk v. Village of Cold Spring*, 475 F.3d 480, 485 (2d Cir. 2007) (citations and internal
quotations omitted).

Defendants argue that the Department's interest in preserving the integrity of an *open*
investigation overrides Plaintiffs' interest in discussing the investigation of Chief Hall with third
parties. Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 12; Reply Mem. of
Law in Support of Defs.' Mot. To Dismiss the Compl. at 4. The complaint alleges, however, that
"each of Plaintiffs have been chilled in the *prospective* exercise of his rights of association,
speech and to petition government for the redress of grievance." Compl. ¶ 12 (emphasis added).
Missing is any allegation or inference in the complaint that the "gag order" applied only for the
duration of the investigation.

In fact, the parties vehemently contest when the "gag order" was terminated and have
submitted affidavits in support of their positions. *See* Reply Mem. of Law in Support of Defs.'
Mot. to Dismiss the Compl. at 8-9.   Nevertheless, the Court will not consider these affidavits or
endeavor to resolve any factual dispute at this stage of the litigation.  The Court must instead
draw all reasonable factual inferences in Plaintiffs' favor and assume, for purposes of deciding

9

this motion to dismiss, that the "gag order" and threat of retaliatory disciplinary has prospectively caused Plaintiffs to remain silent. Compl. ¶ 12. This allegation, if proven true, would show that Plaintiffs were precluded from speaking about a matter of public concern for an indefinite period of time – not merely during the pendency of the investigation. Accordingly, Defendants have not overcome the "heavy presumption against [the] constitutional validity" of the Department's prior restraint on Plaintiffs' speech regarding the investigation. *Southeastern Promotions*, 420 U.S. at 558.

Moreover, this is not a case like *Shelton Police Union*, which Defendants cite for the proposition that police departments must be able to protect information about pending investigations "so as not to put the investigation or those involved in it at risk." 125 F. Supp. 2d at 625. The court in *Shelton Police Union* specifically held that the restriction on speech was not unconstitutional on its face because the restriction was limited to formal press releases and confidential information. *Id.* There is no such limitation alleged in this case. The complaint alleges that Plaintiffs were ordered to silence and forbidden to communicate with any other law enforcement agencies or any other members of the Harrison Police Department or Police Association regarding their belief that Chief Hall stole money belonging to the Harrison Police Association. Compl. ¶ 9. The complaint does not allege that any particular method of communication or level of confidentiality was deemed outside the confines of the "gag order."

It very well may be that Plaintiffs have no proof of their alleged deprivation of constitutional rights, and that lack of proof may become apparent at summary judgment. Nonetheless, the Second Circuit has cautioned that "even if [the court] think[s] it highly unlikely that [a plaintiff] will be able to prove his allegations, that fact does not justify dismissal for

10

failure to state a claim, for Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Chance v. Armstrong*, 143 F.3d 698, 704 (2d Cir. 1998) (citations and internal quotations omitted). Accordingly, because the Court cannot say at this stage that it appears beyond doubt that Plaintiffs can prove no set of facts which would support a claim entitled to relief, dismissal under Rule 12(b)(6) is inappropriate. *Id.*

### III. Municipal Liability

Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "[a] municipality may not be held liable in an action under 42 U.S.C. § 1983 for actions alleged to be unconstitutional by its employees below the policymaking level solely on the basis of *respondeat superior*. *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (*citing Monell*, 436 U.S. at 691). A § 1983 claim may be brought against a municipality, however, where the municipality's "policy or custom" deprived the plaintiff of constitutional rights. *See Zahra*, 48 F.3d at 685. A plaintiff must show that a particular municipal policy or practice was the "moving force [behind] the constitutional violation." *Zahra*, 48 F.3d at 694.

It is well settled that "[a]ctions by an individual with final decision-making authority in a municipality constitute official policy for purposes of a § 1983 claim." *Anthony v. City of New York*, 339 F.3d 129, 139 (2d Cir. 2003) (*citing Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986)). The issue of final policymaking authority is a legal issue to be determined on the basis of state law. *Jeffes v. Barnes*, 208 F.3d 49, 57-58 (2d Cir. 2000); *Wilson v. City of Norwich*, No. 3:02-CV-1026, 2007 WL 2566258, at *5 (D. Conn. 2007) (citing E. Chemerinsky, Federal Jurisdiction § 8.5, p. 497-99 (4th ed. 2003) (While "much remains unclear as to which municipal official should be deemed to possess final decision-making authority," . . . "[t]he

11

crucial question . . . is whether under state or local law, including relevant customs or practices, the person has policy-making authority for the [municipality].")).

