UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
WILLIAM C. DUFFELMEYER, MICHAEL
WALTHER, STEVEN HEISLER, JEFF NARDI,
STEPHEN M. CARPINIELLO, EDWARD ARCE,
RALPH TANCREDI, PETER T. DeVITTORIO,
MICHAEL MARINELLI, and ARTHUR
MARINELLI,

Civil Action No. 07-2807
(KMK)(MDF)

                 Plaintiffs,

   – against –

LAWRENCE MARSHALL, individually, DAVID
HALL, individually, and the TOWN/VILLAGE OF
HARRISON, NEW YORK,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**OBJECTIONS TO THE REPORT AND RECOMMENDATION
BY MAGISTRATE MARK D. FOX
SUBMITTED ON BEHALF OF THE DEFENDANTS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................2

    Plaintiffs' March 27, 2007 Letter.............................................................................2

    Plaintiffs' Prior Litigation Against the Town/Village, Captain Marraccini and
    Chief Hall...............................................................................................................3

    The Investigation....................................................................................................3

    The Findings...........................................................................................................4

    Defendant's Motion to Dismiss...............................................................................5

    Magistrate Fox's Report And Recommendation.......................................................6

ARGUMENT .........................................................................................................6

    POINT I ................................................................................................................6

        THE MAGISTRATE APPLIED THE INCORRECT STANDARD OF REVIEW
        AND FAILED TO CONSIDER DOCUMENTS INTEGRAL TO THE
        PLAINTIFF'S CLAIM .......................................................................................6

            A.    Standard Of Review On A Motion To Dismiss A Complaint ..............6

            B.    On A Motion To Dismiss, The Court Should Consider Documents
                 Integral To The Complaint...................................................................8

    POINT II ...............................................................................................................9

        PLAINTIFFS' FIRST AMENDMENT RIGHTS HAVE NOT BEEN CHILLED...9

            A.    Plaintiffs Failed To Plead Coercive Conduct By The Defendants........9

            B.    Plaintiffs Have Failed To Allege Any Change In Their Behavior.......11

    POINT III..............................................................................................................12

        LIEUTENANT MARSHALL'S DIRECTIVE TO THE PLAINTIFFS THAT
        THEY NOT SPEAK ABOUT A PENDING POLICE INVESTIGATION DID
        NOT VIOLATE THEIR FIRST AMENDMENT RIGHTS ................................12

            A.    The *Pickering/National Treasury Employees Union* Balancing
                 Test.....................................................................................................13

            B.    The Balance Of Interests Weigh Heavily In Favor Of The Police
                 Department.......................................................................................... 14

POINT IV ............................................................................................19

PLAINTIFFS' FAILURE TO ALLEGE AN UNCONSTITUTIONAL CUSTOM OR POLICY WARRANTS DISMISSAL OF THEIR CLAIMS AGAINST THE TOWN/VILLAGE ......................................................................19

    A.   No Unconstitutional Custom Or Policy Is Pled .................................19

    B.   The Alleged Unconstitutional Action Was Taken By A Non-Policymaker ..................................................................................20

POINT V ..............................................................................................22

THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED ..........................22

    A.   Chief Hall Had No Personal Involvement In Any Constitutional Deprivation ..........................................................................22

    B.   The Individual Defendants Are Protected By Qualified Immunity ...........................................................................23

CONCLUSION............................................................................................25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Ad Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591
(S.D.N.Y. 2007) ..............................................................................................................7

*Alfaro Motors, Inc. v. Ward*, 814 F.2d 883 (2d Cir. 1987) ...............................................22

*Allan v. City of New York*, 386 F. Supp. 2d 542 (S.D.N.Y. 2005) ....................................20

*Allen v. City of New York*, 2007 WL 24796 (S.D.N.Y. 2007) .......................................21

*Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007) ...........................................23

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987 ............................................................24

*Anthony v. City of New York*, 339 F.3d 129 (2d Cir. 2003) ..............................................20

*Antioch Co. v. Scrapbook Borders, Inc.*, 291 F. Supp. 2d 980 (D. Minn. 2003) ...............17

*Arce v. Banks*, 913 F. Supp. 307 (S.D.N.Y. 1996) ...........................................................18

*Balaber-Strauss v. Town/Village of Harrison*, 405 F. Supp. 427 (S.D.N.Y. 2005) ..........11

*Barnard v. Jackson County, Missouri*, 43 F.3d 1218 (8th Cir. 1995) *cert. denied*,
516 U.S. 808 (1995) .......................................................................................................16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007) ...........................6, 7

*Bilida v. McCleod*, 211 F.3d 166 (1st Cir. 2000) .............................................................24

*Birmingham v. Ogden*, 70 F. Supp. 2d 353 (S.D.N.Y. 1999) ...........................................19

*Blum v. Schlegal*, 18 F.3d 1005 (2d Cir. 1994) ...............................................................12

*Brodeur v. City of New York*, 1998 WL 557599 (S.D.N.Y. 1998) ...................................20

*Claudio v. City of New York*, 423 F. Supp. 2d 170 (S.D.N.Y. 2006) ...............................20

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995) ...............................................................22

*Conley v. Gibson*, 355 U.S. 41 (1957) ..............................................................................6

*Connick v. Meyers*, 461 U.S. 138 (1983) .........................................................................14

*Cortec Industrial, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ..........................8

*Crawford-El v. Britton*, 523 U.S. 574 (1998) ...................................................23

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001)................................11, 12

*Farhat v. Jopke*, 370 F.3d 580 (6th Cir. 1999) ...............................................15

*Faulkner v. Beer*, 463 F.3d 130 (2d Cir. 2006)..............................................8, 18

*Ford v. Reynolds*, 326 F. Supp. 2d 392 (E.D.N.Y. 2004)..................................18

*Garcetti v. Ceballos*, 126 S.Ct. 1951 (2006)....................................................13

*Grennan v. Nassau County BOCES*, 2007 WL 952067 (E.D.N.Y. 2007)..................10, 11

*Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983).........................9

*Hankard v. Town of Avon*, 126 F.3d 418 (2d Cir. 1997) ...............................10, 11

*Harman v. City of New York*, 140 F.3d 111 (2d Cir. 1998)............................12, 15

*Hock v. County of Bucks*, 2005 WL 3488726 (E.D. Pa. 2005)...........................21

*Howard v. Town of Bethel*, 2006 WL 949766 (S.D.N.Y. 2006).........................12

*Ingraham v. Wright*, 430 U.S. 651 (1977) ......................................................18

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ....................................................7

*Kerman v. City of N.Y.*, 261 F.3d 229, 236-37 (2d Cir. 2001)...........................24

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991)................................5

*Laird v. Tatum*, 408 U.S. 1 (1972)................................................................11

*Lauro v. Charles*, 219 F.3d 202 (2d Cir. 2000) ...............................................24

*Lewis v. Cowen*, 165 F.3d 154 (2d Cir. 1999) ...........................................12, 13

*Lytle v. City of Haysville, Kansas*, 138 F.3d 857 (10th Cir. 1998) ....................15

*Lytle v. Doyle*, 326 F.3d 463 (4th Cir. 2003) ..................................................20

*Malone v. City of New York*, 2006 WL 2524197 (E.D.N.Y. 2006) .....................20

*Marinoff v. City College of N.Y.*, 357 F. Supp. 2d 672 (S.D.N.Y. 2005) .........................14

*Marrero-Gutierrez v. Molina*, 491 F.3d 1 (1st Cir. 2007) ....................................................7