Under the Supreme Court's decision in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), claims of municipal liability under § 1983 are not subject to a heightened pleading standard, but only to the notice pleading standard set forth in Fed. R. Civ. P. 8. *See*, *e.g.*, *Nesbitt v. County of Nassau*, No. 05 CV 5513, 2006 WL 3511377, at *3 (E.D.N.Y. Dec. 6, 2006).

Defendants argue that there can be no municipal liability here because no unconstitutional custom or policy is pled and Lieutenant Marshall and Chief Hall are not policymakers for the Town. *See* Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 5-8. Defendants cite New York Unconsolidated Laws § 5711-q and conclude that the Town/Village Board, acting as the Police Commissioners, set forth "policies on the administration of the entire Department." *Id.* at 8-9. Plaintiffs do not contend, however, and the complaint does not allege, that a Town policy or custom deprived Plaintiffs of any constitution right. Rather, the complaint alleges that Lieutenant Marshall – acting at the direction of Chief Hall – instituted an investigation of the alleged theft and accordingly advised Plaintiffs that they were ordered to silence. Compl. ¶¶ 8-9. Plaintiffs argue, therefore, that the "gag order" was issued at the direction of the Chief of Police, who is vested with final policymaking authority to issue such a directive to subordinate officers like Plaintiffs. Mem. of Law in Opp. to Defs.' Mot. to Dismiss at 24-25.

The relevant inquiry here is whether Lieutenant Marshall or Chief Hall "possesse[d] final authority to establish municipal policy *with respect to the action ordered*." *Pembaur*, 475 U.S. at 481 (emphasis added); *see Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) ("the official in

12

question need not be a municipal policymaker for all purposes"); *Lipton v. County of Orange, New York*, 315 F. Supp. 2d 434, 454 (S.D.N.Y. 2004) ("[D]epending on the factual and legal circumstances of a particular case, an official may be considered a final policymaker even if that official does not occupy the highest position in the relevant chain of command.").  Thus, the authority of the Town/Village Board to set forth Departmental policy does not necessarily preclude Lieutenant Marshall or Chief Hall from having final policymaking authority regarding the order at issue in this case.  Without any indication of whether Harrison Police Department custom, procedure or practice delineated the limits of Lieutenant Marshall's and Chief Hall's particular authority to issue and enforce the "gag order," the Court lacks sufficient information at this stage of the litigation to rule, as a matter of law, that Lieutenant Marshall or Chief Hall were not final policymakers as to the "gag order" at issue.  *See, e.g., Lipton*, 315 F. Supp. 2d at 455-56 (denying summary judgment where the parties did not provide the local law, rules or procedures that "delineat[ed] the limits of [the defendant's] authority" to make the decision at issue); *East Coast Novelty Co., Inc. v. City of New York*, 781 F. Supp. 999, 1010-11 (S.D.N.Y. 1992) (denying summary judgment where a question of fact remained as to whether an apparent large-scale operation involving high-level officers operating pursuant to the police chief's directive should give rise to municipal liability).  Accordingly, I find that Defendants' motion to dismiss is premature insofar as it seeks to dismiss this action as against the Town for failure to allege policymaking authority.[1]

---

[1] Plaintiffs, however, retain the ultimate burden of demonstrating final municipal policymaking authority.  *See Iannillo v. County of Orange*, 187 F. Supp. 2d 170, 187 (S.D.N.Y. 2002).