*McLaurin v. New Rochelle Police Officers*, 373 F. Supp. 2d 385 (S.D.N.Y. 2005).........22

*Mehrhoff v. William Floyd School District*, 2005 WL 2077292 .......................................23

*Missouri v. Jenkins*, 515 U.S. 70 (1995)...........................................................................17

*Monell v. Department of Social Services*, 436 U.S. 658 (1978) ........................................19

*Morelli v. Cedel*, 1997 WL 61499 (S.D.N.Y. 1997) *vacated in part on other*
    *grounds* 141 F.3d 39 (2d Cir. 1998) ............................................................................18

*Mosser v. Haney*, 2005 WL 1421440 (N.D. Tex. 2005)....................................................22

*Murphy v. City of Chicago*, 2002 WL 977508 (N.D. Ill. 2002).........................................21

*Myers v. County of Orange*, 157 F.3d 66 (2d Cir. 1998)...................................................21

*Okwedy v. Molinari*, 333 F.3d 339 (2d Cir. 2003)...............................................................9

*Orange v. District of Columbia*, 59 F.3d 1267 (D.C. Cir. 1995) .......................................16

*Pickering v. Board of Education*, 391 U.S. 563 (1968).....................................................13

*Reyes v. City University of N.Y.*, 2007 WL 2186961 (S.D.N.Y. 2007) ..............................7

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007)...........................................19, 23

*Russo v. City of Hartford*, 341 F. Supp. 2d 85 (D. Conn. 2004)........................................21

*Savino v. City of N.Y.*, 331 F.3d 63 (2d Cir. 2003) ...........................................................24

*Shelton Police Union v. Voccola*, 135 F. Supp. 2d 604 (D. Conn. 2001).........................15

*Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290 (M.D. Ala. 2005) ........15

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ............................................12

*Smart v. Goord*, 441 F. Supp. 2d 631 (S.D.N.Y. 2006)......................................................8

*Spear v. Town of W. Hartford*, 954 F.2d 63 (2d Cir. 1992)...............................................12

*Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273
(S.D.N.Y. 2002) ................................................................................................18

*United States v. National Treasury Employees Union*, 513 U.S. 454 (1995)....................13

*Van Emrik v. Chemung County Department of Social Serv.*, 911 F.2d 863 (2d Cir.
1990) ...............................................................................................................19

*Varrone v. Bilotti*, 123 F.3d 75 (2d Cir. 1997) ...................................................24

*Wallace v. Conroy*, 945 F. Supp. 2d 628 (S.D.N.Y. 1996).................................23

*Walsh v. City of Auburn*, 2000 WL 976900 (N.D.N.Y. 2000).....................................10, 11

*Waters v. Churchill*, 511 U.S. 661 (1994) ........................................................13

*Wetzel v. Town of Orangetown*, 2007 WL 3009999 (S.D.N.Y. 2007) .............................11

*Williams v. Dekalb County*, 2007 WL 41955 (N.D. Ga. 2007) .........................................22

*Wilson v. City of Boston*, 421 F.3d 45 (1st Cir. 2005) ........................................20

*Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007) ..........................................9, 25

## FEDERAL STATUTES AND RULES

42 U.S.C. § 1983..................................................................................4,19, 21, 22, 23

28 U.S.C. § 636(b)(1)(C) ......................................................................................6

Fed. R. Civ. P. 72(b) ............................................................................................6

## STATE STATUTES AND RULES

New York Unconsolidated Law §5711(q)...................................................................21

## PRELIMINARY STATEMENT

Defendants Lieutenant Lawrence Marshall, Chief of Police David Hall, and the Town/Village of Harrison, New York ("Defendants") submit this Memorandum of Law in Support of Their Objections to the Report and Recommendation by Magistrate Mark D. Fox.

In this case, the Plaintiffs, police officers in the Town/Village of Harrison, allege that their being told not to discuss a confidential police investigation violated their First Amendment rights. None of the Plaintiffs were disciplined. None were threatened and none suffered any adverse employment action as a result of the directive. Moreover, after the investigation was completed by the Westchester County District Attorney's Office and their allegations against Chief Hall were found to be "false" (even frivolous), a memorandum was issued informing them that there were no restrictions on their right to speak about this issue. Despite these undisputed facts, Magistrate Fox held that there was sufficient information in the complaint to allow this case to move forward against the Town/Village and the individual Defendants, one of whom undisputedly had nothing whatsoever to do with this matter.

As is set forth below, Defendants respectfully maintain that Magistrate Fox applied the wrong standard of review in issuing his recommendation on Defendants' Motion to Dismiss. Moreover, the Magistrate ignored undisputed evidence, e.g., the Westchester County District Attorney's Findings, the Memorandum from the Chief of Police to all police officers informing them that they were no restrictions on their discussions after the investigation was completed and the pleadings in this case — information that is integral and even essential to the allegations in the complaint. Had the proper analysis been applied and these documents considered, there would have been a finding that Plaintiffs suffered no First Amendment violation and that the individual Defendants were protected by qualified immunity. The Magistrate's application of the wrong standard of review and his failure to consider this and other information thus warrants reversal of his Recommendation and dismissal of the Complaint in its entirety.

## STATEMENT OF FACTS

Plaintiffs are police officers in the Town/Village of Harrison Police Department ("Department") Complaint ¶ 3. Defendant Lawrence Marshall is a Lieutenant in the Department, and Defendant David Hall is the Department's Chief of Police.  Complaint ¶¶ 4-5.

**Plaintiffs' March 27, 2007 Letter**

In a letter dated March 27, 2007, Plaintiffs made a complaint to Police Captain Anthony Marraccini (who is not named as a defendant) and members of the Town/Village of Harrison Board of Police Commissioners about an alleged theft of Harrison Police Association ("PBA") funds by Chief Hall on behalf of the New York State Chiefs of Police Association.  Complaint ¶ 7.  A copy of the letter is annexed to the complaint.

According to the Plaintiffs, PBA President Ralph Tancredi learned in January 2007 that the Brae Burn Country Club ("Club") "had not sent their customary annual donation [to the PBA]." After making inquiries to the Club, Tancredi learned that it had in fact made a donation of $2,500 to the Harrison PBA. Tancredi claimed that this donation, made by check, had been personally picked up at the Club by Chief Hall. Complaint ¶ 7.

Thereafter, Tancredi and other members of the Executive Board of the PBA were contacted by Club administration who informed them that the check to the PBA had been altered. The check, originally payable to the PBA, was changed and made payable instead to the New York State Chiefs of Police Association. Subsequently, the Club received a receipt for an advertisement in the Chiefs of Police Journal. According to Tancredi, "Chief Hall never discussed the advertisement with the Brae Burn charitable donation committee and Brae Burn did not authorize anyone to cross out Harrison in the payee line and replace it with Chiefs." Accordingly, Plaintiffs requested that Captain Marraccini investigate this matter, and stated that:

> … if we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency.