## IV.     Individual Defendants

### A.     Chief Hall

Defendants argue that the claims against Chief Hall should be dismissed because Plaintiffs fail to allege that he was personally involved in any constitutional deprivation. Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 19-20. Where a complaint is silent as to the personal involvement of an individual defendant, dismissal of the § 1983 claim as to that defendant is proper. *Wallace v. Conroy*, 945 F. Supp. 628, 638 (S.D.N.Y. 1996). Here, the complaint sufficiently alleges Chief Hall's involvement in the alleged deprivation of Plaintiffs' constitutional rights. The complaint alleges that Chief Hall issued the directive to investigate his own purported criminal activity and "[i]n that connection" Marshall advised Plaintiffs that they were ordered to silence – put another way, a "'gag' order [was] imposed by Marshall for Hall." Compl. ¶¶ 8-10. The complaint also alleges that Plaintiffs were aware of "Marshall and Hall's threat of retaliatory disciplinary action in the event of non-compliance." *Id.* ¶ 11. Accordingly, Defendants' contention that Plaintiffs fail to allege that Chief Hall was personally involved is without merit.

### B.     Qualified Immunity

The Individual Defendants also claim qualified immunity from this action. The protection of qualified immunity, which is an immunity from suit, attaches "insofar as [government officials'] conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity also extends to protect a government actor if it was objectively reasonable for him to believe that

14

his actions were lawful at the time of the challenged act." *Id.* (citations and internal quotations omitted).

Although a motion to dismiss under Rule 12(b)(6) may be predicated upon a qualified immunity defense, "the defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright*, 386 F.3d 432, 434 (2d Cir. 2004). "[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *Id.* at 436 (citations omitted).

Here, Defendants argue that Chief Hall and Lieutenant Marshall are entitled to qualified immunity because as alleged, their decision to issue a "gag order" was made "'within a matter of hours' of being informed by Plaintiffs of Chief Hall's alleged misconduct," and the purpose of qualified immunity is to protect officials making difficult on-the-job decisions, particularly "when officials are forced to act quickly." Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 21-22 (quoting *Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007)). However, whether it was objectively reasonable for Chief Hall and Lieutenant Marshall to believe their actions were lawful depends not only on how quickly the decision to issue the "gag order" was made, but also on for how long the "gag order" was in effect. The complaint alleges that Plaintiffs' speech was chilled in the "prospective exercise" of their First Amendment rights. *Id.* ¶

12. Absent are any facts in the complaint to indicate when the "gag order" was lifted.[2]

Accordingly, Defendants cannot assert the defense of qualified immunity based on the facts as

they appear on the face of the complaint. *McKenna*, 386 F.3d at 434.

Because plaintiffs facing a motion to dismiss are "entitled to all reasonable inferences

from the facts alleged, not only those that support [their] claim, but also those that defeat the

immunity defense," *McKenna*, 386 F.3d at 436, the Individual Defendants' argument that the §

1983 claims should be dismissed as against them based on qualified immunity cannot succeed at

this time.

## CONCLUSION

Based on the foregoing, it is respectfully recommended that the Court deny both

Defendants' motion to dismiss and request for conversion of the motion to dismiss to one for

summary judgment.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties

shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a

total of thirteen (13) working days (*see* Fed. R. Civ. P. 6(a)), from the date hereof, to file written

objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

---

[2] The parties dispute for how long the "gag order" was in effect, as well as the roles of Captain Marraccini, Lieutenant Marshall and Chief Hall in issuing the order.  *See* Reply Mem. of Law in Support of Defs.' Mot. to Dismiss the Compl. at 8-10.  While the ultimate resolution of qualified immunity depends on the determination of these factual questions, such inquiry is inappropriate at this stage of the litigation. *See Denton v. McKee*, 332 F. Supp. 2d 659, 666-67 (S.D.N.Y. 2004).  Defendants can raise the doctrine of qualified immunity on a motion for summary judgment if appropriate.

Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M.

Karas, at the United States Courthouse, 300 Quarropas Street, Room 533, White Plains, New

York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White

Plains, New York 10601.

Failure to file timely objections to the Report and Recommendation will preclude later

appellate review of any order to judgment that will be entered by Judge Karas. *See Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825

(1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek v.*

*Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988).  Requests for extensions of time to file objections

must be made to Judge Karas and should not be made to the undersigned.

SO ORDERED

Dated: October *15,* 2007
White Plains, New York

Respectfully submitted,

MARK D. FOX
UNITED STATES MAGISTRATE JUDGE