2

Complaint ¶ 7. As noted, Plaintiffs' letter was delivered to Captain Anthony Marraccini in the Harrison Police Department. However, the same letter was also delivered to the Mayor and Trustees. *Id.*

**Plaintiffs' Prior Litigation Against the Town/Village, Captain Marraccini and Chief Hall**

The allegations were raised in the March 27 letter just weeks after all of the Plaintiffs had filed two separate lawsuits against the Town/Village, Chief Hall and Captain Marraccini – *DeVittorio et al. v. Hall, Marraccini, and the Town/Village of Harrison, New York*, Index No. 07-0812 (WCC) and *Carpiniello et al. v Hall, Marraccini and the Town/Village of Harrison, New York*, Index No. 07-1956 (WCC) – which alleged, *inter alia*, that Defendants violated Plaintiffs' constitutional rights by installing a video camera in a locker room. On March 30, 2007, Defendants moved to disqualify the law firm of Lovett & Gould, LLP from representing the Plaintiffs in the *DeVittorio* and *Carpiniello* actions because the firm has a long history of representing one of the defendants, Anthony Marraccini. Seven days after the motions were filed, this lawsuit was filed without Marraccini being named as a defendant. The disqualification motion in the *DeVittorio* and *Carpiniello* matters is presently pending before Judge Conner.

**The Investigation**

Within hours of making their complaint, Plaintiffs allege that Chief Hall directed Lt. Marshall and other members of the Department's "administration"[1] to investigate the matter. Complaint ¶¶ 7-8. Thereafter, Lt. Marshall informed Plaintiffs that the matter was being referred to the Public Integrity Bureau of the Westchester County District Attorney's Office. Complaint ¶ 10. Marshall "personally advised" Plaintiffs not to discuss their complaint or the resulting investigation with other law enforcement agencies, members of the Department, or their union. Complaint ¶¶ 9-10. Plaintiffs allege that the directive given by Lt. Marshall violated the First Amendment because

---

[1] The Complaint does not name who these individuals are.

3

they have been chilled from exercising their rights, and have brought claims under 42 U.S.C. § 1983. Complaint ¶¶ 11, 14.

According to the unrefuted affidavits of Captain Marraccini and Chief Hall, the Chief had nothing to do with the investigation. Marraccini stated that he did not notify the Chief about the allegations until April 1 when the Chief was away on business in Lexington, Kentucky. Marraccini Aff. ¶2. This is confirmed by the Chief Hall who stated that he found out about the investigation days after it had commenced. Hall Aff. ¶ 2. Thus, according to Marraccini:

> 4. Each individual was informed that while the investigation was pending, they should not discuss this matter with others. The obvious reason for this was that I wanted to obtain the unvarnished testimony of each individual. Allowing the individuals to discuss their testimony with others could influence those others in what they might say and report. I wanted to get to the bottom of this as soon as possible. At no time did I threaten any Plaintiff with any discharge or any form of discipline if they violated the directive. Rather, I merely advised them that they should not speak to anyone about this matter while the investigation was pending. Indeed, upon information and belief, *all* of the individual officers had already advised me that they were not planning to discuss this matters with other law enforcement agencies.

Marraccini Aff. ¶ 4.

**The Findings**

Ultimately, the investigation was conducted by the Westchester District Attorney's Public Integrity Office. On or about May 24, 2007, the Office of the District Attorney, Westchester County issued its findings with regard to its "comprehensive" investigation into Plaintiffs' complaint against Chief Hall. The District Attorney concluded that "many of the facts are undisputed and there is no evidence of criminality on the part of Chief Hall." Reinharz Aff. Ex. A at p. 2. The report notes that the Chief never went to the Country Club to pick up the check, never had the check in his possession, and, other than being the former President of the of the New York State Chiefs of Police Association, he simply had nothing to do with this matter at all. As such, it was unequivocally concluded that:

4

> Based upon the investigation conducted by this Office, the serious
> allegations contained in the two page complaint signed by members
> of the Harrison Police Department that Chief David Hall was
> involved in this matter are simply false.

*Id.* at p. 4.

**Defendants' Motion to Dismiss**

On May 30, 2007 Defendant filed its Motion to Dismiss the Complaint in this matter. Along

with their memorandum of law, Defendants submitted the public findings of the Westchester District

Attorney's Office of which this Court may take judicial notice.  *See Kramer v. Time Warner Inc.*,

937 F.2d 767, 774 (2d Cir. 1991) ("the practice of taking judicial notice of public documents is not

new"). Significantly, throughout the entire memorandum of law, Defendants plainly stated that the

"gag order" only applied during the *pending* investigation (which was then completed).[2]  Plaintiffs'

response was due on June 21, 2007.  However, counsel for the Plaintiffs requested, on consent, an

extension of time to file their response.  Plaintiffs filed their memorandum of law and affidavits on

July 9, 2007 claiming, *inter alia*, that the order was unconstitutional and that it was not limited to a

pending investigation, notwithstanding the fact that Defendants' prior pleading clearly indicated that

the order was in effect *only during the pending investigation.*  Accordingly, on July 13, 2007, Chief

Hall issued a directive to all department members stating again in no uncertain terms that there was

no restriction on anyone's right to speak on the matter now that the investigation was over:

> As you know, on May 24, 2007 the Westchester Country District
> Attorney's Public Integrity Bureau completed its investigation into
> allegations set for in [*sic*] on March 28, 2007 by certain members of
> the department.  The May 24th report was posted in the department
> locker room on May 25, 2007 for perusal of all personnel.

---

[2] *See* Defendants' Memorandum of Law (Docket No. 10) at p. 9 ("Point II - Lieutenant Marshall's Directive To The
Plaintiffs That They Not Speak About A *Pending* Police Investigation Did Not Violate Their First Amendment Rights")
(emphasis added); *id.* at p. 9 ("Contrary to Plaintiffs contentions, directives to police officers to not speak about *pending*
police investigations do not violate the First Amendment."); *id* at p. 16 ("All that Plaintiffs' were instructed not to do was
to not interject themselves into an *open* investigation so that the investigator could effectively and efficiently investigate
Plaintiffs' own allegations."); *id.* at p. 16 ("Under these circumstances, the Department's interest in ensuring its effective
functioning by protecting the integrity of an *open* investigation into alleged criminal activity clearly outweigh Plaintiffs'
interests.").

Consistent with prior directives concerning discussion during a pending investigation, at the completion of said investigation, there were and there are no department restrictions on any member discussing any of the issues set forth therein.

Hall Aff. Ex. 1.

**Magistrate Fox's Report And Recommendation**

By his Report and Recommendation ("Recommendation"), Magistrate Fox recommends that this Court deny Defendants' motion to dismiss or in the alternative their request to convert the motion into one for summary judgment. The Recommendation does not cite to either the Westchester District Attorney's Report or Chief's Hall memorandum, ignores the pleadings in this case, and moreover, applies the incorrect standard for deciding a motion to dismiss.

## ARGUMENT

### POINT I

### THE MAGISTRATE APPLIED THE INCORRECT STANDARD OF REVIEW AND FAILED TO CONSIDER DOCUMENTS INTEGRAL TO THE PLAINTIFF'S CLAIM

The District Court's review of the Report and Recommendation is de novo. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

**A.      Standard of Review on a Motion to Dismiss a Complaint**

Although the Magistrate properly cited the "plausibility standard" established by United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. __, 127 S. Ct. 1955 (2007), as the standard of review in this case, he did not apply that standard in making his Recommendation to this Court. *Compare* Recommendation at 4 *with* Recommendation at 11, 15. Instead, he applied the now extinct "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *Id.* at 11, 15.

It is undisputed that prior to *Twombly*, the standard of review for motions to dismiss was governed by *Conley v. Gibson*, 355 U.S. 41 (1957). In *Twombly*, however, the United States Supreme Court "explicitly disavowed the oft-quoted statement in *Conley*…'that a complaint should

6

not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Iqbal v. Hasty*, 490 F.3d 143, 155 (2d Cir. 2007) (explaining the implications of *Twombly* on "the standard for assessing the adequacy of pleadings"); *accord Ad Rendon Communications, Inc. v. Lumina Americas, Inc.*, 2007 WL 2962591, *3 (S.D.N.Y. 2007) (Karas, J.). Ringing the death knell for *Conley*, the *Twombly* Court held that the "no set of facts" language "has earned its retirement" and "is best forgotten." *Twombly*, 127 S. Ct. at 1969.

In *Conley*'s place, the *Twombly* Court announced a new standard by which courts should adjudge the adequacy of pleadings. Now, to survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. As the Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 1964-65. Rather, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level," and the line "between the factually neutral and the factually suggestive…must be crossed to enter the realm of plausible liability." *Id.* at 1965, 1966 n. 5; *accord Ad Rendon Communications, Inc.*, 2007 WL 2962591 at *3. Thus, the new governing standard is one of "plausibility," not conclusory speculation. *Id.*

This new standard has been applied in employment discrimination cases. *See, e.g., Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9-10 (1st Cir. 2007) (affirming dismissal of wrongful demotion claim where allegations in complaint were too speculative to draw inference of discrimination) *citing Twombly*; *Reyes v. City Univ. of N.Y.*, 2007 WL 2186961, *5 (S.D.N.Y. 2007) (dismissing retaliation claim on a motion to dismiss in light of *Twombly* because Plaintiff "has not 'amplif[ied] his claim with some factual allegation in those contexts where some amplification is needed to render the claim plausible.'").

7

Here, the Magistrate held that Defendants' interest in protecting the integrity of the investigation was an insufficient basis to grant their motion "because the Court cannot say at this stage that it appears beyond doubt that Plaintiffs can prove no set of facts which would support a claim entitled to relief, dismissal under Rule 12(b)(6) is inappropriate." Report and Recommendation at p. 11. Similarly, in rejecting the qualified immunity defense, the Magistrate stated that "the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief'." *Id*. at 15. This, standard, however, was expressly rejected in *Twombly* and thus has no applicability in this case. As set forth below, had the Magistrate applied the correct standard to the facts, Defendants' motion would be granted.

**B.    On a Motion to Dismiss, the Court Should Consider Documents Integral to the Complaint**

In assessing the legal sufficiency of a claim, the Court may consider documents that are "integral" to plaintiff's claims, even if not explicitly incorporated by reference. *See, e.g., Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 46-48 (2d Cir. 1991); *Smart v. Goord*, 441 F. Supp. 2d 631, 637 (S.D.N.Y. 2006) (courts "may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion").

Here, the Magistrate failed to consider the following documents:

- The May 25, 2007 Westchester County District Attorney's Investigation Report stating that there were no criminal violations and the allegations against Chef Hall were entirely false;

- Defendants' May 30, 2007 Memorandum of Law in Support of Their Motion to Dismiss which plainly stated that the order only applied to the *pending* investigation;

- Chief Hall's July 13, 2007 Memorandum stating that the restrictions only applied during the pending investigation and therefore at that time was no longer in effect;

- The Affidavits of Anthony Marraccini and David Hall which stated that Hall had nothing to do with the investigation and therefore could not he be held personally liable;

8

- Plaintiffs' own affidavits which confirmed that no threat of discipline had been made nor was there any kind intimidation sufficient to constitute a "chill" as defined under this Circuit's jurisprudence.

These documents are integral to the Complaint and demonstrate in no uncertain terms that Plaintiffs' claim that they were chilled in exercising their First Amendment rights is implausible, and that it therefore must be dismissed. The Magistrate's failure to consider these documents warrants reversal of his Recommendation.

## POINT II

## PLAINTIFFS' FIRST AMENDMENT RIGHTS HAVE NOT BEEN CHILLED

### A.    Plaintiffs Failed To Plead Coercive Conduct By The Defendants

"[T]he First Amendment prohibits government officials from encouraging the suppression of speech in a manner which 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request.'" *Zieper v. Metzinger*, 474 F.3d 60, 65-66 (2d Cir. 2007) *quoting Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33, 39 (2d Cir. 1983). In determining whether a particular suppression of speech is constitutional, what matters is the "distinction between attempts to convince and attempts to coerce." *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (per curiam). The Complaint here simply does not allege any coercive conduct by either Lt. Marshall or Chief Hall.

Whereas the Magistrate gave credence to the Plaintiffs' conclusory allegation that they "remain unwilling to speak for fear of 'disciplinary prosecution with the prospect of an indefinite suspension without pay'" (Recommendation at 7-8 *quoting* Complaint ¶ 12), in fact, no such disciplinary prosecution or threat thereof has been alleged. *See* Complaint ¶¶ 9, 11-12. Rather, the Complaint alleges that there was an order and that Plaintiffs are generally "aware" of a threat of retaliatory action by Marshall and Hall, without any allegation that any threat was actually made. Complaint ¶ 11. Moreover, Plaintiffs admit that no such threat of discipline was made, but that the

9

so-called "threat" was merely their subjective understanding of what could occur for non-compliance with the order. *See* Def. Reply Mem. at 6-7. Indeed, the affidavits submitted by Plaintiffs in opposition confirm that no coercive statements were made. *See* Berg Aff., Exhibits: Ex 1, ¶7, Ex. 2 ¶4, Ex. 3, ¶7, Ex. 4 ¶4, Ex. 5, ¶3, Ex. 6 ¶7, Ex. 7, ¶5 Ex. 8, ¶3, Ex. 9, ¶4, Ex. 10 ¶4. Ten affidavits "coincidentally" claim in unison:

> I personally *understood* that if I failed to comply with an order issued
> to me by my superior . . . that I could and would in fact be subject to
> disciplinary charges for failing to obey a direct order . . .

*Id.* (emphasis added). Nowhere in these affidavits, however, does even one Plaintiff say that he was specifically told he would be disciplined if he violated the gag order. Rather, Plaintiffs subjectively "understood" that discipline could follow – which it has not. These assertions are patently insufficient to state a chill. *See, e.g., Hankard v. Town of Avon*, 126 F.3d 418, 423 (2d Cir. 1997) ("a veiled threat of reprisal implicit in defendants' actions" held insufficient to state a claim that police sergeants' speech was chilled where police chief ordered plaintiffs to clarify an investigation report). Under these circumstances there can be no claim that the order had a chilling effect on Plaintiffs' rights. *Grennan v. Nassau County BOCES*, 2007 WL 952067, *12-13 (E.D.N.Y. 2007) (employee given directive by supervisor not to talk to other employees stated no First Amendment prior restraint claim; "Plaintiff points to no evidence that Defendants intimated that some sort of punishment would follow if Grennan failed to accede to their request"); *Walsh v. City of Auburn*, 2000 WL 976900, *9 (N.D.N.Y. 2000) (employer's memo directive to employees not to speak with plaintiff about employer's business did not violate First Amendment where plaintiff "proffered no objective evidence suggesting that the memo deterred him from engaging in protected activity, or even that, while engaged in protected activity, he suffered from fear of reprisal.").

Despite clear contrary authority and Plaintiffs' own allegations, or lack thereof, the Magistrate concluded that "the 'gag order'…could be found to imply retaliatory and disciplinary measures." Recommendation at 7. However, the Plaintiffs' and Magistrate's subjective belief as to

10

what penalty, if any, a violation of the order could possibly entail is plainly insufficient to establish a viable claim of First Amendment violation. *See, e.g.*, *Hankard*, 126 F.3d at 423; *Grennan*, 2007 WL 952067 at *12-13; *Walsh*, 2000 WL 976900 at *9; *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001) ("the Supreme Court has held that '[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.'") *citing Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

Rather than confront the arguments raised or authority brought to his attention by Defendants (*see* Def. Mem. at 17-19 and Reply Mem. at 5-9), the Magistrate disposes of these cases requiring coercive conduct by simply saying, "those cases speak to the plaintiff's burden on summary judgment." Recommendation at 6. By doing so, however, the Magistrate ignores his own statement that to prevail at this pre-answer motion stage, Plaintiffs must still allege that "Defendants' actions effectively chilled the exercise of Plaintiffs' First Amendment rights." *Id. quoting Balaber-Strauss v. Town/Village of Harrison*, 405 F. Supp. 427, 432 (S.D.N.Y. 2005); *accord Wetzel v. Town of Orangetown*, 2007 WL 3009999, *6 (S.D.N.Y. 2007) (motion to dismiss complaint granted as "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." (citations omitted)). Plaintiffs have failed to meet their burden in this regard, as the Complaint and the documents incorporated therein clearly state that they suffered no chill.

## B.    Plaintiffs Have Failed To Allege Any Change In Their Behavior

Plaintiffs have not adequately pled any change in their behavior as a result of the order. Indeed, the letter written and signed by all Plaintiffs *before* the order was given effectively concedes that it had no effect as they had already decided on their own that they would not pursue the matter any further until the investigation was complete:

> If we are not comfortable or disagree with the results of your investigation, we reserve the right as potential crime victims to pursue the matter with another law enforcement agency.

58147.1 10/29/2007

Complaint ¶ 7. Thus, by their own words, there was no chilling effect on Plaintiffs' rights, since they failed to allege any change in behavior or how they would have acted differently absent the gag order. *See, e.g., Curley*, 268 F.3d at 73 ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (plaintiff's speech not chilled where, even after his arrest, he continued to publish newspaper criticizing village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (plaintiff's speech not chilled where he continued to publish critical editorials after town brought suit against him).

In sum, because Plaintiffs Complaint is woefully deficient in pleading any First Amendment violation against any of the Defendants, it must be dismissed.

### POINT III

### LIEUTENANT MARSHALL'S DIRECTIVE TO THE PLAINTIFFS THAT THEY NOT SPEAK ABOUT A PENDING POLICE INVESTIGATION DID NOT VIOLATE THEIR FIRST AMENDMENT RIGHTS

To recover on a claim that government actors, by their words or conduct, chilled one's right to freedom of speech, a "plaintiff must prove: (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." *Howard v. Town of Bethel*, 2006 WL 949766 (S.D.N.Y. 2006) *quoting Curley*, 268 F.3d at 73.

Whether Plaintiffs actually engaged in speech on a matter of public concern is questionable here as the timing of their allegations is certainly suspicious. *See, e.g., Lewis v. Cowen*, 165 F.3d 154, 163-64 (2d Cir. 1999); *Harman v. City of New York*, 140 F.3d 111, 119 (2d Cir. 1998) (examining whether speaker was motivated by "a desire to continue contributing to the public debate" when criticizing practices and policies of social services agency); *Blum v. Schlegel*, 18 F.3d 1005, 1012 (2d Cir. 1994) ("the fact that an employee's speech [critical of national drug policy] touches on matters of public concern will not render that speech protected where the employee's

motive for the speech is private and personal"). Whether the Plaintiffs were concerned about a public official stealing or were more interested in trying to embarrass Chief Hall, who had been named as a defendant in two lawsuits they had just filed and sought disqualification of their attorney, is far from certain. Nevertheless, for purposes of this motion *only*, it will not be contested.

A.    **The *Pickering/National Treasury Employees Union* Balancing Test**

It is well settled that "a public employee does not relinquish First Amendment rights to comment on matters of public interests by virtue of government employment." *Connick v. Meyers*, 461 U.S. 138, 140 (1983) *citing Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). This is not to say, however, that the First Amendment rights of public employees are absolute. Rather, it has been recognized that government has a "greater leeway to control employees' speech that threatens to undermine its ability to perform its legitimate functions" (*Lewis v. Cowen*, 165 F.3d 154, 161 (2d Cir. 1999)), and that government "may impose restraints on the job-related speech of public employees that would be plainly unconstitutional if applied to the public at large." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 465 (1995). In *Garcetti v. Ceballos*, the Supreme Court held that "a government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations." 126 S. Ct. 1951, 1958 (2006).  Indeed, the Supreme Court has long recognized that:

> Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When [an employee] ... begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain [him].

*Waters v. Churchill*, 511 U.S. 661, 674-75 (1994).  The Court has thus recognized the right of a governmental employer to deal with disruption in the workplace. It has also emphasized that the government, as employer, has efficiency concerns that give it greater discretion in dealing with a disruptive employee and more discretion than it would have to deter speech by a private citizen. *Id.*

13

Therefore, in order to determine the constitutionality of a restriction on employee speech, a court must "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568. This test only applies, however, when the employee speaks "as a citizen upon matters of public concern" and not "as an employee upon matters only of personal interest." *Connick*, 461 U.S. at 147.

**B.    The Balance Of Interests Weigh Heavily In Favor Of The Police Department**

As applied in this case, the *Pickering* balance must be struck in favor of the Department. The Department's substantial interests in preserving the integrity of an open investigation and in ensuring the effective functioning of the Department override Plaintiffs' interests in disclosing information about the theft complaint and investigation to third parties. Moreover, the fact that the order only affected the few police officers who provided information to the Department about the alleged wrongful conduct, demonstrates that the Department's actions were narrowly tailored. *See Marinoff v. City Coll. of N.Y.*, 357 F. Supp. 2d 672, 687 (S.D.N.Y. 2005) (moratorium on professor's activities held to be lawful as it was "particularized" instead of "generally applicable").

Although the Magistrate was ultimately unwilling to accept Defendants' argument in this regard, his reasoning and conclusion was tainted by his application of the incorrect standard of review. *Compare* Point I *supra with* Recommendation at 11. Indeed, the Magistrate concluded:

> It very well may be that Plaintiff's have no proof of their alleged deprivation of constitutional rights, and that lack of proof may become apparent at summary judgment … [but] because the Court cannot say at this state that it appears beyond a doubt that Plaintiffs can prove <u>no set of facts</u> which would support a claim entitled to relief, dismissal under Rule 12(b)(6) is inappropriate.

Recommendation at 11 (emphasis added). As the "no set of facts" standard is no longer the governing standard (*see* Point I *supra*), the Magistrate's Recommendation as to this point should be rejected by this Court.

14

This Circuit has recognized that although "[g]overnment employees are often in the best position to know what ails the agencies for which they work" and that "public debate may gain much from their informed opinions," government entities have a significant interest in maintaining the confidentiality of information relating to their internal operations. *Harman v. City of New York*, 140 F.3d 111, 119, 122 (2d Cir. 1998). This is because government must be able to keep its employees from disclosing such information that will disrupt its effective functioning as a governing body. *Id.* at 122. At issue in *Harman* was the ability of the New York City Child Welfare Administration to require its employees obtain prior approval before disseminating information to the press. Therein, the court expressly stated:

> The need to protect confidential information … is <u>undeniably</u> <u>significant</u>. Not only could disclosure of such information injure the reputation and security of those the agencies serve, but a failure to maintain confidentiality may undermine public confidence in the agency. Citizens may hesitate to report troublesome situations or to seek public assistance if they cannot rely on the agencies to keep such information secret.

*Id.* (emphasis added).

For the same reasons as in *Harman*, other courts have also undeniably recognized the substantial governmental interest in limiting employee speech so to protect the integrity of on-going investigations. *See, e.g.*, *Lytle v. City of Haysville, Kansas*, 138 F.3d 857, 868 (10th Cir. 1998) (government interest in ensuring effective functioning of police department outweighed police officer's interest in disclosing information about a confidential police investigation); *Signore v. City of Montgomery, Alabama*, 354 F. Supp. 2d 1290, 1296 (M.D. Ala. 2005) (government interest in preserving integrity of a police investigation outweighed police officer's interest in disclosing information relating to the investigation); *Shelton Police Union v. Voccola*, 135 F. Supp. 2d 604, 625 (D. Conn. 2001) ("Balancing these interests, the court finds that the government has satisfied its burden of demonstrating that its interests in confidentiality and effectiveness outweigh police officers' interests in speaking for the department or releasing confidential information."); *Farhat v.*

15

*Jopke*, 370 F.3d 580, 598 (6th Cir. 1999) (employer's interest in preserving integrity of investigation outweighed employee's interest in discussing investigation with co-workers); *Orange v. District of Columbia*, 59 F.3d 1267, 1273 (D.C. Cir. 1995) ("Applying the *Pickering* factors, we conclude that the governments' interest in protecting the integrity of its investigation into fraud clearly outweighed whatever interest [employee] had in disclosing confidential information obtained as a result of his own investigation"); *Barnard v. Jackson County, Missouri*, 43 F.3d 1218, 1224-1225 (8th Cir. 1995) (legislature's interest in effective functioning outweighed legislative auditor's interest in providing audit and investigation results to press prior to dissemination of results to the legislature) *cert. denied*, 516 U.S. 808 (1995).

*In contrast to this overwhelming authority, Plaintiffs have cited not one case that supports their right to discuss an open investigation.*

Like the cases cited above, this case also hinges on the Department's ability to protect the integrity of a then-open investigation into an alleged theft by preventing disclosure of confidential information relating to that investigation. The information Plaintiffs were instructed not to disclose solely related to an internal police investigation into the allegations against Chief Hall. When Plaintiffs disclosed their belief that the Chief had engaged in wrongdoing (a claim ultimately determined to be false) by way of their March 27, 2007 letter to Captain Marraccini and the Board, the Department immediately began investigating the matter. Because the alleged theft was already known by the Department, further disclosure by Plaintiffs to third parties would not serve to uncover unknown wrongdoing; rather, it could both disrupt and jeopardize the investigation already underway. For example, had Plaintiffs' been permitted to discuss their belief that the Chief had stolen PBA funds with other members in the Department, their discussions would necessarily bias those other members into forming a belief as to the Chief's guilt or innocence. Lt. Marshall, or anyone else investigating the allegation would therefore be precluded from ascertaining from those other members whether they had any information relevant to the investigation – those who believed

16

the Chief to be innocent could act to protect him, whereas those who believed in his guilt could do the opposite. Either way, whatever information then provided would be jaded by the individuals' subjective interpretation of the facts, rather than simply being the objective facts themselves. All that Plaintiffs' were instructed to do was to not interject themselves into an open investigation so that the investigator could effectively and efficiently investigate Plaintiffs' own allegations. Any discussions Plaintiffs' would have otherwise had absent this instruction would do nothing but contaminate that investigation. Under these circumstances, the Department's interest in ensuring its effective functioning by protecting the integrity of an open investigation into alleged criminal activity clearly outweighs Plaintiffs' interests.

Although the Magistrate took issue with the fact that the gag order, as alleged, was not limited in time to when the investigation was open, by doing so, he neglected to consider documents properly before the Court on Defendants' motion to dismiss, which clearly evidenced such a limitation. This was in error.

Both Defendants and Plaintiffs submitted documents to the Magistrate demonstrating that the gag order was only in effect while the investigation was on-going, that the investigation concluded on May 24, 2007, and that the gag order was terminated as of that date. *See* Reinharz Aff. Ex. A; Marraccini Aff. ¶4, Ex. 1; Hall Aff. ¶ 4; Berg Aff. Ex. 2 at ¶11. Indeed, one of the defendants even submitted an affidavit admitting that Captain Marraccini told him he could speak about the matter after the investigation was concluded. Berg Aff. Ex. 2 at ¶11. As such, contrary to the Magistrate's conclusion that a "factual dispute" existed with regard to the duration of the gag order (Recommendation at 9), in fact, none did.[3]

---

[3]The statements in Defendants' May 30, 2007 brief (*see* n.2 *supra*), filed just after the Defendants received the District Attorney's report thus placed Plaintiffs on further notice that the order applied to the pending or open investigation. *See, e.g., Missouri v. Jenkins,* 515 U.S. 70, 104 (1995) (O'Connor, concurring) ("State's opening brief placed respondents on notice of its argument"); *Antioch Co. v. Scrapbook Borders, Inc.,* 291 F. Supp. 2d 980, 984 n.2 (D. Minn. 2003) ("Here, the Defendants' brief placed the Plaintiff on notice that the Defendants also sought the entry of Summary Judgment").

58147.1 10/29/2007

Rather than considering the documents submitted by both parties, the Magistrate concluded that "[t]he Court must instead draw all reasonable factual inferences in Plaintiffs' favor and assume … that the 'gag order' and threat of retaliatory disciplinary [sic] has prospectively caused Plaintiffs to remain silent." Recommendation at 9-10 (emphasis added). The Magistrate's conclusion to this end, however, is again based on his misconception that the Complaint actually plead a threat of retaliatory action for a violation of the gag order, which it did not. *See* pp. 9-10 *supra*.

As noted, failing to consider documents integral to the complaint was in error. *See* pp. 9-10 *supra*; *Faulkner*, 463 F.3d at 134; *Thomas v. Westchester County Health Care Corp.*, 232 F. Supp. 2d 273, 275-277 (S.D.N.Y. 2002) (considering a complete transcript of a disciplinary proceeding and the hearing officer's recommendation on a motion to dismiss even though not referenced in the complaint); *Morelli v. Cedel*, 1997 WL 61499, *7 (S.D.N.Y. 1997) (dismissing claim brought under the New York Human Rights Law, stating "although it is not mentioned in the complaint, I note that on February 29, 1996, the [New York State Division of Human Rights] issued a Determination and Order after Investigation which concluded that there was no probable cause to believe that Cedel engaged in an unlawful discriminatory practice.") *vacated in part on other grounds* 141 F.3d 39 (2d Cir. 1998).

Despite the foregoing, the Magistrate simply ignored the District Attorney's report, Defendants'' Memorandum of Law, Chief Hall's written order, and the affidavits of Captain Marraccini, Chief Hall, and Plaintiffs themselves, not to mention the Supreme Court's holding in *Twombly*, and stated that the Plaintiffs' lack of evidence to support their claims should be brought to light in discovery because "the Court cannot say at this stage that it appears beyond doubt that Plaintiffs can prove no set of facts" to support their claim. *See* Recommendation at 10-11.[4]

---

[4] Even if the Plaintiffs allegation that the "gag order" continued after the investigation was concluded was accepted as true, it is undisputed that after Plaintiffs raised this issue in its July 9 submissions to this Court (after having been given a 3 week extension to file their opposition papers), Defendants immediately issued a written order indicating that there were no restrictions on Plaintiffs' right to speak on this issue as of the completion of the investigation. *See* Hall Aff. Ex.

58147.1 10/29/2007

## POINT IV

## PLAINTIFFS' FAILURE TO ALLEGE AN UNCONSTITUTIONAL CUSTOM OR POLICY WARRANTS DISMISSAL OF THEIR CLAIMS AGAINST THE TOWN/VILLAGE

**A.    No Unconstitutional Custom Or Policy Is Pled**

As a matter of law, the Town/Village of Harrison cannot be held liable in this lawsuit under 42 U.S.C. § 1983.

Municipalities cannot be held liable under Section 1983 on a theory of respondeat superior. *Monell v. Dep't of Social Services*, 436 U.S. 658 (1978); *Birmingham v. Ogden*, 70 F. Supp. 2d 353, 373 (S.D.N.Y. 1999). "Municipal liability under § 1983 for the conduct of employees below the policymaking level requires that a plaintiff show a violation of his constitutional rights that resulted from a municipal custom or policy." *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007).

As even the Magistrate acknowledged, the Complaint here does not allege the existence of any official custom or policy that caused Plaintiffs to suffer a constitutional deprivation. Recommendation at 12 ("Plaintiffs do not contend … and the complaint does not allege, that a Town policy or custom deprived Plaintiffs of any constitution [sic] right."). Rather, in conclusory fashion, the Plaintiffs allege that "[b]y reason of Defendants' conduct," Plaintiffs have suffered "violations of First Amendment protected rights." Complaint ¶ 13. Because such conclusory allegations fail to state a constitutional violation against the Town/Village, the Section 1983 claims asserted against the Town/Village must be dismissed. *See, e.g., Van Emrik v. Chemung County Dep't of Soc. Serv.*, 911 F.2d 863, 868 (2d Cir. 1990) (claim against County dismissed when plaintiff failed to adequately allege any custom or policy that County contributed to denial of plaintiff's constitutional rights);

---

1.  In light of the issuance of this memorandum, there can be no violation as it has long been held that a "de minimus deterrence from engaging in protected speech is not constitutionally significant." *Ford v. Reynolds,* 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004); *see Ingraham v. Wright*, 430 U.S. 651, 674 (1977) ("There is, of course, a de minimus level of imposition with which the Constitution is not concerned."); *Arce v. Banks*, 913 F. Supp. 307, 309 (S.D.N.Y. 1996) ("At most, [plaintiff] has suffered *de minimus* infringement of his First Amendment rights which is not actionable in a § 1983 petition.").

*Claudio v. City of New York*, 423 F. Supp. 2d 170, 172 (S.D.N.Y. 2006) ("No practices of the City of New York are even mentioned in the instant Complaint, and even conclusory allegations of official custom or practice will fail to survive a motion to dismiss."); *Brodeur v. City of New York*, 1998 WL 557599, *7, *9 (S.D.N.Y. 1998) (dismissing complaint against municipal defendant because "the complaint fails to allege any policy or custom under which unconstitutional practices occurred. The conclusory allegations in the complaint relate only to how Plaintiff was treated, not to any policy or custom affecting the general populace or class of persons."); *Malone v. City of New York*, 2006 WL 2524197, *3 (E.D.N.Y. 2006).

**B.    The Alleged Unconstitutional Action Was Taken By A Non-Policymaker**

Lt. Marshall, the individual who is alleged to have imposed the gag order, is clearly not a policymaker. The complaint alleges that:

> … <u>Marshall personally advised the Plaintiffs or virtually all of the Plaintiffs that the[y] were ordered to silence</u> and were henceforth forbidden to communicate with any other law enforcement agencies and/or members of the Harrison Police Department and/or members of the Harrison Police Association with respect to their fact based beliefs that Hall had forged the subject check, been in criminal possession of that forged instrument, and intentionally stole on behalf of his Chiefs Association moneys he knew were intended for the Harrison Police Association.

Complaint ¶ 9 (emphasis added). Contrary to Magistrate Fox's conclusion that he lacked the information necessary to determine whether or not Lt. Marshall was a policymaker (*see* Recommendation at 13), as a matter of law, Lt. Marshall is not.

As Defendants presented to the Magistrate, there can be no municipal liability here because under no stretch of imagination is Marshall, as a Lieutenant, a policymaker for the Town/Village. *See, e.g., Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003) (police sergeant not a final policy maker for purposes of municipal liability); *Allan v. City of New York*, 386 F. Supp. 2d 542, 546 (S.D.N.Y. 2005) (police captain not a policy maker); *Wilson v. City of Boston*, 421 F.3d 45, 60 (1st Cir. 2005) (police captain held not to be a policymaker); *Lytle v. Doyle*, 326 F.3d 463, 472-73

58147.1 10/29/2007

(4th Cir. 2003) (it is "far fetched" to assert that captains and lieutenants are policymakers); *Murphy v. City of Chicago*, 2002 WL 977508, *6 (N.D. Ill. 2002) ("Murphy has cited no cases to suggest that lieutenants and commanders involved in personnel decisions for the CPD have the final policymaking authority for the department."); *Hock v. County of Bucks*, 2005 WL 3488726, *2-3 (E.D. Pa. 2005) (corrections officer captain not a policymaker). Thus, in light of Marshall's status as a non-policymaker, the Town/Village cannot be liable. *See, e.g., Myers v. County of Orange*, 157 F.3d 66, 76 (2d Cir. 1998) ("As a municipal corporation, Orange County can be held liable under 42 U.S.C. § 1983 only for the actions of its own policymakers.").

Even if the complaint alleged that Chief Hall, and not Lt. Marshall, issued the order (which it does not), that too would be insufficient to state a claim against the Town/Village. Just as he did with regard to Lt. Marshall, the Magistrate concluded that he lacked sufficient information to determine Chief Hall's non-policymaker status. Recommendation at 13. As noted above, however, Chief Hall was not involved in the investigation or the directive to the officers not to speak about this issue. *See* Marraccini Aff. ¶¶ 2-5; Hall Aff. ¶¶ 2-3. This critical information was totally ignored by the Magistrate and therefore his Recommendation requires reversal.

Moreover, the Defendants, presented the Magistrate with the sole New York State law governing the administration of the Police Department, New York Unconsolidated Laws § 5711-q, under which it is the Town/Village Board acting as the Police Commissioners – not the Chief, or Lieutenant for that matter – that establishes policies for the administration of the entire Department. *See* N.Y. Unconsol. § 5711-q(8). The Magistrate therefore had clear statutory authority upon which to determine that Chief Hall is not a final policymaker for purposes of administering the Town/Village Police Department. *See, e.g., Allen v. City of New York*, 2007 WL 24796, *20 (S.D.N.Y. 2007) (New York City police chief not a policymaker for purposes of municipal liability); *Russo v. City of Hartford*, 341 F. Supp. 2d 85, 108 (D. Conn. 2004) (police chief not a policymaker);

21

*Mosser v. Haney*, 2005 WL 1421440, *4 (N.D. Tex. 2005) (same); *Williams v. Dekalb County*, 2007 WL 41955, *6 (N.D. Ga. 2007) (same).

In light of the foregoing, there can be no municipal liability and Plaintiffs' claims against the Town/Village must be dismissed in their entirety.

## POINT V

## THE INDIVIDUAL DEFENDANTS MUST BE DISMISSED

### A.    Chief Hall Had No Personal Involvement In Any Constitutional Deprivation

The Complaint names David Hall, Chief of the Harrison Police Department, as a defendant individually in his personal capacity. Complaint ¶ 5. Aside from simply naming him in the caption, however, nowhere in the complaint do Plaintiffs allege that Chief Hall acted in any manner that violated Plaintiffs' constitutional rights. The only constitutional violation alleged involves the order Lt. Marshall "personally" gave Plaintiffs to not speak about their theft complaint or the resulting investigation. Complaint ¶ 9. Although Plaintiffs allege that Chief Hall directed Lt. Marshall and others in the Department's administration to investigate the complaint and that it was "[i]n that connection" that Marshall issued the allegedly unconstitutional order (Complaint ¶¶ 8-9), there is absolutely nothing unconstitutional about Chief Hall's alleged actions. Indeed, the Complaint clearly states that Lt. Marshall imposed the gag order. Complaint ¶ 10. It does not allege that Chief Hall told Lt. Marshall to give the order, but merely presumes that Marshall gave it for Hall's benefit. *See id.* Without having alleged that Chief Hall was personally involved in depriving Plaintiffs of their constitutional rights, Plaintiffs' Section 1983 claims against him must be dismissed. *See, e.g., Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (to state a viable claim under Section 1983 the complaint must allege the "personal involvement of defendants in [the] alleged constitutional deprivations"); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) ("Having failed to allege, as they must, that these defendants were directly and personally responsible for the purported unlawful conduct, [plaintiffs'] complaint is fatally defective on its face."); *McLaurin v. New*

22

*Rochelle Police Officers*, 373 F. Supp. 2d 385, 397-398 (S.D.N.Y. 2005) (dismissing §1983 claim against two individually named defendants because complaint failed to allege the "personal involvement" of those defendants in the deprivation of the plaintiff's constitutional rights); *Wallace v. Conroy*, 945 F. Supp. 2d 628, 638 (S.D.N.Y. 1996) ("A complaint predicated on a §1983 violation that fails to allege personal involvement is 'fatally defective on its face.'"); *Mehrhoff*, 2005 WL 2077292 at *5 (dismissing complaint because "[w]hile plaintiff names several individual Defendants in the Complaint, she fails to provide notice as to what specific actions were taken by each individual which led to a violation of her constitutional rights"). Moreover, the undisputed affidavits of Captain Marraccini and Chief Hall plainly note that the Chief was in Kentucky, completely unaware of the investigation. Marraccini Aff. ¶¶ 2, 5; Hall Aff. ¶¶ 2-3. Thus, Chief Hall cannot be held personally liable in this matter.

**B.    The Individual Defendants Are Protected By Qualified Immunity**

Even assuming that the Plaintiffs could set forth a constitutional violation, the individual defendants are protected by the doctrine of qualified immunity.

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'" *Russo v. City of Bridgeport*, 479 F.3d 196, 211 (2d Cir. 2007) *quoting Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002). "Stated differently, an official is entitled to qualified immunity (1) if the plaintiff has not alleged a violation of a constitutional right, (2) if that right was not clearly established at the time of the conduct, or (3) if the official's actions were not objectively unreasonable in light of clearly established law." *Almonte v. City of Long Beach*, 478 F.3d 100, 109 (2d Cir. 2007). Whether a right was clearly established at the pertinent time is a question of law (*see, e.g., Crawford-El v. Britton*, 523 U.S. 574, 589 (1998)), and in order for a right to be clearly established, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is

23

doing violates that right,'" *Kerman v. City of N.Y.*, 261 F.3d 229, 236-37 (2d Cir. 2001) *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Moreover, "[b]ecause qualified immunity is an immunity from suit — not merely an immunity from judgment — assertions of qualified immunity should be addressed as early as possible in the judicial process." *Savino v. City of N.Y.*, 331 F.3d 63, 71 (2d Cir. 2003).

Although required to address qualified immunity early in the litigation, the Magistrate ignored the fact that Chief Hall was not involved in the investigation (Marraccini Aff. ¶¶ 2-5; Hall Aff. ¶¶ 2-3), and that Lt. Marshall was simply following the directive of Captain Marraccini. Had he done so, he would have been required to dismiss both of the individual defendants. Indeed, when Lt. Marshall instructed Plaintiffs not to discuss the complaint during the pending investigation, he was merely following Captain Marraccini's directive. Complaint ¶ 9; Marraccini Aff. ¶¶ 4-5. In light of the fact that he was carrying out an objectively reasonable request from a superior officer, Lt. Marshall must, as a matter of law, be granted qualified immunity. *See, e.g., Lauro v. Charles*, 219 F.3d 202, 216 n. 10 (2d Cir. 2000) ("the existence of qualified immunity is further supported by the fact that [defendant] was apparently following orders given by his superiors"); *Varrone v. Bilotti*, 123 F.3d 75, 81 (2d Cir. 1997) ("each of these officials had qualified immunity for carrying out his supervisor's directive, even though he did not independently investigate the basis and reason for the order"); *Bilida v. McCleod*, 211 F.3d 166, 174-75 (1st Cir. 2000) ("Plausible instructions from a superior or fellow officer support qualified immunity.").

As discussed above, the law has clearly provided that police departments, such as the Harrison Police Department, can limit what individual police officers may say with regard to open investigations. If any First Amendment violation is found, then it cannot be said that the law was clearly established at the time the order was given. Indeed, when presented with the allegations of criminal wrongdoing by the Chief of Police, Lt. Marshall and Captain Marraccini had to act quickly to investigate the serious allegations brought to their attention. Courts have recognized that in such

24

situations where a police officer must act quickly, they must look at the reasonableness of the decision at the time it was made. *See Zieper v. Metzinger*, 474 F.3d 60, 71 (2d Cir. 2007) ("The very purpose of qualified immunity is to protect officials when their jobs require them to make difficult on-the-job decisions ... This is especially true when officials are forced to act quickly.").

Here, assuming *arguendo*, Chief Hall had ordered Lt. Marshall to commence an investigation into their serious allegations, and it was "[i]n that connection" that Lt. Marshall gave the allegedly unconstitutional order, such orders were given "within a matter of hours" of when Plaintiffs first brought there allegations to light. Complaint ¶¶ 8-9. In accordance with their understanding of the law as it then existed, Lt. Marshall and Chief Hall acted entirely in good faith. Thus, Lt. Marshall and Chief Hall are entitled to qualified immunity.

## CONCLUSION

For all of the foregoing reasons, this Court should not accept the Recommendation and Report by Magistrate Fox, and should instead dismiss the Complaint in its entirety.

Dated:    Garden City, New York
          October 29, 2007
                                            Respectfully submitted,

                                            BOND, SCHOENECK & KING, PLLC

                                            By:    s/Mark N. Reinharz
                                                   Mark N. Reinharz (MNR 6201)
                                                   Attorneys for the Defendants
                                                   1399 Franklin Avenue, Suite 200
Of Counsel:                                        Garden City, New York 11530
          Jessica C. Satriano                      (516) 267-6320

CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2007, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic service upon the following parties and participants:

Jonathan Lovett, Esq.
LOVETT & GOULD, LLP
222 Bloomingdale Road
White Plains, New York, 10605

s/ Mark N. Reinharz
Mark N. Reinharz (MNR 6201)
BOND, SCHOENECK & KING, PLLC
Attorneys for the Defendants
1399 Franklin Avenue, Suite 200
Garden City, New York 11530
(516) 267-6320

26